## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

ANDREW J. DANKANICH, and
NICHOLAS A. MARRANDINO,

          Plaintiffs,

    v.

MARCEL PRATT, in his official capacity as
City Solicitor of Philadelphia, and
CITY OF PHILADELPHIA,

          Defendants.

No. 19-cv-735-MSG

---

### [PROPOSED] ORDER

---

AND NOW, this ___ day of _____, 2019, upon consideration of the motion of

defendants the City of Philadelphia and Marcel Pratt, in his official capacity as City Solicitor of

Philadelphia, to dismiss all of plaintiffs' claims with prejudice pursuant to Federal Rule of Civil

Procedure 12(b)(6), and any response thereto, it is HEREBY ORDERED that the motion is

GRANTED. All of plaintiffs' claims against defendants in this action are hereby DISMISSED

with PREJUDICE.

 

                                   _____
                                   The Honorable Mitchell S. Goldberg, U.S.D.J



# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| ANDREW J. DANKANICH, and<br>NICHOLAS A. MARRANDINO, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | No. 19-cv-735-MSG |
| | : | |
| MARCEL PRATT, in his official capacity as<br>City Solicitor of Philadelphia, and<br>CITY OF PHILADELPHIA, | : | |
| | : | |
| Defendants. | : | |

FILED

MAR 1 3 2019

KATE BARKMAN, Clerk
By_____Dep. Clerk

## DEFENDANTS' MOTION TO DISMISS ALL OF PLAINTIFFS' CLAIMS WITH PREJUDICE PURSUANT TO FED. R. CIV. P. 12(b)(6)

Defendants the City of Philadelphia and Marcel Pratt, in his official capacity as City Solicitor of Philadelphia, respectfully move this Court to dismiss all of plaintiffs' claims with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6). The grounds for this motion are set forth in the accompanying brief.

Respectfully submitted,

Dated: March 13, 2019

/s/ Stephen A. Fogdall
Stephen A. Fogdall (Pa. I.D. 87444)
Schnader Harrison Segal & Lewis LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103
Phone: (215) 751-2581
Fax: (215) 751-2205
sfogdall@schnader.com

# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANDREW J. DANKANICH, and
NICHOLAS A. MARRANDINO,

               Plaintiffs,

    v.

MARCEL PRATT, in his official capacity as
City Solicitor of Philadelphia, and
CITY OF PHILADELPHIA,

               Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:
:

No. 19-cv-735-MSG

FILED

MAR 13 2019

KATE BARKMAN, Clerk
By_____Dep. Clerk

---

## DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS ALL OF PLAINTIFFS' CLAIMS WITH PREJUDICE PURSUANT TO FED. R. CIV. P. 12(b)(6)

---

Stephen A. Fogdall (Pa. I.D. 87444)
Schnader Harrison Segal & Lewis LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103
Phone: (215) 751-2581
Fax: (215) 751-2205
sfogdall@schnader.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................... i

INTRODUCTION ....................................................................................................................... 1

BACKGROUND ......................................................................................................................... 2

    A.    The Alleged Fraud ....................................................................................................... 2

    B.    The Parking Authority and the City ........................................................................... 2

    C.    Plaintiffs' Proposed Lawsuit ...................................................................................... 4

    D.    The City Solicitor's Thorough and Reasonable Review of Plaintiffs' Proposed
        Lawsuit ...................................................................................................................... 8

ARGUMENT ........................................................................................................................... 10

I.    Plaintiffs Cannot State a Substantive Due Process Claim ................................................... 10

    A.    The FCO Easily Satisfies Rational Basis Review ...................................................... 11

    B.    Plaintiffs do not Allege any Interest Protected by Substantive Due Process .............. 13

    C.    Plaintiffs' Complaint Fails to Allege any Outrageous or Conscience Shocking
        Conduct .................................................................................................................... 14

II.    Plaintiffs Cannot State a Procedural Due Process Claim .................................................... 15

    A.    Plaintiffs do not Allege any Interest Protected by Procedural Due Process ................ 15

    B.    On Their Own Allegations, Plaintiffs Have Received all the Process they Were
        Due ........................................................................................................................... 18

III.    Plaintiffs Fail to State a Claim for Breach of Contract ........................................................ 21

IV.    Plaintiffs' Quasi-Contract Claim Should Also be Rejected ................................................. 22

V.    The City Solicitor Should be Dismissed as a Defendant ...................................................... 24

CONCLUSION ........................................................................................................................ 25

# TABLE OF AUTHORITIES

**Cases**                                                                     **Page**

*Alvin v. Suzuki,*
227 F.3d 107 (3d Cir. 2000) ..................................................15

*Am. Express Travel Related Servs., Inc. v. Sidamon-Eristoff,*
669 F.3d 359 (3d Cir. 2012) ..................................................11

*Ashcroft v. Iqbal,*
556 U.S. 662, 678 (2009) ..................................................10

*Baraka v. McGreevey,*
481 F.3d 187 (3d Cir. 2007) ..................................................15

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544, 570 (2006) ..................................................10

*Board of Curators of the University of Missouri v. Horowitz,*
435 U.S. 78 (1978) ..................................................19

*Burton v. City of Philadelphia,*
121 F. Supp. 2d 810 (E.D. Pa. 2000) ..................................................24

*City of Philadelphia v. Rendell,*
888 A.2d 922 (Pa. Commw. Ct. 2005) ..................................................2

*City of Pittsburgh v. West Penn Power Co.,*
147 F.3d 256 (3d Cir. 1998) ..................................................10

*Cleveland Bd. of Educ. v. Loudermill,*
470 U.S. 532 (1985) ..................................................17

*Deibler v. City of Rehoboth Beach,*
790 F.2d 328 (3d Cir. 1986) ..................................................15

*Dist. Counsel 33, Am. Fed. Of State, Cnty. & Mun. Emps., AFL-CIO v. City of Phila.,*
944 F. Supp. 392 (E.D. Pa. 1995) ..................................................17

*Gratton v. Conte,*
73 A.2d 381 (Pa. 1950) ..................................................21

*Hammond v. City of Wilkes-Barre,*
2011 WL 1257844 (M.D. Pa. Mar. 30, 2011) ..................................................13, 14

*Hill v. Borough of Kutztown,*
455 F.3d 225 (3d Cir. 2006) ..................................................15

*Jones v. Township of Middletown,*
    2011 WL 3157143 (E.D. Pa. Jul. 26, 2011) ........................................13

*Matthews v. Eldridge,*
    424 U.S. 319 (1976) ........................................18

*Mitchell v. Harris,*
    496 F. Supp. 230 (D.N.J. 1980)........................................16

*Morlok v. City of Philadelphia,*
    2018 WL 6092719 (E.D. Pa. Nov. 21, 2018) ........................................11, 12, 23, 24

*Morrissey v. Brewer,*
    408 U.S. 471 (1972) ........................................18

*Nat'l R.R. Passenger Corp. v. Atchison, Topeka & Santa Fe Ry.,*
    470 U.S. 451 (1985) ........................................21, 22

*Newark Cab Ass'n v. City of Newark,*
    901 F.3d 146 (3d Cir. 2018) ........................................13, 21

*New Jersey Retail Merchants Ass'n v. Sidamon-Eristoff,*
    669 F.3d 374 (3d Cir. 2012) ........................................12

*Nicholas v. Pa. State Univ.,*
    227 F.3d 133 (3d Cir. 2000) ........................................13, 14, 15

*Planned Parenthood of S.E. Pa. v. Casey,*
    505 U.S. 833 (1992) ........................................12

*Potts v. City of Philadelphia,*
    224 F. Supp. 2d 919 (E.D. Pa. 2002)........................................16, 17

*Reich v. Beharry,*
    883 F.2d 239 (3d Cir. 1989) ........................................13

*Swinka Realty Inv., LLC v. Lackawanna County Tax Claim Bureau,*
    2013 WL 5656615 (M.D. Pa. Oct. 15, 2013) ........................................14

*Taggart v. GMAC Mortgage, LLC,*
    2013 WL 4079655 (E.D. Pa. Aug. 12, 2013) ........................................18, 19

*Taggart v. GMAC Mortgage, LLC,*
    600 Fed. Appx. 859 (3d Cir. 2015)........................................18

*United States ex rel. Mateski v. Mateski,*
    634 Fed. Appx. 192 (9th Cir. 2015) ........................................16

*United States ex rel. Petras v. Simparel, Inc.*,
   857 F.3d 497 (3d Cir. 2017) ...................................................................7, 8

*Wiernik v. PHH U.S. Mortgage Corp.*,
   736 A.2d 616 (Pa. Super. Ct. 1999)........................................................22, 24

**<u>Statutes and Ordinances</u>**                                               **<u>Page</u>**

31 U.S.C. § 3729(a)(1)(G) ..............................................................................7

31 U.S.C. § 3730(c)(2)(A) ..............................................................................20

42 U.S.C. § 1983 ............................................................................................10

53 P.S. § 13202 ..............................................................................................8

53 Pa C.S. § 5505(a)(1) ..............................................................................2, 23

53 Pa. C.S. § 5505(a)(3) .............................................................................2, 23

53 Pa. C.S. § 5505(a)(4) .................................................................................2

53 Pa. C.S. § 5505(d)(1) .................................................................................4

53 Pa. C.S. § 5505(d)(21) ...............................................................................3

53 Pa. C.S. § 5508.1(e)(1) ..............................................................................2

53 Pa. C.S. § 5508.1(i) ...................................................................................2

53 Pa. C.S. § 5510.1(a) ..................................................................................4

53 Pa. C.S. § 5510.1(b)(2) ..............................................................................4

53 Pa. C.S. § 5515(b) ....................................................................................4

75 Pa. C.S. § 3116(a)(2) .................................................................................3

75 Pa. C.S. § 3116(h)(2) .................................................................................3

75 Pa. C.S. § 3116(*l*)(2) ..............................................................................3, 8

75 Pa. C.S. § 6109(g)(2) .............................................................................3, 7

75 Pa. C.S. § 6109(g)(3) .................................................................................3

Philadelphia Traffic Code § 12-2800(4)..........................................................3

False Claims Ordinance § 19-3601(1)............................................................5

False Claims Ordinance § 19-3602(1)...........................................................4, 6

False Claims Ordinance § 19-3602(3)...........................................................4, 6

False Claims Ordinance § 19-3602(7)............................................................7

False Claims Ordinance § 19-3603(2)(a) .......................................................4

False Claims Ordinance § 19-3603(2)(b) .................................................8, 16, 22

False Claims Ordinance § 19-3603(6)(b) ......................................................20

False Claims Ordinance § 19-3603(8)(a) ....................................................16, 22

False Claims Ordinance § 19-3603(8)(b) ....................................................16, 22

Defendants the City of Philadelphia ("the City") and Marcel Pratt, in his official capacity as City Solicitor of Philadelphia ("the City Solicitor"), submit this brief in support of their motion to dismiss all of plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6) with prejudice.

## INTRODUCTION

Plaintiffs want this Court to issue an extraordinary ruling that the Constitution prohibits the City Solicitor from exercising the legal judgment properly vested in him under the City's False Claims Ordinance ("FCO") to decline to authorize private citizens to pursue a purported fraud claim on behalf of the City when they have not alleged, and cannot allege, that the City was the victim of any fraud.

Plaintiffs say that they uncovered a fraud against the Philadelphia Parking Authority ("the Parking Authority"). Plaintiffs assume, mistakenly, that a fraud against the Parking Authority must be a fraud against the City. They then illogically conclude that they have a constitutional right to bring a lawsuit *against* the Parking Authority (the victim of the alleged fraud) in the City's name under the FCO and claim that the City Solicitor violated this unheard of "right" simply by exercising the discretion given to him by the FCO to decline to authorize their lawsuit.

No court has recognized the supposed constitutional right that plaintiffs assert. Moreover, plaintiffs' own allegations demonstrate that the City Solicitor thoroughly considered their proposed lawsuit and reasonably concluded that it did not state a claim that could be actionable under the FCO. Plaintiffs' complaint is devoid of any factual allegation even remotely suggesting that the City Solicitor's decision was anything other than the proper exercise of discretion properly given to him under a duly enacted and valid City ordinance. As a result, all of plaintiffs' claims fail as a matter of law and this action should be dismissed with prejudice.

# BACKGROUND

## A. The Alleged Fraud

Plaintiffs say that while they were employed at the Parking Authority, they discovered an alleged fraud being committed by the Parking Authority's former Executive Director and a contractor that the Parking Authority had engaged to administer the City's automated red-light enforcement system, Conduent State & Local Services ("Conduent"). Plaintiffs allege that the former Executive Director first "conspired to ensure" that Conduent was awarded the contract to operate the system, then declined to enforce alleged contractual penalties Conduent should have been paying under the contract, and then ensured that Conduent's contract would be renewed in 2017. Compl. ¶¶ 9, 25, 27. Plaintiffs say they were terminated by the Parking Authority for their "interference" in the renewal of Conduent's contract. Compl. ¶ 29.

## B. The Parking Authority and the City

Plaintiffs' underlying mistaken assumption is that the City is a victim of the fraud they allege was committed against the Parking Authority. Plaintiffs are wrong.

The Parking Authority was established under a Pennsylvania statute in order to "exercis[e] public powers of the Commonwealth *as an agency of the Commonwealth*." 53 Pa C.S. § 5505(a)(1) (emphasis added). Its governing board is appointed by the Governor of Pennsylvania. 53 Pa. C.S. § 5508.1(e)(1) & (i); *see also City of Philadelphia v. Rendell*, 888 A.2d 922, 927 & n.11 (Pa. Commw. Ct. 2005). While the Parking Authority "shall not be deemed to be an instrumentality of the" City, the City is permitted by statute to delegate certain functions to it. 53 Pa. C.S. § 5505(a)(3) & (4). Specifically, the Parking Authority maintains "off-street" parking facilities at the Philadelphia International Airport and other locations, which it leases from the City. *See Rendell*, 888 A.2d at 926 & n.6.

The City has also delegated to the Parking Authority "powers relating to the administration, supervision and enforcement of on-street parking regulations." Philadelphia Traffic Code § 12-2800(4). In particular, the Parking Authority collects revenue from meter payments, permit fees, parking fines, vehicle auction proceeds and booting and towing fees, pays a portion of this revenue to the City (capped at $35 million per year with an annual adjustment, after deduction of operating expenses), and pays the rest to the School District of Philadelphia, which is separate from and independent of the City. 53 Pa. C.S. § 5505(d)(21); 75 Pa. C.S. § 6109(g)(2) & (3).[1]

In addition to these off-street and on-street parking operations, the Parking Authority administers an automated camera system for recording red-light violations at certain intersections in Philadelphia and assessing penalties for such violations. 75 Pa. C.S. § 3116(a)(2) & (h)(2). It is this system that plaintiffs say has been at the center of a years-long fraud committed against the Parking Authority. However, penalties collected by the Parking Authority under this system are not paid to the City. Instead, they are paid to the Pennsylvania Department of Transportation and deposited in a restricted receipts account in the Motor License Fund. 75 Pa. C.S. § 3116(*l*)(2).

Aside from the Parking Authority's payments to the City from on-street parking revenue, and lease payments for off-street parking facilities, no other funds generated by the Parking

---

[1] *See also* http://www.philapark.org/2017/05/ppa-funding-to-the-school-district-how-does-it-work/ (depicting yearly payments to the City and the School District from on-street parking operations).

Authority's parking and enforcement operations are shared with the City, *see* 53 Pa. C.S. § 5510.1(a) & (b)(2), and plaintiffs do not allege otherwise.[2]

### C. Plaintiffs' Proposed Lawsuit

Plaintiffs engaged an attorney who drafted a proposed complaint based on the alleged fraud and presented it to the City Solicitor pursuant to Section 19-3603(2)(a) of the FCO.[3]

Plaintiffs' theory in the proposed complaint is that the Parking Authority is a "contractor" of the City for purposes of the FCO, and that Conduent is its "subcontractor." *See* Proposed Complaint ("Prop. Compl.") ¶¶ 218, 229, 249, 271, 290, 313. Plaintiffs allege that payments by the Parking Authority to Conduent under Conduent's contract to administer the red-light camera system supposedly are "false claims" that were "knowingly present[ed] to an officer or employee of the City for payment or approval by the City" in violation of FCO § 19-3602(1). Prop. Compl. ¶¶ 235, 249, 272, 297, 317. In addition, they allege that Conduent and the Parking Authority's former Executive Director "conspire[d] to defraud the City by getting a false claim allowed or paid by the City" in violation of FCO § 19-3602(3). Prop. Compl. ¶¶ 236, 256, 278, 298, 321. Plaintiffs' allegations are not cognizable under the FCO, as the City Solicitor quite reasonably concluded.

---

[2] Plaintiffs do allege that funds belonging to the Parking Authority conceivably could be transferred to the City in the future if the Parking Authority's existence is terminated. *See* Compl. ¶ 65; *see also* 53 Pa. C.S. § 5505(d)(1) (giving the Parking Authority an initial 50-year term of existence, subject to renewal for up to an additional 50 years). Any such transfer of funds would be contingent on the Parking Authority's having "finally paid and discharged all bonds issued and outstanding and the interest due on them and settled all other outstanding claims against it." 53 Pa. C.S. § 5515(b). Whether any funds would remain after satisfying such obligations is, of course, unknown and unknowable.

[3] The proposed complaint is attached as Exhibit A to plaintiffs' complaint in this action.

The FCO defines a "claim" as a "request or demand" for "money or property, or financial assistance" that is "made" to the City, or to a "contractor" of the City (here the Parking Authority, according to plaintiffs), for which *the City* either will provide a "portion of the money or property which is requested or demanded," or will "reimburse" the contractor for a "portion of the money or property" "requested or demanded." FCO § 19-3601(1). Plaintiffs allege no such "claim" in their proposed complaint.

Plaintiffs attempt to allege such "claims" by saying that Conduent submitted requests for payment to the Parking Authority under the red-light contract that falsely sought full compensation for its services without acknowledging that contractual penalties should have been applied for periods in which the red-light system was down. Prop. Compl. ¶¶ 226-27. Plaintiffs then assert a wholly conclusory allegation that the City *must* have either "provide[d]" the payments that the Parking Authority made to Conduent under the red-light contract or "reimburse[d] (directly or indirectly)" the Parking Authority for these payments. Prop. Compl. ¶ 231. But plaintiffs make no plausible or coherent factual allegations to explain *how* the City supposedly did so.

Plaintiffs *do* allege that the Parking Authority makes payments *to* the City related to on-street parking operations and for parking facilities that the Parking Authority leases at the Philadelphia airport. Prop. Compl. ¶ 211. But these payments are in the wrong direction — *from* the Parking Authority *to* the City. For plaintiffs' FCO theory to make sense, they must identify payments in the opposite direction — *by* the City *to* the Parking Authority to either "provide," or to "reimburse" the Parking Authority for, the "money or property" "requested or demanded" by Conduent. Plaintiffs make no allegation in their proposed complaint to show that the City did this.

Plaintiffs allege that the Parking Authority improperly allocates more overhead than it should to its on-street operations and to the airport facilities. Prop. Compl. ¶ 220. This, presumably, is supposed to result in lower payments *to* the City under these programs (because the payments are net of the Parking Authority's expenses), Prop. Compl. ¶¶ 213-14, but, again, this does not demonstrate that the City provided, or reimbursed the Parking Authority for, money or property the Parking Authority gave *to* Conduent under the red-light camera program. Furthermore, plaintiffs do not allege that Conduent or the Parking Authority's former Executive Director were responsible for the alleged misallocation of overhead or that the alleged misallocation was even part of the fraud. Indeed, plaintiffs do not allege anything *fraudulent* about the misallocation at all, only that they think the allocation is wrong.

Plaintiffs also allege, correlatively, that the Parking Authority allocates *less* overhead than it should to the red-light system. Prop. Compl. ¶ 217. Because the payments by the Parking Authority to the Commonwealth for penalties assessed by the red-light system are, likewise, net of expenses, this purportedly results in *greater* payments to the Commonwealth from the red-light system than the Commonwealth should be receiving. Prop. Compl. ¶ 215. The implication of plaintiffs' allegations, then, is that the Commonwealth is receiving more revenue, and the City is receiving less revenue, than each should be receiving *from* the Parking Authority, but, to repeat, none of this establishes the critical element under the FCO of payments *by* the City that either "provide" money or property *to* Conduent, or "reimburse" the Parking Authority for money or property *it* gave *to* Conduent.

In addition to the false claim theories under FCO § 19-3602(1) and § 19-3602(3), plaintiffs' proposed complaint alleges that payments to Conduent under the red-light camera contract supposedly constitute "false record[s] or statement[s] to conceal, avoid or decrease an

obligation to pay or transmit money or property to the City" in violation of FCO § 19-3602(7). Prop. Comp. ¶¶ 237, 257, 279, 299, 322.[4] This theory also does not work, for at least two reasons.

First, plaintiffs do not actually allege that payments to Conduent under the red-light camera contract resulted in any obligation to the City being "conceal[ed], avoid[ed] or decrease[d]." Plaintiffs do suggest, as already discussed, that a "misallocation" of *overhead expenses* resulted in lower payments to the City for on-street operations and the airport facilities, but plaintiffs *do not allege that payments to Conduent under the red-light camera system are part of overhead expenses.* Nor would this be a plausible allegation if they did. To the contrary, such payments would presumably be, if anything, direct expenses of the red-light camera program itself and plaintiffs allege that "direct expenses" are *not* affected by the "misallocation" problem they say affects overhead expenses. Prop. Compl. ¶ 214. Thus, on plaintiffs' own allegations, payments to Conduent could have no effect on amounts paid to the City related to on-street parking and the airport facilities.

Second, the public record and the exhibits to plaintiffs' complaint show that revenues generated by the Parking Authority from on street operations have always exceed the capped amount to which the City is entitled by statute, *see* 75 Pa. C.S. § 6109(g)(2), so the City has never received less than it was entitled to in any event from this program.[5] By definition, then,

---

[4] In the context of the federal False Claims Act this is usually called a "reverse" false claim theory. *See* 31 U.S.C. § 3729(a)(1)(G); *see also United States ex rel. Petras v. Simparel, Inc.* 857 F.3d 497, 500 (3d Cir. 2017).

[5] *See* Compl., Ex. B; *see also supra* note 1.

nothing Conduent did could have caused the City to receive less revenue than it should have received from the Parking Authority.[6]

###    D.    The City Solicitor's Thorough and Reasonable Review of Plaintiffs' Proposed Lawsuit.

The FCO makes clear that the City Solicitor has discretion to determine how to proceed with any proposed complaint submitted for his review. Specifically, the FCO states that the City Solicitor "*may*" decide to do any of the following:

- Bring a civil action, based upon the facts alleged in such complaint, against one or more of the defendants named therein;

- Enter into an agreement with and designate the person who submitted the proposed complaint or, if that person is not an attorney, his or her attorney, to file a civil action for the person and the City, in the name of the City, based upon the facts alleged in the complaint, against one or more of the defendants named therein;

- Decline to commence a civil action and decline to designate the person who submitted the proposed complaint to commence a civil action; or

- Proceed in any other manner the City Solicitor deems appropriate.

FCO § 19-3603(2)(b).

---

[6] The fact that the excess amount above the cap is paid to the School District of Philadelphia does not alter this conclusion because the School District, like the Parking Authority, is an entirely separate entity from the City. *See, e.g.,* 53 P.S. § 13202 (permitting the City to "frame and adopt charter provisions governing the administration of a separate and independent home rule school district"). Plaintiffs also speculate that payments to Conduent might lead to less money being paid to the Commonwealth's Motor License Fund. Prop. Compl. ¶ 221; 75 Pa. C.S. § 3116(*l*)(2). Because such money is used to fund grant payments, plaintiffs further speculate that this might mean that the City and other potential recipients could receive less grant money than they might otherwise have received. This is far too attenuated to support a theory that payments to Conduent "conceal[ed], avoid[ed] or decrease[d]" an "obligation" to pay money to the City. *Cf. Simparel*, 857 F.3d at 506 n.50.

Even construing all allegations in plaintiffs' favor, their complaint on its face demonstrates that the City Solicitor and his staff thoroughly evaluated the proposed complaint submitted by plaintiffs' counsel, had a number of discussions with him about the allegations, and concluded that the claim lacked merit because there is no evidence that the City has been fraudulently led to pay any money as a result of any false claim submitted to it by anyone.

Plaintiffs allege that they first submitted their proposed complaint to the City Solicitor on October 17, 2018. Compl. ¶ 35. Two weeks later, on November 2, 2018, they had a telephone discussion with Ms. Diana Cortes, who chairs the Litigation Group in the City Solicitor's Office. Ms. Cortes communicated the City Solicitor's entirely reasonable conclusion that the FCO is inapplicable to plaintiffs' allegations. Compl. ¶ 37. Plaintiffs acknowledge that in that very phone call, Ms. Cortes invited their lawyer to provide additional authority to support his contrary opinion that the FCO did apply. Compl. ¶ 41. Plaintiffs allege that their lawyer had email exchanges with Ms. Cortes over the next few days, Compl. ¶¶ 42-44, then another telephone discussion on November 15, 2018, Compl. ¶¶45-55, then an in-person meeting at the City Solicitor's Office on January 29, 2019, with Ms. Cortes and Ms. Eleanor Ewing, who is Chief of the City Solicitor's Affirmative and Special Litigation Unit, Compl. ¶¶ 55-56. Plaintiffs allege in detail the thorough discussion that took place at this meeting regarding the applicability of the FCO and the basis for the City Solicitor's conclusion that the FCO did not apply. Compl. ¶¶ 56-86. Lastly, plaintiffs attach to their complaint a detailed, well-reasoned letter that shows the careful and deliberative fashion in which the City Solicitor considered and declined to authorize plaintiffs' proposed lawsuit. *See* Compl. Ex. B.

**ARGUMENT**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2006)). The complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. Plaintiffs cannot meet this burden. Plaintiffs' own allegations, the exhibits to the complaint, and the public record, which this Court can consider, and plaintiffs cannot ignore, demonstrate that plaintiffs have failed to state any plausible claim. *See City of Pittsburgh v. West Penn Power Co.,* 147 F.3d 256, 259 (3d Cir. 1998) (when deciding a motion to dismiss, the Court may consider "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record").

Plaintiffs bring two counts under federal law (substantive due process and procedural due process) and two counts under state law (breach of contract and unjust enrichment or quasi-contract).[7] All four claims fail. Because the deficiencies in plaintiffs' allegations are not curable through further pleading, their complaint should be dismissed with prejudice.

**I.     Plaintiffs Cannot State a Substantive Due Process Claim.**

Count One of plaintiffs' complaint presents a *facial* substantive due process challenge to the FCO, contending that the City Solicitor's option under the FCO to decline to pursue a proposed lawsuit, and to decline to designate the private party submitting the proposed lawsuit to

---

[7] Count Three of plaintiffs' complaint is presented as if it were a stand-alone claim under 42 U.S.C. § 1983. In reality, Section 1983 is simply the statutory vehicle under which plaintiffs' substantive and procedural due process claims are brought. Count Three does not contain any allegation that could survive the dismissal of plaintiffs' substantive and procedural due process claims.

do so, does not "rationally further the City's legitimate interest in fighting fraud" and serves "no legitimate purpose." Compl. ¶¶ 109-10. Because plaintiffs concede that the FCO must be evaluated under a "rational basis" test, Compl. ¶ 112, which it easily satisfies, their substantive due process claim should be dismissed.

To the extent plaintiffs are implicitly attempting to assert, in addition to a facial challenge to the FCO itself, the very different claim that the City Solicitor somehow *personally* violated their substantive due process rights by declining to designate them to bring their proposed lawsuit, that claim too would have to be rejected. Plaintiffs do not allege any property interest that would be protected by substantive due process here, nor do plaintiffs allege that the City Solicitor or anyone in his office engaged in any "conscience shocking" or "outrageous" conduct.

## A.    The FCO Easily Satisfies Rational Basis Review.

Plaintiffs cannot succeed on their substantive due process claim. To satisfy rational basis review, which plaintiffs concede is the governing standard, the City need only offer "a conceivable rational basis for its action," and plaintiffs, by contrast, must "negative every conceivable basis which might support it." *Am. Express Travel Related Servs., Inc. v. Sidamon-Eristoff*, 669 F.3d 359, 366-67 (3d Cir. 2012) (internal quotation marks omitted); *see also Morlok v. City of Philadelphia*, 2018 WL 6092719, *5 (E.D. Pa. Nov. 21, 2018). Plaintiffs cannot do this.

The legitimate and salutary reasons for giving the City, as the owner of any claim under the FCO, the power to authorize or to decline to authorize the bringing of a lawsuit in its name are obvious. Even where a private party brings the lawsuit, the lawsuit inevitably will consume the City's valuable and scarce resources. The City will be forced to deal with written discovery, depositions, and the other burdens of litigation. The City will have to monitor the lawsuit and

will be responsible for its ultimate resolution. And the lawsuit will, of course, consume the resources of the Court in which it is filed. For all of these reasons, it makes eminently good sense for the City, as the owner of the claim, to have control over whether any lawsuit should be filed. If the City determines that a lawsuit lacks merit, the City's option to decline to authorize the lawsuit clearly and obviously serves a legitimate government purpose.

Plaintiffs' complaint is devoid of any allegations that would "negative" these "conceivable bas[es]" for the City's action. *Morlok*, 2018 WL 6092719 at *5. In fact, plaintiffs make no mention of these considerations at all. Plaintiffs' sole argument is that by giving the City the option to decline to authorize the lawsuit, the FCO supposedly "disincentivizes other potential relators" from proposing lawsuits. Compl. ¶ 109. The answer to that argument is that no lawsuit *with merit* will be disincentivized because the City controls whether the lawsuit will be brought. To the contrary, the City Solicitor's review enhances the probability that lawsuits with merit will be brought and reduces the likelihood that Courts will be burdened with adjudicating meritless lawsuits.

At the end of the day, plaintiffs' argument amounts to the assertion that, in their opinion, the FCO would be a better ordinance if the City did not have control over whether lawsuits could be filed in its name. That assertion is wrong, and, in any event, does not begin to state a substantive due process claim. "[U]nder rational basis scrutiny for substantive due process, courts are not free to invalidate state [or local] law because they disagree with the underlying policy decisions." *New Jersey Retail Merchants Ass'n v. Sidamon-Eristoff*, 669 F.3d 374, 399-400 (3d Cir. 2012) (citing *Planned Parenthood of S.E. Pa. v. Casey*, 505 U.S. 833, 849 (1992)). This is precisely what plaintiffs are asking this Court to do. The Court should reject the invitation.

**B.    Plaintiffs do not Allege any Interest Protected by Substantive Due Process.**

To the extent plaintiffs are attempting to assert a substantive due process challenge to the City Solicitor's individual decision to decline to authorize their proposed lawsuit in addition to their unsuccessful facial challenge to the FCO itself, the "threshold" for "establishing" such "a non-legislative substantive due process claim is that a plaintiff has a protected property interest to which the Fourteenth Amendment's due process protection applies." *Newark Cab Ass'n v. City of Newark*, 901 F.3d 146, 155 (3d Cir. 2018) (internal quotation marks omitted). Plaintiffs cannot satisfy this threshold requirement.

Only interests that are "'fundamental' under the United States Constitution" are entitled to substantive due process protection. *Id.* (quoting *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 140 (3d Cir. 2000)). Thus far, the Third Circuit has "limited its recognition of non-legislative property rights protected by substantive due process to interests in real property." *Jones v. Township of Middletown*, 2011 WL 3157143, *4 (E.D. Pa. Jul. 26, 2011). Plaintiffs obviously allege no such interest here. Instead, the sole interest they allege is their purported entitlement to "a portion of the proceeds" from a possible recovery in a proposed lawsuit. Compl. ¶ 115. An interest in "the receipt of payment" is not property protected by substantive due process. *Reich v. Beharry,* 883 F.2d 239, 244 (3d Cir. 1989). Moreover, this alleged interest exists only because the City provided for it in the FCO. It is well settled that such "state-created rights do not enjoy substantive due process protection." *Hammond v. City of Wilkes-Barre*, 2011 WL 1257844, *4

(M.D. Pa. Mar. 30, 2011) (internal quotation marks omitted). Hence, any substantive due process claim that plaintiffs are attempting to bring against the City Solicitor fails.[8]

### C.   Plaintiffs' Complaint Fails to Allege any Outrageous or Conscience Shocking Conduct.

In addition, plaintiffs have failed to allege any "arbitrary or irrational deprivation" of property. *Nicholas*, 227 F.3d at 142. Plaintiffs have made "no allegations of corruption, self-dealing, or anything amounting to conscience-shocking behavior." *Swinka Realty Inv., LLC v. Lackawanna County Tax Claim Bureau*, 2013 WL 5656615, *5 (M.D. Pa. Oct. 15, 2013). To establish a substantive due process violation, plaintiffs "must allege *facts* showing *more than* an improper motive behind" the City Solicitor's actions. *Id.* (emphasis added). Yet plaintiffs have not even alleged an improper motive on the City Solicitor's part here. There is nothing "conscience-shocking" in the City Solicitor's review of plaintiffs' proposed lawsuit, or in the multiple conversations, the extensive in person meeting, or in the subsequent emails and the detailed letter from the City Solicitor's Office that plaintiffs themselves acknowledge in, and attach to, their complaint. To the contrary, the City Solicitor's conclusion that plaintiffs' proposed lawsuit does not allege a fraud that is actionable under the FCO is an entirely reasonable and well-supported application of the ordinance, and plaintiffs have alleged nothing that could justify interference in the City Solicitor's exercise of his sound legal judgment.

For all these reasons, the Court should dismiss plaintiffs' substantive due process claim.

---

[8] As discussed further below in Part II of the Argument, the range of interests entitled to *procedural* due process protection is broader than that provided under substantive due process, but plaintiffs still fail to allege any such broader property interest.

## II. Plaintiffs Cannot State a Procedural Due Process Claim.

"To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown,* 455 F.3d 225, 233-34 (3d Cir. 2006) (quoting *Alvin v. Suzuki,* 227 F.3d 107, 116 (3d Cir. 2000)); *see also Deibler v. City of Rehoboth Beach,* 790 F.2d 328, 331 (3d Cir. 1986). Plaintiffs' complaint fails to do this for two reasons.

First, plaintiffs cannot get over the threshold requirement of showing that they have a property interest in bringing their proposed lawsuit protected by procedural due process.

Second, even if they had such a property interest, their own allegations show that they received all the process they were due.

Thus, plaintiffs' procedural due process claim should be dismissed.

### A. Plaintiffs do not Allege any Interest Protected by Procedural Due Process.

While procedural due process protects a broader range of property interests than substantive due process, *see Nicholas,* 227 F.3d at 140, plaintiffs still do not, and cannot, allege such a protected property interest here.

The only alleged interest of plaintiffs that the City has in any way "deprived" them of is their hope of either having the City commence their proposed lawsuit or having their private counsel designated to bring the lawsuit instead. That is insufficient. Plaintiffs must assert "more than an abstract need or desire," or a "unilateral expectation" of receiving some future benefit from the proposed lawsuit. *Baraka v. McGreevey,* 481 F.3d 187, 205 (3d Cir. 2007). They have not done this.

To begin with, plaintiffs cannot have any property interest *in the proposed lawsuit itself* because the FCO makes clear that any proposed claim belongs to the City. *Cf. United States ex rel. Mateski v. Mateski*, 634 Fed. Appx. 192, 195 (9th Cir. 2015) (rejecting relator's argument that he had a property interest in his lawsuit under the federal False Claims Act because "the underlying claim of fraud always belongs to the government").

Nor could plaintiffs have any protected property interest in any potential share of the proceeds that they hope could be recovered in the lawsuit. Plaintiffs focus solely on the statement in the FCO that *if* a lawsuit is authorized by the City and *if* that lawsuit is successful in recovering proceeds, *then* the party who suggested the lawsuit "shall be entitled to receive" a specified portion of the proceeds. FCO § 19-3603(8)(a) & (b). But that arguments ignores that any speculative "entitlement" to proceeds that may or may not ultimately be recovered is dependent on the double contingency of the lawsuit being authorized by the City and then ultimately succeeding in recovering funds. This "highly speculative and contingent 'interest'" in potential future proceeds does not rise "to the level of an accrued property right" protected by due process. *Mitchell v. Harris*, 496 F. Supp. 230, 234 (D.N.J. 1980).

Moreover, whether a state law (or, as here, a City ordinance) creates a "legally cognizable property interest" depends entirely on the language of the law purportedly "creating the interest." *Potts v. City of Philadelphia*, 224 F. Supp. 2d 919, 940 (E.D. Pa. 2002). The FCO, by its plain language, makes clear that plaintiffs have no right to expect that any lawsuit will be authorized by the City. The FCO states that the City Solicitor "*may*" take any number of actions, including "[d]eclin[ing] to commence a civil action and declin[ing] to designate the person who submitted the proposed complaint to commence a civil action," and "[p]roceed[ing] in any other manner the City Solicitor deems appropriate." FCO § 19-3603(2)(b)(.3) & (.4). That language,

16

which gives the City Solicitor sole discretion in determining whether and how to proceed with a proposed lawsuit, leaves plaintiffs no room for any "legitimate claim of entitlement" to bring a lawsuit the City Solicitor has declined to authorize. *Potts*, 224 F. Supp. 2d at 941. Plaintiffs' claimed entitlement to bring a lawsuit on behalf of the City is based solely on the FCO, and, by definition, they can have no greater "interest" than the FCO allows them. If the FCO did not exist at all, then plaintiffs obviously would have no standing to bring any lawsuit in the City's name. *A fortiori* they cannot claim such an entitlement when the FCO leaves the authorization of such a lawsuit solely to the discretion of the City Solicitor.

Nor can plaintiffs contend that they somehow have a constitutionally protected interest in the *process* of submitting a proposed lawsuit under the FCO and having it considered by the City Solicitor in some manner that they would like to dictate. "'Property' cannot be defined by the procedures provided for its deprivation any more than can life or liberty." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). Thus, "procedural interests under state law are not themselves property interests that will be enforced in the name of the Constitution." *Dist. Counsel 33, Am. Fed. Of State, Cnty. & Mun. Emps., AFL-CIO v. City of Phila.*, 944 F. Supp. 392, 395 (E.D. Pa. 1995).

In sum, plaintiffs have not alleged that they have any constitutionally protected interest in commencing their proposed lawsuit, or in the share of proceeds they would hope to obtain from the lawsuit, or in the procedures that the FCO establishes for submitting proposed lawsuits to the City Solicitor for his consideration. Without a protected property interest, plaintiffs' due process claim fails as a matter of law.

**B.     On Their Own Allegations, Plaintiffs Have Received all the Process they Were Due.**

Even if plaintiffs had alleged a constitutionally protected property interest in their proposed lawsuit, or in the possibility of sharing in a recovery, or in the procedures under the FCO, they still could not state a due process claim because they were not "deprived" of any interest without due process.

Plaintiffs assert without foundation that they must be given a process "akin to a 'judicial proceeding'" prior to the City's decision to decline a lawsuit. Compl. ¶ 119; *see also* Compl. ¶ 17. But the due process clause contains no such rigid mandate. To the contrary, "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). Indeed, "[i]nformal procedures have been found sufficient to comport with due process under many circumstances." *Taggart v. GMAC Mortgage, LLC*, 2013 WL 4079655, *4 (E.D. Pa. Aug. 12, 2013), *aff'd*, 600 Fed. Appx. 859 (3d Cir. 2015).

The Supreme Court has identified the following factors for evaluating the process that is "due" in any given circumstance:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Matthews v. Eldridge*, 424 U.S. 319, 335 (1976).

The process the City Solicitor and his staff followed, even as alleged by plaintiffs and construing all facts in their favor, fully complied with due process under these factors.

First, the submission of a proposed lawsuit under the FCO provides no more than an opportunity to share in potential proceeds if the City Solicitor authorizes the lawsuit and the

lawsuit is ultimately successful in obtaining such a recovery. *Cf. Taggart*, 2013 WL 4079655 at

*4 (noting that being included on roster of approved FHA appraisers "neither guarantees income

nor precludes other employment"). Thus, "only minimal safeguards" are required, or

appropriate, to protect this putative interest. *Id.*

Second, the "risk of error" is negligible at best, given that any lawsuit under the FCO is

brought in the City's name, and the City Solicitor has every motivation to make a responsible,

informed decision about whether to authorize the suit. This is clear on plaintiffs' own

allegations. Plaintiffs allege multiple telephone calls with the City Solicitor's Office, an

invitation to submit further information and supporting authorities, an extended in person

meeting and multiple follow-up emails and a detailed letter from the Chair of the City Solicitor's

Litigation Group that shows on its face the careful and deliberative fashion in which the City

considered and declined to authorize plaintiffs' proposed lawsuit. Compl. ¶¶ 35, 37, 41-86 &

Ex. B. Plaintiffs' allegations show both (1) that the City Solicitor "fully informed" them of the

basis of his decision and (2) that his decision was "careful and deliberate." *Board of Curators of*

*the University of Missouri v. Horowitz*, 435 U.S. 78, 85 (1978). Thus, plaintiffs have been

"awarded at least as much due process as the Fourteenth Amendment requires." *Id.*

Although plaintiffs make conclusory allegations that the City Solicitor's review of their

proposed lawsuit was somehow not "impartial" and was based on "pretext," Compl. ¶ 119,

plaintiffs' complaint contains no *factual* allegations to plausibly suggest that either the City

Solicitor, Ms. Cortes, Ms. Ewing or anyone else in the City Solicitor's Office could have been

motivated to do anything other than consider plaintiffs' proposed lawsuit in good faith, evaluate

it thoroughly and render an entirely reasonable decision on whether to commence the suit or to

designate their lawyer to do so.

Third, plaintiffs ignore the burdens that would fall on the City and the City Solicitor's Office if every decision to decline to commence a lawsuit, or to decline to designate a private attorney to do so, required a full adjudicative hearing "akin to a 'judicial proceeding,'" which is what plaintiffs say is required. Compl. ¶ 119.C. The City Solicitor has limited staff and limited resources. On plaintiffs' own allegations, the City Solicitor and his Office invested substantial time and effort in considering plaintiffs' proposed lawsuit and in discussing with their lawyer the City Solicitor's reasons for declining to authorize the suit. Plaintiffs' complaint contains no allegation that could justify adding the further procedure of judicial review of the City Solicitor's decision with respect to whether to proceed with the City's own lawsuit.

There is no merit to plaintiffs' suggestion that the FCO is somehow defective from a constitutional standpoint because it differs from the federal False Claims Act in allowing the City Solicitor to review proposed lawsuits before they are filed. While the federal False Claims Act permits the United States to seek court approval for the dismissal of a relator's lawsuit after it has been filed, *see* 31 U.S.C. § 3730(c)(2)(A), and the FCO contains a similar provision permitting the City to move to dismiss a previously authorized lawsuit once it has been commenced, *see* FCO § 19-3603(6)(b), no court has ever suggested that these procedures are *constitutionally* mandated, and nothing in plaintiffs' complaint supports a different conclusion here.

In sum, the City Solicitor's decision to decline to commence plaintiffs' proposed lawsuit, and to decline to authorize their private attorney to do so, fully complied with whatever process plaintiffs were "due" under the circumstances of this case. Plaintiffs' procedural due process claim should be dismissed.

III.    **Plaintiffs Fail to State a Claim for Breach of Contract.**

Plaintiffs allege that the FCO is an "offer to the public" that a private attorney can "accept" by submitting a "'signed and verified' complaint to the City Solicitor," and that a binding contract between the City and the private attorney is thereby created "[a]t the moment that complaint is submitted." Compl. ¶¶ 129-31. Plaintiffs thus contend that the City is contractually obligated either to "pursue" or to "allow" them "to pursue the fraud contained in the complaint." Compl. ¶ 136. This claim too should be dismissed.

"[A]bsent some clear indication that the legislature intends to bind itself contractually, the presumption is that a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise." *Nat'l R.R. Passenger Corp. v. Atchison, Topeka & Santa Fe Ry.*, 470 U.S. 451, 465 (1985) (internal quotation marks omitted). This "well-established presumption is grounded in the elementary proposition that the principle function of a legislature is not to make contracts, but to make laws that establish the policy of the state." *Id.* Indeed, "to construe laws as contracts when the obligation is not clearly and unequivocally expressed would be to limit drastically the essential powers of a legislative body." *Id.*

The Third Circuit has applied the same principles to city ordinances, rejecting the argument that an ordinance "create[s] a contract" in the absence of "express language creating contractual rights." *Newark Cab Ass'n*, 901 F.3d at 161; *see also Gratton v. Conte*, 73 A.2d 381, 385 (Pa. 1950) (rejecting contention that an ordinance "constitute[d] a contract").

As in *Newark Cab*, the FCO contains no "express language creating contractual rights." To the contrary, the FCO makes clear to any person submitting a proposed complaint that the City Solicitor is *not* committing to accept it and may "[d]ecline to commence a civil action,"

"[d]ecline to designate the person who submitted the proposed complaint to commence a civil action," and may "[p]roceed in any other manner the City Solicitor deems appropriate." FCO § 19-3603(2)(b)(.3) & (.4). This is, if anything, a "clear indication" that the City intended *not* "to create private contractual or vested rights" under the FCO. *Nat'l R.R.*, 451 U.S. at 465-66.

Nor does the FCO's provision for a possible "share of the cash proceeds," Compl. ¶ 135, if a lawsuit is successful suggest any intent "to create private contractual or vested rights," *Nat'l R.R.*, 451 U.S. at 466. The FCO unambiguously states that a private person's entitlement to receive any proceeds only arises "[*i*]*f* the City Solicitor has elected to commence a civil action based on a proposed complaint," or "[*i*]*f* a designated person or persons commence a civil action." FCO § 19-3603(8)(a) & (b) (emphasis added). Nothing in that hypothetical language "clearly and unequivocally expresse[s]" a contractual obligation on the City's part to either commence a lawsuit or to designate a private party to do so simply because that party has submitted a proposed complaint to the City Solicitor.

For these reasons, plaintiffs' breach of contract claim should be dismissed.

## IV. Plaintiffs' Quasi-Contract Claim Should Also be Rejected.

Plaintiffs' quasi-contract or unjust enrichment claim fares no better than their other claims. To state a viable claim, plaintiffs must allege that: (1) they "conferred" a "benefit" on the City, (2) the "benefit" was "appeciat[ed] by" the City, and (3) under the circumstances, "it would be inequitable for [the City] to retain the benefit without payment of value." *Wiernik v. PHH U.S. Mortgage Corp.*, 736 A.2d 616, 622 (Pa. Super. Ct. 1999). Plaintiffs have alleged none of these elements.

First, plaintiffs do not allege any *benefit* conferred by them on the City. They allege only that they have submitted a proposed lawsuit, and while they may think that the lawsuit would be

beneficial to the City, the City concluded otherwise. The fraud alleged by plaintiffs was, on their own allegations, committed against the Parking Authority, a separate entity that "exercis[es] public powers of the Commonwealth as an agency of the Commonwealth" and is not "deemed to be an instrumentality" of the City. 53 Pa. C.S. § 5505(a)(1) & (3). Simply informing the City of a fraud allegedly committed against another agency in the Commonwealth and proposing that the City commence a lawsuit based on the alleged fraud that it would have no standing to bring does not confer any "benefit" on the City.

Second, plaintiffs do not allege that the "benefit" was "appreciat[ed] by" the City. To the contrary, on plaintiffs' own allegations, the City did *not* appreciate the putative benefit and, instead, declined to pursue their proposed lawsuit or to designate their private attorney to do so. Although plaintiffs say that their "valuable information" was "accepted and retained by" the City, they do not allege that the City is any way *using* this information to its benefit, nor could they. Compl. ¶¶ 144-45. Thus, plaintiffs' complaint does not plead the second element of an unjust enrichment claim either.

Third, and lastly, plaintiffs do not allege any circumstances making it in any way "unjust" for the City to "retain" the "benefit" of plaintiffs' proposed lawsuit without "payment of value," which plaintiffs say would be "a share of the award proceeds" that, of course, do not even exist. Compl. ¶ 145. All that plaintiffs allege is that the City complied with its own ordinance: plaintiffs submitted a proposed lawsuit, which the City Solicitor considered and declined to authorize them to pursue. As already demonstrated, plaintiffs do not allege any fact to suggest that this decision was anything other than a proper exercise of the City Solicitor's discretion under the FCO. Plaintiffs submitted their proposed lawsuit knowing that there was no guarantee the City Solicitor would either commence a lawsuit or designate them to do so. *Cf. Morlock*,

2018 WL 6092719 at *4 (rejecting unjust enrichment claim against the City where plaintiffs invested in their electronic vehicle (EV) parking places "without a guarantee that they would have twenty-four hour access to their EV parking spaces indefinitely"). Moreover, if plaintiffs' theory were sound then *every single private plaintiff* submitting a proposed lawsuit to the City under the FCO would have an unjust enrichment claim against the City every time the City Solicitor exercises his discretion under the ordinance to decline to commence the lawsuit or to designate the private plaintiff to do so. By definition, the City Solicitor cannot incur liability for an unjust enrichment simply by acting in accordance with the FCO, which, again, is all that plaintiffs allege. *Cf. Wiernik*, 736 A.2d at 622 ("[W]e cannot conclude that appellees could be unjustly enriched as a result of invoking their statutory rights.").

For all these reasons, plaintiffs' unjust enrichment claim should be dismissed along with their other claims.

## V. The City Solicitor Should be Dismissed as a Defendant.

Plaintiffs do not purport to assert claims against the City Solicitor in anything other than his official capacity. "[B]ecause claims against individual defendants in their official capacities are equivalent to claims against the governmental entity itself," here the City, such claims "are redundant and may be dismissed." *Burton v. City of Philadelphia*, 121 F. Supp. 2d 810, 812 (E.D. Pa. 2000). The City Solicitor therefore should be dismissed as a defendant from this action.

## CONCLUSION

For all these reasons, defendants the City of Philadelphia and Marcel Pratt, in his official capacity as City Solicitor of Philadelphia, urge the Court to dismiss all of plaintiffs' claims against them with prejudice.

Respectfully submitted,

Dated:  March 13, 2019

/s/ Stephen A. Fogdall
Stephen A. Fogdall (Pa. I.D. 87444)
Schnader Harrison Segal & Lewis LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103
Phone: (215) 751-2581
Fax: (215) 751-2205
sfogdall@schnader.com

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Defendants' Motion to Dismiss all of Plaintiffs'

Claims with Prejudice Pursuant to Fed. R. Civ. P. 12(b)(6), and the accompanying Brief, have

been served on counsel for plaintiffs, Andrew Austin, via electronic mail at

austin@stackhousegroup.com.

/s/ Stephen A. Fogdall

Dated: March 13, 2019

FILED

MAR 1 3 2019

KATE BARKMAN, Clerk
By_____Dep. Clerk