**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| ANDREW J. DANKANICH, and NICHOLAS A. MARRANDINO, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | No. 2:19-cv-00735-MSG |
| | : | |
| MARCEL PRATT, in his official capacity as City Solicitor of Philadelphia, and CITY OF PHILADELPHIA, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**DEFENDANTS' BRIEF IN SUPPORT OF THEIR RENEWED MOTION TO DISMISS ALL OF PLAINTIFFS' CLAIMS WITH PREJUDICE PURSUANT TO FED. R. CIV. P. 12(b)(6) AND TO STRIKE PURSUANT TO FED. R. CIV. P. 12(f)**

Stephen A. Fogdall (Pa. I.D. 87444)
Schnader Harrison Segal & Lewis LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103
Phone: (215) 751-2581
Fax: (215) 751-2205
sfogdall@schnader.com

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 3

    A.    The Alleged Fraud ................................................................................... 3

    B.    The Parking Authority and the City ....................................................... 3

    C.    Plaintiffs' Proposed Lawsuit .................................................................. 5

    D.    The City Solicitor's Thorough and Reasonable Review of Plaintiffs' Proposed Lawsuit ...................................................................................... 6

ARGUMENT ...................................................................................................................... 8

I.    The Court Should Strike Plaintiffs' Baseless Assertions of Supposed "Political Expediency" ......................................................................................... 8

II.    Plaintiffs Still Have Not Stated a Substantive Due Process Claim ...................... 11

    A.    The FCO Easily Satisfies Rational Basis Review ................................ 12

    B.    Plaintiffs' Non-Legislative Substantive Due Process Claim Fails ........... 13

        1.    Plaintiffs Still Do Not Allege any Interest Protected by Substantive Due Process ................................................................. 13

        2.    Plaintiffs Still Fail to Plausibly Allege any Outrageous or Conscience Shocking Conduct ................................................... 14

III.    Plaintiffs Have Done Nothing to Save Their Procedural Due Process Claim From Dismissal ............................................................................................................ 16

    A.    Plaintiffs Still Do Not Allege any Protected Interest ........................... 16

    B.    On Their Own Allegations, Plaintiffs Have Received all the Process they Were Due ........................................................................................... 17

IV.    Plaintiffs' Attempt to Plead a First Amendment Claim Fails ............................. 19

V.    Plaintiffs Have No Right in this Court to Use a State Court Procedure for Review of "Local Agency" Adjudications ........................................................................ 21

VI.    Plaintiffs Still Fail to State a Claim for Breach of Contract .............................. 22

VII.    Plaintiffs' Quasi-Contract Claim Should Also Be Rejected .............................. 23

VIII.    The City Solicitor Should Be Dismissed as a Defendant .................................. 24

CONCLUSION .................................................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**            **Page**

*ACLU v. Holder*,
673 F.3d 245 (4th Cir. 2011) ...........................................................................................19

*Aloe Coal Co. v. Dep't of Transp.*,
643 A.2d 757 (Pa. Commw. Ct. 1994)..............................................................................24

*Alvin v. Suzuki*,
227 F.3d 107 (3d Cir. 2000) ............................................................................................18

*Am. Express Travel Related Servs., Inc. v. Sidamon-Eristoff*,
669 F.3d 359 (3d Cir. 2012) ............................................................................................12

*Ashcroft v. Iqbal*,
556 U.S. 662, 678 (2009) .............................................................................................8, 12

*Baraka v. McGreevey*,
481 F.3d 187 (3d Cir. 2007) ......................................................................................16, 17

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544, 570 (2006) ................................................................................................. 8

*Berger & Montague v. Philadelphia Historical Comm'n*,
898 A.2d 1 (Pa. Commw. Ct. 2006)..................................................................................22

*Board of Curators of the University of Missouri v. Horowitz*,
435 U.S. 78 (1978) ...........................................................................................................18

*Bronson v. Samsung Elecs. Am., Inc.*,
2018 WL 5809418 (N.D. Cal. Nov. 6, 2018) ...................................................................15

*Burton v. City of Philadelphia*,
121 F. Supp. 2d 810 (E.D. Pa. 2000).................................................................................24

*Chainey v. Street*,
523 F.3d 200 (3d Cir. 2000) ............................................................................................14

*Choates v. Aker Philadelphia Shipyard*,
2018 WL 637657 (E.D. Pa. Jan. 31, 2018)....................................................................... 7

*City of Philadelphia v. Rendell*,
888 A.2d 922 (Pa. Commw. Ct. 2005)............................................................................. 3

*City of Pittsburgh v. West Penn Power Co.*,
147 F.3d 256 (3d Cir. 1998) ........................................................................................... 8

*Collura v. City of Philadelphia*,
2012 WL 6645532 (E.D. Pa. Dec. 21, 2012)..................................................................... 9

*Commonwealth v. Selenski*,
  996 A.2d 494 (Pa. Super. Ct. 2010) ....................................................................11

*Correction Med. Care, Inc. v. Gray*,
  2008 WL 248977 (E.D. Pa. Jan. 30, 2008)............................................................. 9

*Dist. Counsel 33, Am. Fed. Of State, Cty. & Mun. Emps., AFL-CIO v. City of Phila.*,
  944 F. Supp. 392 (E.D. Pa. 1995) .......................................................................17

*Eichenlaub v. Twp. of Indiana*,
  385 F.3d 274 (3d Cir. 2004) ...............................................................................14

*Gratton v. Conte*,
  73 A.2d 381 (Pa. 1950).......................................................................................22

*Hoyte v. Am. Nat'l Red Cross*,
  518 F,3d 61 (D.C. Cir. 2008) ..............................................................................19

*Klein v. County of Bucks*,
  2013 WL 1310877 (E.D. Pa. Apr. 1, 2013)...........................................................15

*Meyer v. City of Pittsburgh Historical Review Comm'n*,
  201 A.3d 929 (Pa. Commw. Ct. 2019)..................................................................11

*Mitchell v. Harris*,
  496 F. Supp. 230 (D.N.J. 1980) ..........................................................................16

*Nat'l R.R. Passenger Corp. v. Atchison, Topeka & Santa Fe Ry.*,
  470 U.S. 451 (1985) .....................................................................................22, 23

*Newark Cab Ass'n v. City of Newark*,
  901 F.3d 146 (3d Cir. 2018) ..........................................................................13, 22

*New Jersey Retail Merchants Ass'n v. Sidamon-Eristoff*,
  669 F.3d 374 (3d Cir. 2012) ...............................................................................13

*Nicholas v. Pa. State Univ.*,
  227 F.3d 133 (3d Cir. 2000) ..........................................................................11, 13

*Planned Parenthood of S.E. Pa. v. Casey*,
  505 U.S. 833 (1992) ...........................................................................................13

*Potts v. City of Philadelphia*,
  224 F. Supp. 2d 919 (E.D. Pa. 2002)....................................................................17

*Price v. Philadelphia Parking Authority*,
  221 A.2d 138 (Pa. 1966)....................................................................................... 4

*R.C. Maxwell Co. v. Borough of New Hope*,
  735 F.2d 85 (3d Cir. 1984) .................................................................................21

*Reich v. Beharry*,
　883 F.2d 239 (3d Cir. 1989) ...................................................................................14

*Robbins v. Cumberland Cty. Children & Youth Servs.*,
　802 A.2d 1239 (Pa. Commw. Ct. 2002) ..................................................................11

*State Farm Fire & Cas. Co. v. United States ex rel. Rigsby*,
　137 S. Ct. 436 (2016) .............................................................................................21

*Swift v. United States*,
　318 F.3d 250 (D.C. Cir. 2003) ................................................................................19

*Taggart v. GMAC Mortgage, LLC*,
　2013 WL 4079655 (E.D. Pa. Aug. 12, 2013) ........................................................18

*Taggart v. GMAC Mortgage, LLC*,
　600 Fed. Appx. 859 (3d Cir. 2015) ........................................................................18

*Teesdale v. City of Chicago*,
　690 F.3d 829 (7th Cir. 2012) ..................................................................................20

*United Artists Theatre Circuit, Inc. v. Twp. of Warrington, Pa.*,
　316 F.3d 392 (3d Cir. 2003) .............................................................................13, 14

*United States ex rel. Mateski v. Mateski*,
　634 Fed. Appx. 192 (9th Cir. 2015) ......................................................................16

*United States ex rel. Sequoia Orange Co. v. Baird-Neece Packing Corp.*,
　151 F.3d 1139 (9th Cir. 1998) .........................................................................12, 19

*United Sates ex rel. Surdovel v. Digirad Imaging Solutions*,
　2013 WL 6178987 (E.D. Pa. Nov. 25, 2013) ........................................................20

*United States ex rel. Texas Portland Cement Co. v. McCord*,
　233 U.S. 157 (1913) ...............................................................................................21

*Wells Fargo Bank, N.A. v. CCC Atlantic, LLC*,
　2013 WL 5676203 (D.N.J. Oct. 17, 2013) ...............................................................7

*Wiernik v. PHH U.S. Mortgage Corp.*,
　736 A.2d 616 (Pa. Super. Ct. 1999) ..................................................................23, 24

*Wright v. Lehigh Valley Hosp. & Health Network*,
　2011 WL 2550361 (E.D. Pa. Jun. 23, 2011)..........................................................15

*Woodwind Estates, Ltd. v. Gretkowski*,
　205 F.3d 118 (3d Cir. 2000) ...................................................................................14

## **Statutes and Ordinances**　　　　　　　　　　　　　　　　　　　　　　**Page**

31 U.S.C. § 3730(b)(2)...............................................................................................19

31 U.S.C. § 3730(c)(2)(A) .................................................................................18

2 Pa. C.S. § 752 ...............................................................................................21

2 Pa. C.S. § 754 ........................................................................................17, 21

42 Pa. C.S. § 933(a)(2) ...................................................................................22

42 Pa. C.S. § 933(c)(1) ....................................................................................22

42 Pa. C.S. § 5571(b) ...............................................................................18, 22

53 Pa C.S. § 5505(a)(1) ...................................................................................3

53 Pa. C.S. § 5505(a)(3) ...................................................................................3

53 Pa. C.S. § 5505(a)(4) ...................................................................................3

53 Pa. C.S. § 5505(d)(1) ...................................................................................4

53 Pa. C.S. § 5505(d)(21) .................................................................................4

53 Pa. C.S. § 5508.1(e)(1) ................................................................................3

53 Pa. C.S. § 5508.1(i) .....................................................................................3

53 Pa. C.S. § 5510.1(a) ....................................................................................4

53 Pa. C.S. § 5510.1(b)(2) ...............................................................................4

53 Pa. C.S. § 5515(b) .......................................................................................4

75 Pa. C.S. § 3116(a)(2) ..................................................................................4

75 Pa. C.S. § 3116(h)(2) ..................................................................................4

75 Pa. C.S. § 3116(*l*)(2) ..................................................................................4

75 Pa. C.S. § 6109(g)(2) ..................................................................................4

75 Pa. C.S. § 6109(g)(3) ..................................................................................4

Philadelphia Traffic Code § 12-2800(4) ..........................................................3

False Claims Ordinance § 19-3601(1) .............................................................5

False Claims Ordinance § 19-3602(7) .............................................................6

False Claims Ordinance § 19-3603(2)(a) .........................................................5

False Claims Ordinance § 19-3603(2)(b) ............................................7, 17, 23

False Claims Ordinance § 19-3603(2)(c) ........................................................19

False Claims Ordinance § 19-3603(6)(b) ..................................................18, 19

v

False Claims Ordinance § 19-3603(8)(a) ...........................................................................16, 23

False Claims Ordinance § 19-3603(8)(b) ..........................................................................16, 23

Defendants the City of Philadelphia ("the City") and Marcel Pratt, in his official capacity as City Solicitor of Philadelphia ("the City Solicitor"), submit this brief in support of their renewed motion to dismiss all of plaintiffs' claims with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6) and to strike plaintiffs' allegations under Rule 12(f).

## INTRODUCTION

Stripping away plaintiffs' baseless and offensive fantasy of "extortion" and "bribery," this case is about a very simple set of facts:  Plaintiffs and their lawyer want to bring a lawsuit on behalf of the City under Philadelphia's False Claims Ordinance ("FCO").  As the FCO requires, they submitted their proposed lawsuit to the City Solicitor and the City Solicitor, exercising his discretion under the FCO, reasonably concluded that the alleged fraud is not cognizable under that ordinance.  Plaintiffs failed in their original complaint to allege any basis to challenge that conclusion in this Court.  Recognizing their failure, they have now filed an amended complaint that does nothing to repair the problems with their claims and simply tacks on to their already defective allegations new imaginary and irrelevant assertions purporting to show that the City Solicitor's decision was "improperly motived" by "political expediency."  Plaintiffs' "improper motive" theory has been rejected by the Third Circuit and plaintiffs' newly invented allegations are offered only to prejudice the Court and insult the integrity of the City Solicitor and his Office.  These allegations should be stricken under Rule 12(f).

In addition, all of plaintiffs' claims should be dismissed with prejudice, with or without the new unfounded "improper motive" theory:

First, plaintiffs still have failed to allege any violation of substantive due process:  (i) The FCO itself easily satisfies rational basis review; (ii) plaintiffs have no constitutionally protected interest in bringing their proposed lawsuit; and (iii) their conclusory allegations of "extortion" and "bribery" — which they conspicuously make on undisclosed "information and belief," without pleading any source or basis — do not begin to pass muster under *Twombly* and *Iqbal*.  Moreover, plaintiffs fail to acknowledge that the "improper motive" standard on which they rely has been abrogated by the Third Circuit.

Second, plaintiffs still have failed to allege any violation of procedural due process. They have not alleged any protected property interest and, on their own allegations, they were given all the process they were "due." Indeed, plaintiffs themselves now say that they could have used a state-court procedure to seek review of the City Solicitor's decision under Pennsylvania's Local Agency Law and they chose not to do so.

Third, plaintiffs do not allege any violation of their First Amendment rights. The FCO's confidentiality clause, and its closely related seal provision, are both reasonably limited by applicable law and court approval. When plaintiffs were about to file their original complaint on a claimed "emergency" basis, defendants' counsel requested that they adhere to these confidentiality and seal provisions solely with respect to the complaint and its attached documents. On their own allegations, their lawyer "elected" to do so. Less than three weeks later, defendants agreed that these documents could be unsealed. Plaintiffs' allegations fail to show that the City Solicitor has adopted a sweeping "interpretation" of the FCO that somehow unreasonably restricted their free speech rights.

Fourth, plaintiffs' amended complaint contains another frivolous claim that plaintiffs somehow have a right to pursue in *this* Court a *state*-court appeal remedy under Pennsylvania's Local Agency Law that, as already noted, they did not attempt to pursue in the time allowed. In addition to making no jurisdictional sense, this contention refutes any suggestion that plaintiffs were deprived of due process.

Fifth, plaintiffs' amended complaint still does not plead state-law claims for breach of contract or unjust enrichment. The FCO is not a contract that binds the City to approve a lawsuit and plaintiffs did not confer any "benefit" on the City by suggesting a lawsuit the City has reasonably concluded is not cognizable under the FCO.

In short, all of plaintiffs' claims should be rejected and this action should be dismissed with prejudice.

## BACKGROUND

### A.    The Alleged Fraud

Plaintiffs say that while they were employed at the Philadelphia Parking Authority (the "Parking Authority"), they discovered an alleged fraud being committed by the Parking Authority's former Executive Director and by Conduent State & Local Services ("Conduent"), the contractor the Parking Authority had engaged to administer the City's automated red-light enforcement system.  Plaintiffs assert that they were terminated when they brought the putative fraud to the Parking Authority's attention and tried to prevent Conduent's contract from being renewed.  Am. Compl. ¶ 28-29.  For reasons discussed below, the City Solicitor reasonably concluded that this fraud theory is not cognizable under the FCO.

### B.    The Parking Authority and the City

Plaintiffs' underlying assumption is that the City is somehow a victim of the fraud they allege was committed against the Parking Authority.  This is wrong as a matter of law.

The Parking Authority was established under a Pennsylvania statute in order to "exercis[e] public powers of the Commonwealth *as an agency of the Commonwealth*."  53 Pa C.S. § 5505(a)(1) (emphasis added).  Its governing board is appointed by the Governor of Pennsylvania.  53 Pa. C.S. § 5508.1(e)(1) & (i); *see also City of Philadelphia v. Rendell*, 888 A.2d 922, 927 & n.11 (Pa. Commw. Ct. 2005).  Expressly by statute, the Parking Authority "shall not be deemed to be an instrumentality of the" City, though the City is permitted to delegate certain functions to it.  53 Pa. C.S. § 5505(a)(3) & (4).  Specifically, the Parking Authority maintains "off-street" parking facilities at the Philadelphia International Airport and other locations, which it leases from the City.  *See Rendell*, 888 A.2d at 926 & n.6.

The City has also delegated to the Parking Authority "powers relating to the administration, supervision and enforcement of on-street parking regulations."  Philadelphia Traffic Code § 12-2800(4).  In particular, the Parking Authority collects revenue from meter payments, permit fees, parking fines, vehicle auction proceeds and booting and towing fees, pays a portion of this revenue to the City (capped at $35 million per year with an annual adjustment,

3

after deducting operating expenses), and pays the rest to the School District of Philadelphia, which is separate from and independent of the City.  53 Pa. C.S. § 5505(d)(21); 75 Pa. C.S. § 6109(g)(2) & (3).[1]

In addition to these off-street and on-street parking operations, the Parking Authority administers an automated camera system for recording red-light violations at certain intersections in Philadelphia and assessing penalties for such violations.  75 Pa. C.S. § 3116(a)(2) & (h)(2).  It is this system that plaintiffs say has been at the center of a years-long fraud committed against the Parking Authority.  Penalties collected by the Parking Authority under this system are not paid to the City.  Instead, they are paid to the Pennsylvania Department of Transportation and deposited in the Motor License Fund.  75 Pa. C.S. § 3116(*l*)(2).

Aside from the Parking Authority's payments to the City from on-street parking revenue, and lease payments for off-street parking facilities, no other funds generated by the Parking Authority's parking and enforcement operations are shared with the City, *see* 53 Pa. C.S. § 5510.1(a) & (b)(2), and plaintiffs do not allege otherwise.[2]

---

[1] *See also* http://www.philapark.org/2017/05/ppa-funding-to-the-school-district-how-does-it-work/ (depicting yearly payments to the City and the School District from on-street parking operations).  As discussed further below, plaintiffs allege that the Parking Authority supposedly has "underpaid" the City amounts owed from on-street parking operations, *see* Am. Compl. ¶ 114 n.17, but they do not allege that these underpayments are in any way related to, or the result of, the alleged fraud involving Conduent and the red-light camera system.

[2] Plaintiffs do allege that funds belonging to the Parking Authority conceivably could be transferred to the City in the future if the Parking Authority's existence is terminated.  *See* Am. Compl. ¶ 73; *see also* 53 Pa. C.S. § 5505(d)(1) (giving the Parking Authority an initial 50-year term of existence, subject to renewal for up to an additional 50 years).  Any such transfer of funds would be contingent on the Parking Authority's having "finally paid and discharged all bonds issued and outstanding and the interest due on them and settled all other outstanding claims against it."  53 Pa. C.S. § 5515(b).  Whether any funds would remain after satisfying such obligations is, of course, unknown and unknowable.  Moreover, contrary to plaintiffs' assumption, the potential future transfer of assets from the Parking Authority to the City, decades hence, does not establish that a fraud committed against the Parking Authority today is a fraud against the City that would be cognizable under the FCO.  For precisely this reason, plaintiffs' reliance on *Price v. Philadelphia Parking Authority*, 221 A.2d 138 (Pa. 1966), is misplaced.  *See* Am. Compl. ¶ 74.  *Price* held that this potential future transfer of assets was enough to give two

*…Continued*

C.     **Plaintiffs' Proposed Lawsuit**

Plaintiffs engaged an attorney who drafted a proposed complaint based on the alleged fraud and presented it to the City Solicitor pursuant to Section 19-3603(2)(a) of the FCO.[3]

In very short summary, the City Solicitor reasonably concluded that plaintiffs' proposed lawsuit would not be cognizable under the FCO for several reasons:

- Plaintiffs' theory is that the Parking Authority is a "contractor" of the City for purposes of the FCO, and that Conduent is its "subcontractor." *See* Proposed Complaint ("Prop. Compl.") ¶¶ 218, 229, 249, 271, 290, 313. Plaintiffs allege that payments by the *Parking Authority* to Conduent under Conduent's contract to administer the red-light camera system are "false claims." Prop. Compl. ¶¶ 235, 236, 249, 256, 272, 278, 297, 298, 317, 321. But the FCO defines a "claim" as a "request or demand" for "money or property, or financial assistance" that is "made" to the City, or to a "contractor" of the City, for which *the City* either will provide a "portion of the money or property which is requested or demanded," or will "reimburse" a contractor for a "portion of the money or property" "requested or demanded." FCO § 19-3601(1). Plaintiffs allege no such "claim" in their proposed complaint.

- Plaintiffs *do* allege that the Parking Authority makes payments to the City related to on-street parking operations and for parking facilities that the Parking Authority leases at the Philadelphia airport. Prop. Compl. ¶ 211. But these payments are in the wrong direction — *from* the Parking Authority *to* the City. For plaintiffs' FCO theory to make sense, they must identify payments in the opposite direction — *by* the City *to* the Parking Authority to either "provide," or to "reimburse" the Parking Authority for, the "money or property" "requested or demanded" by Conduent. Plaintiffs do not do this.

- Plaintiffs allege that the Parking Authority improperly allocates more overhead than it should to its on-street operations and to the airport facilities. Prop. Compl. ¶ 220. But this does not demonstrate that the City provided, or reimbursed the Parking Authority for, money or property the Parking Authority gave *to* Conduent

---

*Continued from previous page*

Philadelphia taxpayers standing to seek an *injunction* against a real estate transaction involving the Parking Authority they alleged to be improper. *Price* has nothing to do with whether a fraud *against* the Parking Authority (which is all plaintiffs allege) is cognizable under the FCO. The City Solicitor reasonably concluded that it was not, and plaintiffs cite nothing to the contrary.

[3] The proposed complaint is attached as Exhibit A to plaintiffs' amended complaint in this action.

under the red-light camera program.  Furthermore, plaintiffs do not allege that Conduent or the Parking Authority's former Executive Director were responsible for the alleged misallocation of overhead or that the alleged misallocation was even part of the fraud.

- In addition, plaintiffs' proposed complaint alleges that payments to Conduent under the red-light camera contract supposedly constitute "false record[s] or statement[s] to conceal, avoid or decrease an obligation to pay or transmit money or property to the City" in violation of FCO § 19-3602(7).  Prop. Comp. ¶¶ 237, 257, 279, 299, 322.  This theory also does not work because plaintiffs do not actually allege that payments to Conduent under the red-light camera contract resulted in any obligation to the City being "conceal[ed], avoid[ed] or decrease[d]."  Plaintiffs do suggest, as already discussed, that a "misallocation" of *overhead expenses* resulted in lower payments to the City for on-street operations and the airport facilities, but plaintiffs *do not allege that payments to Conduent under the red-light camera system are part of these overhead expenses*.  Nor would this be a plausible allegation if they did.  To the contrary, such payments would presumably be, if anything, direct expenses of the red-light camera program itself and plaintiffs allege that "direct expenses" are *not* affected by the "misallocation" problem they say affects overhead expenses.  Prop. Compl. ¶ 214.

- In a brand new allegation in their *amended* complaint, plaintiffs assert that Parking Authority officials "falsely represented to the City of Philadelphia that it was unable to pay the full amounts due" from on-street parking operations, Am. Compl. ¶ 36, but this new allegation *is not in the proposed FCO complaint they submitted to the City Solicitor*.  Because plaintiffs admit that they were not aware of this new assertion when they submitted that complaint, *see* Am. Compl. ¶ 82 n.15, they do not (and presumably cannot) plead that they are the primary source of this allegation, so plaintiffs could not bring an FCO lawsuit based on it in any event.

### D.    The City Solicitor's Thorough and Reasonable Review of Plaintiffs' Proposed Lawsuit

The FCO makes clear that the City Solicitor has discretion to determine how to proceed with any proposed complaint submitted for his review.  Specifically, the FCO states that the City Solicitor "*may*" decide to do any of the following:

> (.1)    Bring a civil action, based upon the facts alleged in such complaint, against one or more of the defendants named therein;

> (.2)    Enter into an agreement with and designate the person who submitted the proposed complaint or, if that person is not an attorney, his or her attorney, to file a civil action for the person and the City, in the name of the City, based upon the

6

facts alleged in the complaint, against one or more of the
defendants named therein;

(.3)   Decline to commence a civil action and decline to
designate the person who submitted the proposed complaint
to commence a civil action; or

(.4)   Proceed in any other manner the City Solicitor deems
appropriate.

FCO § 19-3603(2)(b).

Even construing all allegations in plaintiffs' favor, their amended complaint on its face
demonstrates that the City Solicitor and his staff thoroughly evaluated the proposed complaint,
had a number of discussions with plaintiffs' counsel about the allegations, and concluded that the
claim is not cognizable under the FCO because there is no evidence that the City has been
fraudulently led to pay any money as a result of any false claim submitted to it by anyone.[4]

Plaintiffs allege that they first submitted their proposed complaint to the City Solicitor on
October 17, 2018. Am. Compl. ¶ 43. Two weeks later, on November 2, 2018, they had a
telephone discussion with Ms. Diana Cortes, who chairs the Litigation Group in the City
Solicitor's Office. Ms. Cortes communicated the City Solicitor's entirely reasonable conclusion
that the FCO is inapplicable to plaintiffs' allegations. Am. Compl. ¶ 45. Plaintiffs acknowledge
that in that very phone call, Ms. Cortes invited their lawyer to provide additional authority to
support his contrary opinion that the FCO did apply. Am. Compl. ¶ 50. Plaintiffs allege that
their lawyer had email exchanges with Ms. Cortes over the next few days, Am. Compl. ¶¶ 51-53,
then another telephone discussion on November 15, 2018, Am. Compl. ¶¶ 54-64, then an in-

_____

[4] Much of plaintiffs' amended complaint is simply their *counsel's* subjective impressions of
discussions that he had with the City Solicitor's Office. *See, e.g.,* Am. Compl. ¶¶ 45-97.
Plaintiffs' counsel's subjective characterizations are not facts and are not entitled to any
assumption of truth at the 12(b)(6) stage. *See Wells Fargo Bank, N.A. v. CCC Atlantic, LLC*,
2013 WL 5676203, *1 (D.N.J. Oct. 17, 2013) ("[U]nder *Twombly* and *Iqbal* this Court is not
required to accept as true characterizations of the facts."); *cf. Choates v. Aker Philadelphia
Shipyard*, 2018 WL 637657, *10 (E.D. Pa. Jan. 31, 2018) ("[P]ersonal feelings and subjective
assumptions and beliefs are not facts.").

person meeting at the City Solicitor's Office on January 29, 2019, with Ms. Cortes and Ms. Eleanor Ewing, who is Chief of the City Solicitor's Affirmative and Special Litigation Unit, Am. Compl. ¶ 65.  Plaintiffs allege in detail the thorough discussion that took place at this meeting regarding the applicability of the FCO and the basis for the City Solicitor's conclusion that the FCO did not apply.  Compl. ¶¶ 65-98.  Lastly, plaintiffs attach to their complaint a detailed, well-reasoned letter that shows the careful and deliberative fashion in which the City Solicitor considered and declined to authorize plaintiffs' proposed lawsuit.  *See* Am. Compl., Ex. B.

## ARGUMENT

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2006)).  The complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555.  Plaintiffs' own allegations, the exhibits to the complaint, and the public record, which this Court can consider, and plaintiffs cannot ignore, demonstrate that plaintiffs have failed to state any plausible claim. *See City of Pittsburgh v. West Penn Power Co.,* 147 F.3d 256, 259 (3d Cir. 1998) (when deciding a motion to dismiss, the Court may consider "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record").

In addition, under Rule 12(f), the Court "may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  Plaintiffs' amended complaint contains numerous allegations that have no relevance to their claims, are the very definition of "scandalous," and clearly are being asserted for an improper purpose and without any adequate inquiry.  The Court should strike these allegations.

## I.     The Court Should Strike Plaintiffs' Baseless Assertions of "Political Expediency."

Plaintiffs' amended complaint contains gratuitous, unfounded allegations that plainly were motivated by nothing other than a desire to embarrass, insult and stain the reputation of the City Solicitor, his Office, and other City officials.  Many of these allegations are made only on

"information and belief," for which plaintiffs noticeably do not plead the source or basis, indicating that they could not have been supported by a reasonable investigation.

"[M]otions to strike are the proper means to eliminate matters in the pleadings that are redundant, immaterial, impertinent, or scandalous." *Correctional Med. Care, Inc. v. Gray*, 2008 WL 248977, *10 (E.D. Pa. Jan. 30, 2008) (internal quotation marks omitted).  The Court should strike from the amended complaint:

- Allegations of purported illegal conduct by non-parties that are both utterly irrelevant and plainly asserted for an improper purpose:  Plaintiffs assert "on information and belief," without identifying any source or basis, that Mayor Kenny supposedly "tamper[ed] with the life insurance benefits" of "a deceased firefighter" as a "favor" to the Parking Authority's former Executive Director, Mr. Fenerty, because Mr. Fenerty "was in a relationship with the decedent's spouse."  Am. Compl. ¶¶ 118-20.  These allegations needlessly attack "the moral character of an individual" and "detract[] from the dignity of the court."  *Collura v. City of Philadelphia*, 2012 WL 6645532, *7 (E.D. Pa. Dec. 21, 2012) (internal quotation marks omitted).  They are "cruelly derogatory" and "plainly scandalous under Rule 12(f)."  *Id.*  Moreover, plaintiffs do not allege that the City Solicitor or anyone in his Office *was aware of this supposed conduct*, nor do plaintiffs explain how this conduct could somehow come to light if the City Solicitor designated them to pursue an FCO lawsuit that has nothing to do with the alleged "tampering."  Accordingly, these allegations do not and cannot create any inference that the City Solicitor could have felt it was "politically expedient" to refuse to designate plaintiffs to pursue their proposed lawsuit.  They "are in no way material or pertinent to plaintiffs' claims" and should be stricken.  *Gray*, 2008 WL 248977 at *18.

- Unsupported conclusory and derogatory assertions directed at members of the City Solicitor's Office:  Plaintiffs allege, again on information and belief, and

9

without identifying any source or basis, that the City Solicitor purportedly handpicked Ms. Cortes "to handle Plaintiffs' complaint" because she supposedly was "politically reliable despite her ongoing lack of understanding of the City's FCO." Am. Compl. ¶ 133. This is not a factual allegation. It is a completely inappropriate insult directed at both the City Solicitor and a member of his Office that has no place in this action. Plaintiffs could not have conducted any reasonable inquiry prior to making this assertion and it simply is not plausible when contrasted with the detailed and reasonable letter that Ms. Cortes sent on February 8 explaining the grounds for the City Solicitor's conclusion that plaintiffs' proposed lawsuit is not cognizable under the FCO.

- <u>Other allegations of irrelevant conduct that do not begin to show the City Solicitor could have been "improperly motivated" to decline to authorize their proposed lawsuit</u>: Plaintiffs add a laundry list of further scandalous assertions that are calculated to try to provide maximum shock value without adding anything helpful to plaintiffs' case. Plaintiffs assert, again on "information and belief," that John Dougherty and "his union" "benefit" from the Conduent contract because they were "hired to perform installation work." Am. Compl. ¶ 122. Plaintiffs assert that Mr. Dougherty's sister-in-law works for Conduent. Am. Compl. ¶ 124. Plaintiffs assert that the Parking Authority's chairman Joseph Ashdale has "a close personal and political relationship" with Mayor Kenney. Am. Compl. ¶ 126. And they allege that Mr. Ashdale and Mr. Fenerty "extorted and bribed" the City Council to "kill an audit" of the Parking Authority in 2016. Am. Compl. ¶ 127. None of these allegations plausibly shows that the City Solicitor could have been motivated to decline to designate plaintiffs to pursue their proposed FCO lawsuit. Plaintiffs do not allege that Mr. Fenerty or Mr. Ashdale or anyone else discussed the proposed lawsuit with the City Solicitor or anyone in Office, or requested or pressured them not to authorize the lawsuit. Instead, plaintiffs allege

only that the City Solicitor was "explicitly or implicitly" aware of the "extensive scope of corruption" and, acting in his own "self-interest," decided to sweep plaintiffs' proposed lawsuit under the rug.  Am. Compl. ¶¶ 131-32, 151-53. These allegations unfairly attack the integrity of the City Solicitor and everyone in his Office, who, according to the only *factual* allegations that plaintiffs make, did nothing more than devote significant time and resources to reviewing plaintiffs' proposed lawsuit and reasonably concluded that it was not cognizable under the FCO.

For all these reasons, the Court should strike paragraphs 114-34, 151-53 and 181-85 from plaintiffs' amended complaint.

## II.     Plaintiffs Still Have Not Stated a Substantive Due Process Claim.

Despite all of their irrelevant and baseless assertions of "extortion and bribery," plaintiffs still have not adequately pleaded any substantive due process claim.  Plaintiffs unsuccessfully attempt to bring both a "legislative" challenge to the FCO (in Count 1), and a "non-legislative" challenge to the City Solicitor's decision not to authorize their proposed lawsuit (in Count 3). *See Nicholas v. Pa. State Univ.*, 227 F.3d 133, 139 (3d Cir. 2000) (distinguishing "legislative" from "non-legislative" substantive due process claims).  The former claim fails because the FCO is subject only to rational basis review, which it easily satisfies.  The latter claim likewise fails because plaintiffs have not pleaded a protected property interest and their attempt to allege that the City Solicitor had an "improper motive" is wholly insufficient.[5]

---

[5] Plaintiffs cite provisions of the Pennsylvania Constitution in addition to the United States Constitution in support of all of their constitutional claims.  The analysis is the same under both constitutions, so plaintiffs' claims fail whichever provisions are applied.  *See, e.g., Robbins v. Cumberland Cty. Children & Youth Servs.*, 802 A.2d 1239, 1245 (Pa. Commw. Ct. 2002) (substantive due process); *Meyer v. City of Pittsburgh Historic Review Comm'n*, 201 A.3d 929, 938 (Pa. Commw. Ct. 2019) (procedural due process); *Comm. v. Selenski,* 996 A.2d 494, 496-97 & n. 5 (Pa. Super. Ct. 2010) (free speech and right of access to court proceedings).

**A.      The FCO Easily Satisfies Rational Basis Review.**

To satisfy rational basis review, which plaintiffs concede is the governing standard, the City need only offer "a conceivable rational basis for its action," and plaintiffs, by contrast, must "negative every conceivable basis which might support it." *Am. Express Travel Related Servs., Inc. v. Sidamon-Eristoff*, 669 F.3d 359, 366-67 (3d Cir. 2012). Plaintiffs cannot do this.

There are obvious legitimate reasons for giving the City, as the owner of any claim under the FCO, the power to authorize or to decline to authorize the bringing of a lawsuit in its name. Even where a private party brings the lawsuit, the lawsuit inevitably will consume the City's valuable and scarce resources. The City will be forced to deal with written discovery, depositions, and the other burdens of litigation. The City will have to monitor the lawsuit and will be responsible for its ultimate resolution. And the lawsuit will, of course, consume the resources of the Court in which it is filed. For all of these reasons, it makes eminently good sense for the City, as the owner of the claim, to have control over whether any lawsuit should be filed. If the City determines, as here, that a lawsuit is not cognizable under the FCO, the City's option to decline to authorize the lawsuit clearly and obviously serves a legitimate government purpose.

Plaintiffs' complaint is devoid of any factual allegations that would "negative" these "conceivable bas[es]" for the City's action. Plaintiffs' sole attempt to do so is in a conclusory footnote in which they assert that designating a private party to bring an FCO lawsuit "either does not consume city resources or use[s] such minimal resources that it can be safely ignored." Am. Compl. ¶ 23 n.1. This does not pass as a fact and it flouts common sense — and even under Rule 12 the Court is permitted "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679, 681. As courts have noted in the context of the federal False Claims Act ("FCA"), the government can still "incur enormous internal staff costs" even where a private relator prosecutes the action. *United States ex rel. Sequoia Orange Co. v. Baird-Neece Packing Corp.*, 151 F.3d 1139, 1146 (9th Cir. 1998). Plaintiffs do not allege any reason why a different conclusion should apply to the FCO. When faced with a tenuous chance of recovery at best, the

City can reasonably conclude that the likelihood of success simply is not worth it. That the FCO gives the City the opportunity to make such a determination before the lawsuit is filed is plainly rational. Plaintiffs simply disagree with it.

Plaintiffs' only other argument is that by giving the City the option to decline to authorize the lawsuit, the FCO supposedly "disincentivizes other potential relators" from proposing lawsuits. Am. Compl. ¶ 154. The answer to that argument, is that no lawsuit *with merit* will be disincentivized because the City controls whether the lawsuit will be brought. The City Solicitor's review enhances the probability that lawsuits with merit will be brought and reduces the likelihood that Courts will be burdened with adjudicating meritless lawsuits.

"[U]nder rational basis scrutiny for substantive due process, courts are not free to invalidate state [or local] law because they disagree with the underlying policy decisions." *New Jersey Retail Merchants Ass'n v. Sidamon-Eristoff*, 669 F.3d 374, 399-400 (3d Cir. 2012) (citing *Planned Parenthood of S.E. Pa. v. Casey*, 505 U.S. 833, 849 (1992)). Plaintiffs may wish the FCO had been written differently, but that does not state a substantive due process claim.

## B. Plaintiffs' Non-Legislative Substantive Due Process Claim Fails.

Plaintiffs cannot state a non-legislative substantive due process claim either: First, they fail to meet the "threshold" requirement of alleging a "fundamental" property interest. *Newark Cab Ass'n v. City of Newark*, 901 F.3d 146, 155 (3d Cir. 2018). Second, they fail to allege "conscience shocking" conduct by the City Solicitor or his Office. *United Artists Theatre Circuit, Inc. v. Twp. of Warrington, Pa.*, 316 F.3d 392, 399 (3d Cir. 2003).

### 1. Plaintiffs Still Do Not Allege any Interest Protected by Substantive Due Process.

The only property interest that the Third Circuit has recognized as protected by substantive due process is an interest in real property. *Newark Cab Ass'n*, 901 F.3d at 155 (citing *Nicholas*, 227 F.3d at 140). Plaintiffs obviously allege no such interest here. Instead, the sole interest they allege is their speculative, inchoate and self-granted entitlement to "a portion of the proceeds" from a possible recovery in a proposed lawsuit. Am. Compl. ¶ 164. That does not

qualify. *Reich v. Beharry,* 883 F.2d 239, 244 (3d Cir. 1989) (claimed interest in "the receipt of payment" did not qualify for substantive due process protection). Hence, plaintiffs' substantive due process claim against the City Solicitor should be rejected.

    2.  **Plaintiffs Still Fail to Plausibly Allege any Outrageous or Conscience Shocking Conduct.**

  Plaintiffs have added to their amended complaint a series of conclusory, baseless and offensive allegations purporting to show that the City Solicitor's decision not to designate them to pursue their proposed lawsuit was "improperly motived" by "political expediency" rather than the "merits" of their purported claim. Am. Compl. ¶¶ 114-34. These allegations fail to state a claim for several reasons.

  First, plaintiffs wrongly assume that merely alleging that an official had an "improper motive" is sufficient to state a substantive due process claim. They cite *Woodwind Estates, Ltd. v. Gretkowski*, 205 F.3d 118, 124 (3d Cir. 2000), without acknowledging that the Third Circuit abrogated *Gretkowski*'s "improper motive" standard in *United Artists*. *See* Am. Compl. ¶ 178; *see also United Artists*, 316 F.3d at 400. Similarly, plaintiffs assert that the City Solicitor's "justifications" for declining to designate them to bring their proposed lawsuit were "incorrect" and were not based "fairly on the merits." Am. Compl. ¶ 180. But, again, "merely alleging an improper motive is insufficient, *even where the motive is unrelated to the merits of the underlying decision*." *Chainey v. Street*, 523 F.3d 200, 220 (3d Cir. 2000) (emphasis added).

  Second, plaintiffs must plausibly allege, consistent with *Twombly*, that the City Solicitor *himself* engaged in "egregious official conduct," *United Artists*, 316 F.3d at 399, like "corruption, self-dealing, bias against an ethnic group, or additional facts that suggest[] conscience-shocking behavior," *Chainey*, 523 F.3d at 220 (citing *Eichenlaub v. Twp. Of Indiana*, 385 F.3d 274, 286 (3d Cir. 2004)). Plaintiffs simply have not done this. While plaintiffs make conclusory allegations of "extortion and bribery" involving various non-parties to this case, Am. Compl. ¶¶ 116, 127, they do not and cannot allege that the City Solicitor or anyone in his Office was "extorted" or "bribed" to decline to designate them to pursue their proposed lawsuit. Nor do

they allege that anyone outside of the City Solicitor's Office communicated with the City Solicitor or his staff and either requested, encouraged or pressured them to decline to designate plaintiffs to pursue the lawsuit.  Instead, they say without factual support that "the City Solicitor's office" supposedly "explicitly or implicitly knew" of the alleged "extensive scope of the corruption," and decided "that Plaintiff's proposed complaint was too politically sensitive to move forward."  Am. Compl. ¶¶ 131-32.  They try to prop up this unsupported assertion solely on their own illogical ipse dixit that the City Solicitor "'works' for both the [City] Council and the Mayor[']s office, and it is against his self-interest to allow FCO claims to go [forward] against those individuals or anyone who might be associated with them."  Am. Compl. ¶ 151.  Simply "working for" the City does not provide a basis to question the integrity and independence of the City Solicitor.  Plaintiffs must plead *facts* plausibly suggesting that the City Solicitor was improperly influenced to decline to authorize their lawsuit, and they have not done this.

Third, plaintiffs' central allegations are made only on "information and belief."  *See* Am. Compl. ¶¶ 116, 118, 119, 120, 133, 134.  Such allegations are only permissible under *Twombly* "so long as there is a proper factual basis asserted to support the beliefs pled."  *Wright v. Lehigh Valley Hosp. & Health Network*, 2011 WL 2550361, *3 (E.D. Pa. Jun. 23, 2011) (internal quotation marks omitted).  Plaintiffs' allegations here are "utterly devoid of any factual basis asserted to support the beliefs pled."  *Id.*  Plaintiffs cannot contend that "facts required to be pled are uniquely in the control of the defendant."  *Klein v. County of Bucks*, 2013 WL 1310877, *8 (E.D. Pa. Apr. 1, 2013).  For example, there is no reason whatsoever to suppose that the City Solicitor is somehow in a unique position to know of facts related to plaintiffs' outrageous contention that Mayor Kenney altered the beneficiaries on a life insurance policy.  If plaintiffs cannot plead the source of this contention, it is entitled to no credit.  *Bronson v. Samsung Elecs. Am., Inc.*, 2018 WL 5809418, *3 (N.D. Cal. Nov. 6, 2018) ("Adding on 'information and belief' does not fill in the blank unless a plausible source is cited (and none is cited in the complaint).");  *see also Klein*, 2013 WL 1310877 (rejecting plaintiff's "information and belief" allegations

under *Twombly* because "a conclusory recitation that [a defendant] had knowledge of the alleged retaliation of other Defendants and failed to take any action, fails to state any actual facts").

Thus, plaintiffs still have not properly alleged "conscience-shocking" or "egregious" conduct by the City Solicitor.  Their substantive due process claim should be dismissed with prejudice.

## III.    Plaintiffs Have Done Nothing to Save Their Procedural Due Process Claim From Dismissal.

Plaintiffs' amended complaint does not cure the fatal flaws in their procedural due process claim:  (a) plaintiffs still fail to plead any protected property interest; and (b) on their own allegations, they received all the process they were "due."

### A.    Plaintiffs Still Do Not Allege any Protected Interest.

Plaintiffs never identify a property interest that is protected by procedural due process. They can have no protected interest in *bringing* their proposed lawsuit because the FCO makes clear that any claim belongs to the City.  *Cf. United States ex rel. Mateski v. Mateski*, 634 Fed. Appx. 192, 195 (9th Cir. 2015) (rejecting relator's argument that he had a property interest in his lawsuit under the federal FCA because "the underlying claim of fraud always belongs to the government").

Nor could plaintiffs have any protected property interest in any potential share of the proceeds that they hope could be recovered in the lawsuit.  Plaintiffs focus solely on the statement in the FCO that *if* a lawsuit is authorized by the City and *if* that lawsuit is successful in recovering proceeds, *then* the party who suggested the lawsuit "shall be entitled to receive" a specified portion of the proceeds.  FCO § 19-3603(8)(a) & (b).  But that arguments ignores that any speculative "entitlement" to proceeds that may or may not ultimately be recovered is dependent on the double contingency of the lawsuit being authorized by the City and then ultimately being successful in recovering funds.  This "highly speculative and contingent 'interest'" in potential future proceeds does not rise "to the level of an accrued property right" protected by due process.  *Mitchell v. Harris*, 496 F. Supp. 230, 234 (D.N.J. 1980); *cf. Baraka v.*

*McGreevey*, 481 F.3d 187, 205 (3d Cir. 2007) (plaintiffs must assert "more than an abstract need or desire," or a "unilateral expectation" of benefits).

Moreover, the FCO, by its plain language, makes clear that plaintiffs have no right to expect that any lawsuit will be authorized by the City.  The FCO states that the City Solicitor "*may*" take any number of actions, including "[d]eclin[ing] to commence a civil action and declin[ing] to designate the person who submitted the proposed complaint to commence a civil action," and "[p]roceed[ing] in any other manner the City Solicitor deems appropriate."  FCO § 19-3603(2)(b)(.3) & (.4).  That language, which gives the City Solicitor sole discretion in determining whether and how to proceed, leaves plaintiffs no room for any "legitimate claim of entitlement" to bring a lawsuit the City Solicitor has declined to authorize.  *Potts v. City of Philadelphia*, 224 F. Supp. 2d 919, 941 (E.D. Pa. 2002).

Nor can plaintiffs contend that they somehow have a constitutionally protected interest in the *process* of submitting a proposed lawsuit under the FCO and having it considered by the City Solicitor in some manner that they would like to dictate.  "[P]rocedural interests under state law are not themselves property interests that will be enforced in the name of the Constitution."  *Dist. Counsel 33, Am. Fed. Of State, Cnty. & Mun. Emps., AFL-CIO v. City of Phila.*, 944 F. Supp. 392, 395 (E.D. Pa. 1995).

Without a protected property interest, plaintiffs' due process claim fails.

**B.    On Their Own Allegations, Plaintiffs Have Received all the Process they Were Due.**

Even if plaintiffs had alleged a constitutionally protected property interest, they still could not state a due process claim because they were not "deprived" of any such interest without due process.

For starters, plaintiffs now allege that they *had* a procedure available in state court that they say they could have utilized to seek review of the City Solicitor's decision, namely, an appeal under Pennsylvania's Local Agency Law, 2 Pa. C.S. § 754.  *See* Am. Compl. ¶¶ 203-13. Assuming for the sake of argument that the City Solicitor's decision would have been reviewable

17

in such an appeal, the time to bring it would have been 30 days from the date of the decision (March 11, 2019, at the latest), *see* 42 Pa. C.S. § 5571(b); Am. Compl., Ex. B., and plaintiffs chose not to do so.  "If there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants."  *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000).

Moreover, even aside from the Local Agency Law, plaintiffs cannot allege that they were deprived of due process here.  Contrary to plaintiffs' arguments, due process does not always require a procedure "akin to a 'judicial proceeding.'"  Am. Compl. ¶ 169(c).  To the contrary, "[i]nformal procedures have been found sufficient to comport with due process under many circumstances."  *Taggart v. GMAC Mortgage, LLC*, 2013 WL 4079655, *4 (E.D. Pa. Aug. 12, 2013), *aff'd*, 600 Fed. Appx. 859 (3d Cir. 2015).  Plaintiffs' own allegations show both (1) that the City Solicitor "fully informed" them of the basis of his decision and (2) that his decision was "careful and deliberate."  *Board of Curators of the University of Missouri v. Horowitz*, 435 U.S. 78, 85 (1978).  Thus, plaintiffs have been "awarded at least as much due process as the Fourteenth Amendment requires" in these circumstances.  *Id.*

There is no merit to plaintiffs' suggestion that the FCO is somehow defective from a constitutional standpoint because it differs from the federal FCA in allowing the City Solicitor to review proposed lawsuits before they are filed.  While the FCA permits the United States to seek court approval for the dismissal of a relator's lawsuit after it has been filed, *see* 31 U.S.C. § 3730(c)(2)(A), and the FCO contains a similar provision permitting the City to move to dismiss a previously authorized lawsuit once it has been commenced, *see* FCO § 19-3603(6)(b), no court has ever suggested that these procedures are *constitutionally* mandated, and nothing in plaintiffs' complaint supports a different conclusion here.[6]

---

[6] Indeed, despite the federal FCA's provision for a hearing, the government still has essentially unfettered discretion to dismiss a case.  In some Circuits, the government's "decision to dismiss the case, based on its own assessment, is *not reviewable*," given the "historical prerogative [of

*…Continued*

18

In sum, the City Solicitor's decision to decline to commence plaintiffs' proposed lawsuit, and to decline to authorize their private attorney to do so, fully complied with whatever process plaintiffs were "due" under the circumstances of this case.  Plaintiffs' procedural due process claim should be dismissed.

## IV.     Plaintiffs' Attempt to Plead a First Amendment Claim Fails.

Like the federal FCA, the FCO contains provisions designed to preserve the confidentiality of allegations of fraud, subject to reasonable limitations.  The FCO states that "[i]nformation submitted by a person in support of a complaint" "shall be confidential and protected from disclosure to the fullest extent permitted under applicable law," and further provides for filing of any complaint under seal, so long as such sealing is "*permitted by the court*."  FCO §§ 19-3603(2)(c), (6)(a) & (6)(b) (emphasis added).  Plaintiffs contend that the FCO's confidentiality clause is "irrational and unreasonable" both "on its face" and "as interpreted by the City Solicitor."  Am. Compl. ¶¶ 196-99.  Both contentions are wrong.

There is nothing "irrational" about the FCO's limited provision for confidentiality and sealed filings.  Just as there are "numerous reasons" to support the federal FCA's mandate that any complaint be maintained under seal for a "narrow window of time," "including to preserve the integrity of a fraud investigation," *ACLU v. Holder*, 673 F.3d 245, 253 (4th Cir. 2011) (rejecting First Amendment challenge to the seal requirement under 31 U.S.C. § 3730(b)(2)), the FCO's requirement of confidentiality and its closely related provision for sealed filings, as "permitted by law" and "by the court," are similarly intended to preserve a reasonable period for

---

*Continued from previous page*
the Executive Branch] to decide which cases should go forward in the name of the United States."  *Hoyte v. Am. Nat'l Red Cross*, 518 F.3d 61, 65 (D.C. Cir. 2008) (citing *Swift v. United States*, 318 F.3d 250, 251 (D.C. Cir. 2003)).  Even in the Ninth Circuit, where some limited review of the government's decision to dismiss is permitted, the government is still free to dismiss an FCA case based on "the burden imposed on the taxpayers by its litigation," *regardless of whether case has merit.  Sequoia Orange Co.*, 151 F.3d at 1146.

evaluation and to prevent the dissemination of information relevant to the claimed fraud to parties who might attempt to interfere with the prosecution of the claim.  Thus, plaintiffs' facial challenge to the FCO should be rejected.

As to plaintiffs' erroneous contention that the City Solicitor supposedly has adopted an unconstitutional "interpretation" of the FCO's confidentiality provisions, based on selected quotations from an exchange of emails between the parties' counsel shortly before plaintiffs filed their original complaint, plaintiffs' own allegations refute their claim.

First, an email from defendants' counsel sent shortly before this action was filed, when plaintiffs were claiming a need to proceed on a supposed "emergency" basis, simply does not constitute an official "interpretation" of the FCO by the City Solicitor.  *Cf. Teesdale v. City of Chicago*, 690 F.3d 829, 837 (7th Cir. 2012) ("A mere legal position, without anything more, is insufficient to constitute an official policy.").

Second, the comment by defendants' counsel that plaintiffs quote was limited on its face to the two documents that plaintiffs' counsel intended to publicly file in this Court on February 21, 2019, namely, their "complaint against the City and the City Solicitor" and the underlying "proposed complaint against the Parking Authority and other parties" that plaintiffs' counsel intended to attach as an exhibit.  *See* Am. Compl. ¶ 135.  Defendants' counsel did not ask that plaintiffs limit in any way any public communications that they or their counsel might wish to make outside of these two filings.  Plaintiffs themselves allege that they have spoken with "the press," with a City councilperson and with "the Federal Bureau of Investigation," Am. Compl. ¶ 39, and neither the City nor the City Solicitor, nor their counsel, has suggested that such communications were somehow inconsistent with the FCO's confidentiality and seal provisions. Defendants' counsel's view on February 21 — again, solely as to the complaint and the accompanying proposed FCO pleading that plaintiffs were about to file — was that to the extent plaintiffs were claiming a right to proceed under the FCO, they should abide by its confidentiality provisions.  *Cf. United States ex rel. Surdovel v. Digirad Imaging Solutions*, 2013 WL 6178987, *4 (E.D. Pa. Nov. 25, 2013) ("A party pursuing a statutory remedy must comply

with all the procedures the statute mandates." (quoting *United States ex rel. Texas Portland Cement Co. v. McCord*, 233 U.S. 157 (1913)).[7]  Less than three weeks after these documents were filed, defendants agreed that they could be unsealed.  Therefore, the record as pleaded by plaintiffs simply does not support their conclusory allegation that the City Solicitor has adopted a sweeping "interpretation" of the FCO that somehow gags plaintiffs or coerces them into silence "upon 'risk' of some unknown penalty."  Am. Compl. ¶ 194.

Third, plaintiffs allege that while they do not believe there is any "entitlement to confidentiality under the FCO," their counsel nevertheless "*elected*" to file the complaint under seal.  Am. Compl. ¶ 137.  That "entirely voluntary" decision refutes any suggestion that "state-coerced action" somehow forced plaintiffs to file the action under seal for a brief period of time.  *R.C. Maxwell Co. v. Borough of New Hope*, 735 F.2d 85, 89 (3d Cir. 1984).  Therefore, plaintiffs' allegations do not plausibly show that their First Amendment rights have been in any way violated.

## V.   Plaintiffs Have No Right in this Court to Use a State Court Procedure for Review of "Local Agency" Adjudications.

In Count 5 of their amended complaint, plaintiffs rather strangely assert that they have a right in *federal* court to invoke a *state* court procedure for review of "local agency" action under Pennsylvania state law.  *See* 42 Pa. C.S. § 754; Am. Compl. ¶ 210.  This is wrong for two reasons.

First, the Local Agency Law provides that "[a]ny person aggrieved by an adjudication of a local agency who has a direct interest in such adjudication shall have the right to appeal therefrom *to the court vested with jurisdiction of such appeals by or pursuant to Title 42* (relating to judiciary and judicial procedure)."  7 Pa. C.S. § 752 (emphasis added).  Assuming for the sake

---

[7] A relator's failure to comply with the federal FCA's seal provisions permits, but does not mandate, dismissal of the lawsuit.  *See State Farm Fire & Cas. Co. v. United States ex rel. Rigsby*, 137 S. Ct. 436, 444 (2016).

of argument that the City Solicitor's Office is a "local agency" and that the City Solicitor's decision to decline to authorize plaintiffs' proposed lawsuit was an "adjudication," the court "vested with jurisdiction" to hear an appeal from that "adjudication" under Title 42 would be the Philadelphia County Court of Common Pleas, whose jurisdiction is "exclusive." *See* 42 Pa. C.S. §§ 933(a)(2) & (c)(1). Thus, plaintiffs are in the wrong Court.

Second, plaintiffs are out of time. The time limit for plaintiffs to have brought any appeal under the Local Agency Law was 30 days from the date of the "adjudication," 42 Pa. C.S. § 5571(b); *Berger & Montague, P.C. v. Philadelphia Historical Comm'n*, 898 A.2d 1, 4 (Pa. Commw. Ct. 2006), which would have been March 11, 2019 at the latest, *see* Am. Compl., Ex. B. Plaintiffs cannot bring an untimely "appeal" in the wrong Court now.

Thus, the Court should dismiss Count 5 of plaintiffs' amended complaint with prejudice.

## VI.   Plaintiffs Fail to State a Claim for Breach of Contract.

Plaintiffs allege that the FCO is an "offer to the public" that a private attorney can "accept" by submitting a "'signed and verified' complaint to the City Solicitor," and that a binding contract between the City and the private attorney is thereby created "[a]t the moment that complaint is submitted." Am. Compl. ¶¶ 216-18. This claim too should be dismissed.

"[A]bsent some clear indication that the legislature intends to bind itself contractually, the presumption is that a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise." *Nat'l R.R. Passenger Corp. v. Atchison, Topeka & Santa Fe Ry.*, 470 U.S. 451, 465 (1985) (internal quotation marks omitted). The Third Circuit has applied the same principle to city ordinances, rejecting the argument that an ordinance "create[s] a contract" in the absence of "express language creating contractual rights." *Newark Cab Ass'n*, 901 F.3d at 161; *see also Gratton v. Conte*, 73 A.2d 381, 385 (Pa. 1950) (rejecting contention that an ordinance "constitute[d] a contract").

As in *Newark Cab*, the FCO contains no "express language creating contractual rights." To the contrary, the FCO makes clear to any person submitting a proposed complaint that the

City Solicitor is *not* committing to accept it.  FCO § 19-3603(2)(b)(.3) & (.4).  Nor does the FCO's provision for a possible "share of the cash proceeds," Am. Compl. ¶ 222, suggest any intent "to create private contractual or vested rights," *Nat'l R.R.*, 470 U.S. at 466.  The FCO unambiguously states that a private person's entitlement to receive any such proceeds only arises "[*i*]*f* the City Solicitor has elected to commence a civil action based on a proposed complaint," or "[*i*]*f* a designated person or persons commence a civil action."  FCO § 19-3603(8)(a) & (b) (emphasis added).  Nothing in that hypothetical language "clearly and unequivocally expresse[s]" a contractual obligation on the City's part.  *Nat'l R.R.*, 470 U.S. at 465.

Thus, plaintiffs' breach of contract claim should be dismissed with prejudice.

## VII.   Plaintiffs' Quasi-Contract Claim Should Also Be Rejected.

Plaintiffs' quasi-contract or unjust enrichment claim fares no better.  To state a viable claim, plaintiffs must allege that: (1) they "conferred" a "benefit" on the City, (2) the "benefit" was "appreciat[ed] by" the City, and (3) under the circumstances, "it would be inequitable for [the City] to retain the benefit without payment of value."  *Wiernik v. PHH U.S. Mortgage Corp.*, 736 A.2d 616, 622 (Pa. Super. Ct. 1999).  Plaintiffs have alleged none of these elements.

First, plaintiffs do not allege any *benefit* conferred by them on the City.  Simply informing the City of a fraud allegedly committed against another agency in the Commonwealth and proposing that the City commence a lawsuit under an inapplicable ordinance does not confer a benefit on the City, particularly where the City rightly concludes the lawsuit would have little to no chance of success.

Second, plaintiffs do not allege that the "benefit" was "appreciat[ed] by" the City.  To the contrary, on plaintiffs' own allegations, the City did *not* appreciate the putative benefit and, instead, declined to authorize their proposed lawsuit.  Although plaintiffs say that their "valuable information" was "accepted and retained by" the City, they do not allege that the City is in any way *using* this information to its benefit, nor could they.  Am. Compl. ¶¶ 231-32.

Third, and lastly, plaintiffs do not allege any circumstances making it in any way "unjust" for the City to "retain" the "benefit" of plaintiffs' proposed lawsuit.  Am. Compl. ¶ 234.

Plaintiffs knew there was no guarantee the City Solicitor would designate them to pursue the lawsuit.  *Cf. Aloe Coal Co. v. Dep't of Transp.*, 643 A.2d 757, 768 (Pa. Commw. Ct. 1994) (rejecting unjust enrichment claim where plaintiff "could not have had a reasonable expectation of payment").  The only *facts* alleged by plaintiffs are that the City Solicitor considered their proposed lawsuit and declined to designate them to pursue it — in other words, that he acted in accordance with the FCO.  Nothing in plaintiffs' amended complaint suggests that this expressly authorized action was somehow nevertheless "unjust."  *Cf. Wiernik*, 736 A.2d at 622 ("[W]e cannot conclude that appellees could be unjustly enriched as a result of invoking their statutory rights.").

For all these reasons, plaintiffs' unjust enrichment claim should be dismissed along with their other claims.

## VIII.   The City Solicitor Should Be Dismissed as a Defendant.

Plaintiffs do not purport to assert claims against the City Solicitor in anything other than his official capacity.  "[B]ecause claims against individual defendants in their official capacities are equivalent to claims against the governmental entity itself," here the City, such claims "are redundant and may be dismissed."  *Burton v. City of Philadelphia*, 121 F. Supp. 2d 810, 812 (E.D. Pa. 2000).  The City Solicitor therefore should be dismissed as a defendant from this action.

**CONCLUSION**

For all these reasons, defendants the City of Philadelphia and Marcel Pratt, in his official capacity as City Solicitor of Philadelphia, urge the Court to dismiss all of plaintiffs' claims against them with prejudice and to strike paragraphs 114-34, 151-53 and 181-85 from plaintiffs' amended complaint.

Respectfully submitted,

/s/ Stephen A. Fogdall

Dated:  April 10, 2019

Stephen A. Fogdall (Pa. I.D. 87444)
Schnader Harrison Segal & Lewis LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103
Phone: (215) 751-2581
Fax: (215) 751-2205
sfogdall@schnader.com