**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

|  |  |  |
|---|---|---|
| **ANDREW J. DANKANICH** and | : | |
| **NICHOLAS A. MARRANDINO,** | : | |
| | : | **CIVIL ACTION** |
| *Plaintiffs*, | : | |
| | : | |
| **v.** | : | **No. 19-735** |
| | : | |
| **MARCEL PRATT,** *City Solicitor of* | : | |
| *Philadelphia*, **and CITY OF PHILADELPHIA,** | : | |
| | : | |
| *Defendants*. | : | |

_____

## ORDER

**AND NOW,** this 12th day of April, 2019, upon consideration of Plaintiffs' Motion for Preliminary Injunction and Temporary Restraining Order (Doc. No. 2), and Defendants' Brief in Opposition thereto (Doc. No. 6), and following a telephone conference regarding the Motion, I find as follows:

1. On February 21, 2019, Plaintiffs, Andrew Dankanich and Nicholas Marrandino, brought this action against Marcel Prattt, in his official capacity as City Solicitor of Philadelphia, and against the City of Philadelphia (hereinafter "the City").

2. Plaintiffs allege that, pursuant to the City's "False Claims Ordinance," they presented the City Solicitor with a draft complaint alleging a fraud perpetrated on the City. Plaintiffs explain that the City Solicitor declined to file that complaint in court, or permit Plaintiffs to do so on the City's behalf, pursuant to the qui tam provisions of the Ordinance.

3. Plaintiffs contend that this decision on the part of the City Solicitor violates their rights to procedural and substantive due process under the Fourteenth Amendment, asserting claims

for deprivation of these rights under 42 U.S.C. § 1983. Plaintiffs also assert state law claims for breach of contract and unjust enrichment based on the City Solicitor's decision.

4. Plaintiffs have moved for a temporary restraining order and a preliminary injunction that would, among other things, "requir[e] Defendants to designate Plaintiffs' Counsel to file a Civil Action under the [Ordinance]." For the reasons set out below, Plaintiffs' Motion will be denied. (Pls.' Proposed Or., Doc. No. 2 at 1.)

## FACTUAL AND PROCEDURAL BACKGROUND[1]

5. In 2010, the Philadelphia City Council enacted the City's "False Claims Ordinance" (hereinafter "the Ordinance"). Like the federal False Claims Act ("the federal Act"), the Ordinance incentivizes would-be whistleblowers to report instances of fraud on the government. The Ordinance does so by permitting individuals, in certain circumstances, to bring a civil qui tam action against an alleged fraudster on behalf of the City, and to be entitled to a share of any recovery in such an action. (See Compl. ¶¶ 12-22; see also Phila. Code § 19-3603.)

6. However, the Ordinance differs from the federal False Claims Act in how such an action is initiated. Under the federal Act, the individual—termed the relator—initiates the action by filing a complaint in district court. The federal Act then requires the relator to serve that complaint on the government only, while the complaint remains under seal, thus allowing the government time to review the complaint before it is unsealed and served on the defendant. After reviewing the relator's allegations, the government may decide to intervene and assume control over the direction of the litigation, or it may decline to

---

[1] The facts set out below are taken from Plaintiffs' verified Complaint and the exhibits attached thereto. While I note that Plaintiffs have since filed an Amended Complaint, Plaintiffs' Motion relies on the allegations set out in the original Complaint.

intervene and leave control of the litigation to the relator. (See Compl. ¶¶ 12-22; compare Phila. Code § 19-3603, with 31 U.S.C. §§ 3730-3731.)

7.   Under the Ordinance, however, the individual relator does not file a complaint with the court but, rather, submits a proposed complaint to the City Solicitor, allowing the Solicitor to review the complaint and conduct an investigation of the allegations raised therein before it is filed. And, importantly here, the Ordinance provides the City Solicitor complete discretion to file the complaint, permit the relator to file the complaint on the City's behalf, or do neither. Specifically, the Ordinance provides, in relevant part:

> (b)  After the investigation [of the allegations raised in the proposed complaint] has been completed, the City Solicitor may:
>
> > (.1)  Bring a civil action, based upon the facts alleged in such complaint, against one or more of the defendants named therein;
> >
> > (.2)  Enter into an agreement with and designate the person who submitted the proposed civil complaint or, if that person is not an attorney, his or her attorney, to file a civil action for the person and the City, in the name of the City, based upon the facts alleged in the complaint, against one or more of the defendants named therein;
> >
> > . . .
> >
> > (.3)  Decline to commence a civil action and decline to designate the person who submitted the proposed complaint to commence a civil action; or
> >
> > (.4)  Proceed in any other manner the City Solicitor deems appropriate.

(Phila. Code § 19-3603(b).)

8.   Plaintiffs are two former employees of the Philadelphia Parking Authority ("the Authority"). On October 17, 2018, Plaintiffs, acting through their attorney, submitted to the City Solicitor a proposed complaint, pursuant to the Ordinance. The proposed complaint alleged that the named defendant—a company that contracted with the Authority to provide certain services—had committed fraud by, among other things, conspiring with

the Authority's executive director to ensure that it would be awarded contracts notwithstanding the fact that its services did not meet the requirements of these contracts. (Compl. ¶¶ 23-32.)

9.  Thereafter, according to Plaintiffs, the City Solicitor did not engage in a good-faith review of their proposed complaint. Rather, Plaintiffs allege that representatives of the City Solicitor's Office "summarily" concluded that the Ordinance did not apply to the fraud alleged in the proposed complaint. (Compl. ¶¶ 37-44.)

10. Plaintiffs further allege that their counsel met with representatives of the City Solicitor on January 29, 2019—following a number of telephone and email conversations about the viability of the proposed complaint. According to Plaintiffs, during this meeting, the City Solicitor's representatives again reiterated their position that the Ordinance did not apply to the fraud alleged in the proposed complaint. (Compl. ¶¶ 45-78.)

11. At this meeting, Plaintiffs' counsel allegedly requested that the City Solicitor designate them to pursue the action on the City's behalf, pursuant to the Ordinance. (Compl. ¶ 79.)

12. According to Plaintiffs, on February 8, 2019, after Plaintiffs' counsel had placed follow-up telephone calls to the City Solicitor's office, and then to the Mayor's office, a representative of the City Solicitor sent Plaintiffs' counsel a two-page letter. The letter informed Plaintiffs' counsel that the City Solicitor declined to bring Plaintiffs' proposed complaint and "further declin[ed] to designate [Plaintiffs' counsel] to commence a civil action in the City's name." (Compl. ¶¶ 86-93; Id., Ex. B.)

13. Thereafter, on February 21, 2019, Plaintiffs initiated this action challenging the City Solicitor's decision.

**LEGAL STANDARD**

14. Federal Rule of Civil Procedure 65 governs the issuance of preliminary injunctions and temporary restraining orders, and the same standard applies to both. <u>Pileggi v. Aichele</u>, 843 F. Supp. 2d 584 (E.D. Pa. 2012). To obtain either, a party must first demonstrate that two threshold requirements are met: (1) that the party has "a reasonable probability of eventual success in the litigation;" and (2) "that it will be irreparably injured if relief is not granted." <u>Reilly v. City of Harrisburg</u>, 858 F.3d 173, 176 (3d Cir. 2017). If these two "gateway factors" are met, a court considers two additional factors: (1) the possibility of harm to other interested persons from the grant or denial of the injunction; and (2) the public interest. <u>Id.</u> The court then "determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." <u>Id.</u> at 179.

**DISCUSSION**

15. As discussed below, I conclude that Plaintiffs have not demonstrated a reasonable probability of eventual success in this litigation. Alternatively, I conclude that Plaintiffs have not sufficiently demonstrated that they will be irreparably injured if an injunction is not entered. Accordingly, Plaintiffs' motion for a temporary restraining order and a preliminary injunction will be denied, and I need not reach the other two factors—harm to others that will be caused by the grant or denial of an injunction, and the public interest.

**Reasonable Probability of Eventual Success**

16. Plaintiffs assert four claims challenging the City Solicitor's decision not to pursue their proposed complaint or designate their counsel to do so on the City's behalf: (1) violation of procedural due process, (2) violation of substantive due process; (3) breach of contract; and (4) unjust enrichment. Even accepting Plaintiffs' factual allegations as true, the legal

theories supporting these four claims are, at best, highly problematic. Accordingly, Plaintiffs have not shown that it is reasonably likely that they will succeed in this litigation.

*Procedural Due Process*

17. To succeed on a procedural due process claim, a plaintiff must demonstrate that "(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" Hill v. Borough of Kutztown, 455 F.3d 225, 233–234 (3d Cir. 2006).

18. The parties focus on the first element. Plaintiffs contend that they were denied an interest in property, particularly their share of any proceeds the City would recover if the proposed action were brought, and the City prevailed in that action. Defendants maintain that there is no such cognizable property interest because whether there will be any proceeds is entirely contingent on the City choosing to bring the claim—a choice that the Ordinance leaves solely to the City Solicitor—and the City succeeding on that claim in the litigation. I agree with Defendants.

19. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Baraka v. McGreevey, 481 F.3d 187, 205 (3d Cir. 2007) (quoting Bd. of Regents of State Coll. v. Roth, 408 U.S. 564, 577 (1972)).

20. Plaintiffs are certainly correct that, under the Ordinance, a person who submits a proposed complaint to the City Solicitor is entitled to a share of any proceeds that the City recovers *if the City chooses to pursue the action*. However, the Ordinance does *not* require that the City pursue the action. Rather, the Ordinance gives the City Solicitor complete discretion

as to whether to bring an action based on the proposed complaint or authorize the individual who submitted the proposed complaint to do so on the City's behalf. Moreover, any claims set out in a proposed complaint under the Ordinance belong to the City. Accordingly, Plaintiffs have not demonstrated a legitimate claim of entitlement. Cf. United States ex rel. Mateski v. Mateski, 634 F. App'x 192, 195 (9th Cir. 2015) (rejecting a procedural due process claim by a relator in an action under the federal False Claims Act, and concluding that the relator "ha[d] not demonstrated a . . . property interest sufficient to trigger procedural due process rights," because the Act "makes clear that notwithstanding the relator's statutory right to the government's share of the recovery, the *underlying claim of fraud always belongs to the government*").

21. Because Plaintiffs have not identified a cognizable property interest of which they were deprived, they cannot demonstrate a reasonable likelihood of success on their procedural due process claim.

*Substantive Due Process*

22. The United States Court of Appeals for the Third Circuit has explained that there are two types of substantive due process claims: (1) a "challenge[] to the validity of a legislative act," based on the plaintiff's claim that the act burdens a fundamental right or is not rationally related to a legitimate state interest; and (2) a challenge to "certain types of non-legislative state action," based on the plaintiff's claim that the action is arbitrary, irrational, tainted by an improper motive, or so egregious that it shocks the conscience. See Nicholas v. Pa. State Univ., 227 F.3d 133, 139–140 (3d Cir. 2000) (explaining that legislative acts are "generally laws and broad . . . regulations [that] apply to large segments of society," in

contrast to non-legislative acts, which "typically apply to one person or a limited number of persons").

23. In their substantive due process claim, Plaintiffs challenge a legislative act—the Ordinance—contending that the provision of the Ordinance permitting the City Solicitor to decline to bring an individual's proposed complaint, or to designate that individual or his counsel to bring the complaint on the City's behalf, is not rationally related to a legitimate state interest. Defendants respond that there are legitimate reasons for providing the City Solicitor complete discretion, explaining:

> [T]he legitimate and salutary reasons for giving the City, as the owner of any claim under the [Ordinance], the power to authorize or to decline to authorize the bringing of a lawsuit in its name are obvious. Even where a private party brings the lawsuit, the lawsuit inevitably will consume the City's valuable and scare resources. The City will be forced to deal with written discovery, depositions, and the other burdens of litigation. The City will have to monitor the lawsuit and will be responsible for its ultimate resolution. And the lawsuit will, of course, consume the resources of the Court in which it is filed. For all of these reasons, it makes eminently good sense for the City, as the owner of the claim, to have control over whether any lawsuit should be filed. If the City determines that a lawsuit lacks merit, the City's option to decline to authorize the lawsuit clearly and obviously serves a legitimate government purpose.

(Defs.' Br. in Opp'n 5-6.)

24. To defeat Plaintiffs' substantive due process claim, Defendants need not demonstrate that the City Council's decision to provide the City Solicitor complete discretion is the *best* (or even a *good*) policy decision. Rather, Defendants need only show that there is "a conceivable rational basis" for that decision. Am. Exp. Travel Related Servs., Inc. v. Sidamon-Eristoff, 669 F.3d 359, 367 (3d Cir. 2012). In light of the rationale for the decision proffered by Defendants, I cannot conclude that there is no rational basis for the challenged

provision of the Ordinance. Accordingly, Plaintiffs have not demonstrated a reasonable likelihood of success on their substantive due process claim.

*Breach of Contract / Unjust Enrichment*

25. Plaintiffs do not explain in their Motion why they are reasonably likely to succeed on their state law claims for breach of contract and unjust enrichment. Thus, while I need not discuss the merits of those claims here, for purposes of completeness, I will briefly set out below why there is no reasonable likelihood of success on these claims.

26. In order to prevail on a breach of contract claim, a plaintiff must establish: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." CoreStates Bank, N.A. v. Cutillo, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999). The existence of a contract requires that "both parties have manifested an intent to be bound." Johnson the Florist, Inc. v. TEDCO Const. Corp., 657 A.2d 511, 516 (Pa. Super. Ct. 1995). The Ordinance does not in any way manifest an intent to bind the City Solicitor to pursue an individual's proposed complaint. Rather, as discussed above, the Ordinance provides the City Solicitor discretion to pursue that complaint, to designate the individual to pursue that complaint on the City's behalf, or to do neither. Thus, I cannot conclude that Plaintiffs are likely to prevail on their breach of contract claim.

27. To prevail on their unjust enrichment claim, Plaintiffs must demonstrate that (1) they conferred benefits on Defendants; (2) Defendants appreciated such benefits; and (3) the acceptance and retention of such benefits was under such circumstances that it would be inequitable for Defendants to retain the benefit without payment of value. See Mitchell v. Moore, 729 A.2d 1200, 1203 (Pa. Super. Ct. 1999).

28. Here, Plaintiffs have not demonstrated that the information about the alleged fraud set out in their proposed complaint is a "benefit" which Defendants "appreciated" without making payment in return. Indeed, the gravamen of this action is that the City Solicitor *declined* to use the information that Plaintiffs provided. Moreover, as noted above, while Plaintiffs may have provided information about fraud, the claims set out in their proposed complaint have always belonged to the City. <u>Cf.</u> <u>Mateski</u>, 634 F. App'x at 195 ("[N]otwithstanding the relator's statutory right to the government's share of [any] recovery, *the underlying claim of fraud always belongs to the government*.").

29. Accordingly, Plaintiffs have not demonstrated a reasonable likelihood of success on either of their state law claims.

**<u>Irreparable Harm</u>**

30. While Plaintiffs' failure to demonstrate a reasonable likelihood of success in the litigation is, by itself, fatal to their Motion, I alternatively hold that Plaintiffs have not demonstrated that they will be irreparably harmed if the injunction they request is not granted.

31. Plaintiffs contend that if their Motion is not granted—and I do not issue an injunction "requiring Defendants to designate Plaintiffs' Counsel to file a Civil Action under the [Ordinance]"—they will suffer the loss of their portion of any proceeds that the City could have recovered had Plaintiffs' proposed complaint been brought and successfully litigated.

32. Plaintiffs further contend—in support of their claim for emergency relief—that if their proposed complaint is not brought shortly, the statute of limitations on the fraud claims set out therein may run out.

33. However, loss of a portion of damages from a lawsuit is "a purely economic injury, compensable in money," and thus "cannot satisfy the irreparable injury requirement."

Frank's GMC Truck Ctr., Inc. v. GMC, 847 F.2d 100, 102 (3d Cir. 1988) (holding that "the availability of adequate monetary damages belies a claim of irreparable injury").

34. And even if monetary damages in this action are not available—due to sovereign immunity, qualified immunity, or any other reason—Plaintiffs have not convincingly established that the fraud claim set out in their proposed complaint will be lost due to a statute of limitations defense. Plaintiffs' Motion does not, for example, address the possibility of equitable tolling of the statute of limitations.

35. Because Plaintiffs have not demonstrated that they will suffer irreparable harm, Plaintiffs' Motion must be denied.

**WHEREFORE**, it is hereby **ORDERED** that Plaintiff's Motion for Preliminary Injunction and Temporary Restraining Order (Doc. No. 2) is **DENIED**.


                                   **BY THE COURT:**


                                   */s/ Mitchell S. Goldberg*
                                   _____
                                   **MITCHELL S. GOLDBERG, J.**