UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Andrew **Dankanich** and<br>Nicholas **Marrandino**, *Plaintiff(s)*;<br><br>                                        *vs.*<br><br>Marcel **Pratt** and<br>City of **Philadelphia**, *Defendant(s)*. | *No.* 19-CV-735 (MSG) |

# PLAINTIFFS' SUR-REPLY BRIEF IN OPPOSITION
# TO DEFENDANTS' RENEWED MOTION TO
# DISMISS AND MOTION TO STRIKE

    Plaintiffs' present this Sur-Reply Brief in Opposition to Defendant's combined Motion to Dismiss and Motion to Strike, requesting this Court deny Defendant's Motion to Strike and their Motion to Dismiss except with regard to Counts # 6–7

## ARGUMENT

    While Defendants' Reply brief seizes upon the opportunity to misinterpret Plaintiffs' Brief and expansively reframe the fundamental right, Defendants' reply (and the accompanying silence) show fatal flaws to their other due process arguments. Further, Defendants do nothing to save their demurrer as to the First Amendment or Local Agency.

1. **Defendants admit the basis Plaintiffs' property interest, due to City Council's irrevocable partial assignment of damages in the FCO, which is deeply-rooted in the history and tradition of our nation, and ultimately fatal to their demurrer.**

1.1. **Defendants accidentally concede that Plaintiffs have a property interest as *qui tam* relators.** While Defendants initially deny the FCO "effect[s] 'a partial assignment of the City's damages claim'", they are later forced to admit that "the partial assignment theory has some traction" under the federal False Claims Act. Def. Rep. Brf. at 6. While

Defendants might have attempted to couch this admission in watery language, this concession is **in their own words** and is fatal to their demurrer.

No argument has been made that federal common law should not control this Court's decision, nor could it: the FCO is "based pretty much upon the federal regulations". Transcript of 12/16/2009 Phila. City Cncl. Cmte. on Law and Gov't. Hr'g. (Statement of Cnclmn. Greenlee). As a result, the cases provide an explicit and precedential road-map to the Plaintiffs' property interest, which Defendants casually ignore: *Stevens* provides the relator's partial assignment of the damages claim.[1] *Vt. Agency of Natural Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 772–774 (2000). *Logan* connects that partial assignment in the cause of action to a "species of property", protected by due process. *Logan v. Zimmerman Brush Company*, 455 U.S. 422, 429 (1982). Then, *Stoner* provides context for what this property interest/partial assignment entitles a relator in the government's claim: "certain procedural guarantees."[2] *Stoner v. Santa Clara Cnty. Office of Educ.*, 502 F.3d 1116, 1126–1127 (9th Cir. 2007). These cases explicitly show that a relator has—at minimum—a procedural due process property interest in the partial assignment of damages.

Instead of considering the significant precedent, Defendants pull language out of context from *Rogers*,[3] despite that case offering no support for their claim that "a partial assignment [is not] a property interest protected by [ ] due process." Def. Rep. Brf. at 6. Then,

---

[1] *Stevens* is dismissed by Defendants as a 'standing' case, in their fundamental right discussion. Def. Rep. Brf. at 4. They deliberately ignore and make no discussion of the property interest that must be necessarily implied to the relator in order for standing to exist. While previously Defendants focused on the speculative outcome of the potential lawsuit, they now avoid the Plaintiffs' present and legitimate entitlement of a partial assignment of damages under the FCO. Defendant's Original Brief (Doc. No. 8) at 13, 16.

[2] Defendants make no consideration of *Stoner*, aside from cherry-pick a quotation out of context which bears no relevance to the discussion. Def. Rep. Brf. at 6–7 fn. 2. As Plaintiffs' earlier articulated, Stoner was decided on the relator's ability to act *pro se* under the FCA. Plt. Op. Brf. at 11–12 fn. 6. The *Stoner* Court found that the FCA did not permit *pro se* relators, as that allowed only for in "own case", and that the partial assignment—while giving the relator "certain procedural guarantees"—was still the relator "pursu[ing] the action on behalf of the government" thus requiring an attorney. *Stoner*, 502 F.3d at 1126–1127.

[3] In *Rogers*, a non-precedential opinion, the Federal Circuit found it neither a Due Process nor Takings violations for **Congress** to retroactively eliminate a provision of the patent code to allow uninjured relators to pursue *qui tam* claims for statutory penalties. *Rogers v. Tristar Prods., Inc.*, 559 Fed. Appx. 1042 (Fed. Cir. 2012). However, legislature's right to eliminate the *qui tam* statutory claims is undisputed.

Defendants continue to rely on *Mateski*, a non-precedential case that should be discredited, as it misstates the holding of its authority.[4] Neither case refutes Plaintiffs' partial assignment nor provide any credible support that their property interest does not exist.

1.2. **Defendants do not dispute the relator's property interest is deeply rooted in history and tradition, and therefore fundamental.** Defendants argue that the property interest is insufficient, claiming Plaintiffs are "wrong." Def. Rep. Brf. at 5. The explanation for this musing is unclear, as Defendants' offer no legal support to their assertion.[5] However, the Third Circuit teaches: "For a putative right to be 'fundamental' under the Due Process Clause, it must be 'deeply rooted in this Nation's history and tradition.'" *Holland v. Rosen*, 895 F.3d 272, 293 (3rd Cir. 2018) (quoting *Lutz v. City of York, Pa.*, 899 F.2d 255, 267 (3rd Cir., 1990)). Defendants do not even attempt to dispute those deep roots: the *qui tam* relator's established property interest extend well into historical English law, through the founding of our nation as a tradition our Founders chose to carry forward, which was recognized and continued into our modern times by the FCA even through the 1986 amendments. Given this weight of history and tradition, it is unclear how Defendants claim that the relator's property interest is not fundamental.

1.3. **The property interest is created by an *non-discretionary* assignment of damages in the FCO, which can only be revoked by City Council.** What remains of Defendants' argument is based in the premise that assignment of damages to Plaintiffs is discretionary. Def. Rep. Brf. at 6. It is not. A FCO relator is entitled—by ordinance—to

---

[4] *Mateski* relies on flawed reasoning, using as its sole support a quotation from *Stoner*, stating the "underlying claim of fraud always belongs to the government." *U.S. ex rel. Mateski v. Mateski*, 634 F.Appx 192, 195 (9th Cir. 2015). However, *Stoner* finds the opposite: A relator—though pursuing the government's claim—is entitled to constitutional due process rights prior to deprivation of their "partial assignment of damages". *See Stoner*, 502 F.3d at 1127 (citing *Stevens*, 529 U.S. at 772).

[5] Defendants rely entirely on the implication that the Third Circuit has closed the question of "fundamental property interests", quoting *Nicholas*. Def. Rep. Brf. at 1, 5. However, this reliance on *dicta* is flawed, as it premises the Third Circuit is unwilling or unable to consider anything but real property interests. This not only maligns the Court, but ignores that the clear language ("so far") indicating the possibility of other fundamental property interests. *Nicholas v. Penn. State Univ.*, 227 F.3d 133, 141 (3rd Cir. 2000).

share in the proceeds of the City's claim based upon their proposed complaint, irrespective of whether by a civil action or other means, which Defendants do not dispute.[6] FCO §19–3603 (5). Even assuming, *arguendo*, the City Solicitor's arbitrary discretion to 'do nothing' is constitutional, it does not include the power to abrogate City Council's statutory partial assignment of damages. Nor should it, as statutory rights are the province of the legislature, not the executive: "[The] privilege of conducting the suit on behalf of the United States and sharing in the proceeds of any judgment recovered, was an **award of statutory creation**, which, prior to final judgment, was **wholly within the control of Congress**." *Rogers*, 559 Fed. Appx. at 1045 (quoting *U.S. ex rel. Rodriguez v. Weekly Publ'ns, Inc.*, 144 F.2d 186, 188 (2d Cir. 1944))(emphasis added). The property interest belongs to the relator irrespective of the City Solicitor's actions, who does not have the authority to modify or eliminate Plaintiffs' statutory entitlement created by City Council.

2. **The FCO's 'Do Nothing' Provision is unconstitutional whether framed as a fundamental right or the newly conceded procedural right, as both provide a constitutional right to access of courts for a *qui tam* relator deriving from their partial assignment of damages.**

2.1. **Defendants deliberately misinterpret the right in choosing to ignore the effects of the government's partial assignment of damages.** Defendants reframe Plaintiff's described right as: "a private party [without a partial assignment of damages] to bring a qui tam lawsuit on a government's behalf." Def. Rep. Brf. at 3. However, no reasonable reading of Plaintiffs' brief suggests that right is being discussed, premised on their modification of the right from "*qui tam* relator" to "private party."[7] Def. Rep. Brf. at 3. (compare Plt. Op. Brf. at 15). Defendants then spends two pages disputing a universal right to bring *qui tam*

---

[6] The FCO §19–3603 (5) "Related Actions" shows City Council considered the City Solicitor's alleged discretion under §19–3603 (2) (b) (.3), and deliberately continued the relator's entitlement. FCO §19–3603.

[7] Plaintiffs must acknowledge that they left this door open by failing to explicitly include the partial assignment language in their description. This is Plaintiffs' Counsel's error which is corrected below.

claims that is not considered or argued by Plaintiffs.[8]

That Defendants chose to be obtuse is telling. First, they specifically note Plaintiffs later frame the right slightly differently: a "fundamental right [as relators] to a judicial review of **their** *qui tam* claim." Def. Rep. Brf. at 3 fn. 1 (quotation corrected and emphasis added). Second, a relator without the implied partial assignment **would not have standing**, a problem created by their reframing of the right which they entirely ignore. *Id.* at 4. Taken properly in context, Defendants well-understood that Plaintiffs were seeking vindication of *their* rights to *their partial assignment of damages* through judicial access, yet Defendants offer no discussion of that argument, choosing instead to ignore it entirely.

2.2. **The Third Circuit recognizes a fundamental right of access to Courts where the government is involved in a cover-up to prevent persons from vindicating their rights.** "[P]refiling conduct [by the government] that either prevents a plaintiff from filing suit or renders the plaintiff's access to the court ineffective or meaningless constitutes a constitutional violation." *Cf. Estate of Smith v. Marasco*, 318 F.3d 497, 511 (3rd Cir. 2003). In *Smith*, the Court declined to find a violation for wrongful post-filing conduct by the government in attempting to cover-up the circumstances of death, finding that the trial court had adequete power to redress those wrongs. *Id.* at 512. However, pre-filing "cover-ups that prevent a person who has been wronged from vindicating his rights violate the right of access to the courts protected by the substantive due process clause." *Id.* at 511 (cataloging cases).

2.3. **In the interests of clarity, Plaintiffs reframe the right: "The *qui tam* relator's right to judicial access and review of their statutory assignment of damages prior to dismissal by the government."** Plaintiffs acknowledge that their earlier description left ambiguity that Defendants seize upon, which is corrected. This framing exactly follows

---

[8]Not only do Plaintiffs' lament Pennsylvania's lack of a comparable *qui tam* law which might obviate this lawsuit, Plt. Op. Brf. at 15 fn. 10, but their brief specifically states "common-law qui tam lawsuits were not permitted" but "statutes expressly authoriz[ed] qui tam suits." *Id.* at 14 (citing *Stevens*, 529 U.S. at 776).

the federal FCA and the rights of citizens in every jurisdiction where they have a partial assignment of the government's *qui tam* claim—except Philadelphia. Further, this fundamental right dovetails precisely with the substantive due process right suggested in the *Estate of Smith*, and reflects the right that has been ubiquitous for *every* relator in *every* case cited by the parties in this matter: a basic right of judicial access and review prior to the deprivation of their statutorily created property interest.

2.4. **Whether framed as a fundamental right or as a procedural due process right, the FCO's 'Do Nothing' provision unconstitutionally bars relators from court.** Defendants apparent concession of the partial assignment creates significant problems for the constitutionality of the 'Do Nothing' provision, under FCO §19–3603 (2) (b) (.3). Even assuming, *arguendo*, there exists no fundamental right, if a relator has the procedural property interest in the partial assignment of damages suggested by *Stevens* and *Stoner*, what process will be due? The FCA—the FCO's progenitor—provides every *qui tam* relator with the right to a judicial hearing prior to the deprivation of their property interest. Every other known implementation of a false claims scheme—where the relator has a similar property interest—also permits access to courts. It then follows that the procedural guarantee will be no less than a judicial hearing. Therefore, Defendants can not exercise the 'Do Nothing' provision without unconstitutionally depriving a relator of their established procedural due process rights. Therefore, framed either as a fundamental right described above or merely a procedural right under *Stevens* and *Stoner*, in this instance the end result is the same: The FCO's 'Do Nothing' provision must be struck; a relator is entitled to their day in court.

3. **Defendants Reply Brief still fails to make a basic review of necessary First Amendment law to justify their admitted restriction of Plaintiffs' speech.**

3.1. **Defendants have failed to provide even the most rudimentary support to their First Amendment arguments.** A statute restrictive speech must: "(1) serve a compelling governmental interest; (2) be narrowly tailored to achieve that interest; and (3) be

the least restrictive means of advancing that interest." *See Stilp v. Contino*, 613 F.3d 405, 409 (3rd Cir., 2010) (quoting *ACLU v. Mukasey*, 534 F.3d 181, 190 (3d Cir., 2008)). Defendants made no attempt to offer relevant discussion of that standard. Instead, they claim that the FCO's restriction of free speech carries no penalty—attempting to distinguish *Stilp*—before immediately contradicting themselves and stating that the "consequence" might be the "forfeit of privilege" under the FCO. Def. Rep. Brf. at 7. A more careful review of *Stilp* shows the Third Circuit did not consider the potential penalty as Defendants claim, *id*, but rather the Court was unable to reach that question as the imposition of confidentiality could not satisfy the strict scrutiny required under the First Amendment. *See Stilp*, 613 F.3d at 415. Instead, Defense Counsel argues it is "reasonable" to restrict Plaintiffs speech, ignoring any standards of scrutiny entirely, much less any heightened scrutiny under the First Amendment.[9] Def. Rep. Brf. at 7–8. This is plainly incorrect.

3.2. **Plaintiffs speech was undeniably restrained, which Defendants' reply shows.** Plaintiffs' complaint was well-pleaded, and clearly shows that Plaintiffs were coerced into filing their lawsuit under seal—meaning 'in secret.' Defendants argue that "nothing prevented" the Plaintiffs' from speaking "during the approximately three-week period the complaint was under seal". *Id.* at 8. However, Defendants are well-aware that parties should neither defy the Courts nor risk the threat of sanctions for violating the seal.[10] Further, Defendants **admit** in their reply that they "demand[ed]" Plaintiffs filings "comply with confidentiality provisions of the FCO" and further "expect[ed]" Plaintiffs to honor the confidentiality provisions ... by filing their complaint under seal." *Id.* at 8. Not only is Plaintiffs' complaint well-pled, but Defendants recognize Plaintiffs' actions were due to the

---

[9] Defendants reiterate the argument that the seal is required because this is a false claims action, ignoring that strict scrutiny is still applied to the seal even in those instances. *See ACLU v. Holder*, 673 F.3d 245, 253 (4th Cir. 2011). Further, the compelling interest identified ("protecting the integrity of fraud investigations") in Defendants' authority *has been extinguished* when Defendants' rejected Plaintiffs' complaint. *See Id.*

[10] Not only does Defendants own filing give lie to their "nothing prevented" argument—as they acknowledge that penalties for disclosure may include the loss of claim, Def. Rep. Brf. at 7—but further they ignore the inherent authority of the court to hold the parties in civil or *criminal* contempt. Even if unlikely, no prudent attorney would counsel a violation of any court order—even one they believe mistakenly granted.

Defendants' demands, as well as the existence of penalties coercing Plaintiffs' silence.

**4. Defendants attempt to reframe their jurisdictional argument as a question of this Court's 'power' does not comport with basic federal courts jurisprudence.**

Defendants original argument was that Pennsylvania had statutorily excluded federal courts from exercising jurisdiction over Local Agency Law: "[T]he court 'vested with jurisdiction' to hear an appeal from that 'adjudication' under Title 42 would be the Philadelphia County Court of Common Pleas, whose jurisdiction is 'exclusive.'" Def. Brf. at 22. This was an altogether spurious argument, as every attorney is well-aware of both the supremacy of federal courts and the concept of supplemental jurisdiction. Now, however, Defendants' claim their argument wasn't jurisdictional, but rather that this Court doesn't have the "power" to hear this case. Def. Rep. Brf. at 9. This is nonsense.

Having entirely conceded the jurisdictional argument, Defendants instead reframe jurisdiction as some type of limitation on this Court's "power". *Id.* Leaving aside that Defense Counsel snipes useful language from a case that has no bearing on the matter at hand,[11] it is the Defendants' burden to articulate justification for this Court's power to thusly be limited. They do not and can not; this claim is properly within the jurisdiction *and power* of this Court and may properly be decided through the exercise of supplemental jurisdiction. *See City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 163–166 (1997) (empowering federal courts to exercise supplemental jurisdiction to review state agencies under state law).

---

[11] *Citizens for a Better Environment* was decided based upon Plaintiffs' lack of standing, which the Court found limited their *power* to decide the statutory question for which they granted *certiorari* to resolve a circuit split. *See Steel Co. v. Citizens for a Better Env.*, 523 U.S. 83, 88–89, 109–110 (1998).

5. **Defendants argue for an extraordinarily heightened pleading standard that is completely unsupported by any case law or the Federal Rules.**

Given Defendants distortion of the applicable standard of review and relevant case law, Plaintiffs feel obligated to correct Defendants' argued pleading requirements. Federal Rules require "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8 (a) (2). Pleadings are required to show "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)).

While *Twombly* and *Iqbal* did heighten the pleading requirements, this was only with regard to **facts**. "Legal conclusions", on the other hand, may provide "structure" but can be disregarded by the Court. *Iqbal*, 556 U.S. at 679. *See also Fowler v. UPMC Shadyside*, 578 F.3d 203 (3rd Cir. 2009); *Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co.*, 768 F.3d 284 (3d Cir. 2014). Instead, Defendants argue that Plaintiffs' incorrect legal conclusions are so defective to their pleadings that they should suffer the permanent sanction of *dismissal with prejudice.* Def. Rep. Brf. at 10. Not only is Plaintiff unaware of, but Defendants have not provided any authority showing the Federal Courts have recently heightened the standards to such exacting levels of perfection.

Plaintiffs have provided more than adequate notice to Defendants of the nature of their claims, if only by their clear descriptions titling each cause of action, which are well-supported by factual allegations. Plaintiffs basic claims have not changed. Defendants' attempt to argue that Plaintiffs are improperly attempting to amend their Complaint by response brief is misguided.[12] Def. Rep. Brf. at 2–3, 5, 6, 8. Defendants are well-aware that Plaintiffs were permitted by right to amend their Complaint in lieu of filing a response pursuant to Fed. R. Civ. P. 15 (a) (1) (B). However, Plaintiffs are not attempting to offer

---

[12] In *Zimmerman*, which Defendants quote without context, the Plaintiff-Relator—appealing dismissal of his claims—was not permitted to support his brief with *facts* not contained in his pleadings; in no way does the case suggest evolving legal arguments require amendment of the pleadings. *Commw. of Pa. ex rel. Zimmerman v. Pepsico Inc.*, 836 F.2d 173, 181–182 (3rd Cir. 1988).

9

facts, but rather make legal arguments which—as Defendants are surely aware—is the purpose of a brief. To the extent that legal theories change or evolve over the life of a case is a function of the adversarial nature of the process, and parties are not rigidly bound to their initial legal arguments from the pleadings.

Finally, to the extent that Defendants may complain there exists insufficient factual allegations or that these legal arguments are not properly made, all issues raised can be properly cured through leave for amendment of Plaintiffs' Complaint, which should be "freely [given] when justice so requires." Fed. R. Civ. P. 15 (a) (2).

## CONCLUSION

For the reasons in this and their original Opposition Brief, Plaintiffs respectfully request that this Court deny Defendants' Motion to Dismiss and to Strike in all regards except to dismiss Counts #6–7. Plaintiffs further ask leave to amend if this Court determines their pleadings or claims are otherwise deficient.

Respectfully Submitted,

**Andrew B. Austin, Esq.**
Pennsylvania Bar # 323768
*Attorney for Plaintiffs*

STACKHOUSE GROUP
P.O. Box # 54628
Philadelphia, Pennsylvania, 19145
+1 (610) 656-1956
austin@stackhousegroup.com