## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANDREW J. DANKANICH, and NICHOLAS A. MARRANDINO, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | No. 2:19-cv-00735-MSG |
| | : | |
| MARCEL PRATT, in his official capacity as City Solicitor of Philadelphia, and CITY OF PHILADELPHIA, | : | |
| | : | |
| Defendants. | : | |

---

## DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION
## FOR LEAVE TO AMEND

---

Stephen A. Fogdall (Pa. I.D. 87444)
Schnader Harrison Segal & Lewis LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103
Phone: (215) 751-2581
Fax: (215) 751-2205
sfogdall@schnader.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

BACKGROUND .............................................................................................. 1

ARGUMENT .................................................................................................. 4

I.   Plaintiffs' Constitutional Rights Were Not in Any Way Violated When the City Solicitor Declined to Consent to Their Retaliation Action Against the PPA ..................................... 5

     A.   Plaintiffs Have Not Alleged a Viable Retaliation Claim Under the FCO .................. 6

     B.   Plaintiffs Have No Ripe Claim Against the City and City Solicitor .........................10

II.   Plaintiffs' Substantive Due Process Claims Still Fail .........................................11

     A.   Plaintiffs' Legislative Challenge Still Fails to Allege a Fundamental Right .............12

         1.   There is No "Fundamental Right" to Bring a False-Claims Lawsuit on Behalf of a Government Entity .......................................................12

         2.   Court Access is Not Itself an Independent Fundamental Right ........................14

     B.   Plaintiffs' Non-Legislative Challenge Still Fails to Allege a Protected Property Interest, or Conduct by the City Solicitor that "Shocks the Conscience" ..................15

         1.   Plaintiffs do Not Allege any Property Interest Protected by Substantive Due Process ...................................................................................15

         2.   Plaintiffs Sill Fail to Plausibly Allege any Outrageous or Conscience Shocking Conduct by the City Solicitor .........................................15

III.   Plaintiffs Have Done Nothing to Repair Their Procedural Due Process Claims ................17

IV.   Plaintiffs' First Amendment Claims are Still Not Viable .................................19

     A.   Plaintiffs Cannot Bring a Claim Based on Access to Court Records When They Have Not Been Denied Such Access .............................................20

     B.   Plaintiffs Do Not Allege Any Infringement of Their Free Speech Rights .................22

V.   Plaintiffs' Pendant Claims Under Pennsylvania Law Likewise Could Not Survive a Motion to Dismiss .....................................................................23

     A.   Plaintiffs Fail to Allege a Viable Claim Under the Pennsylvania Constitution ..........23

     B.   Plaintiffs Have No Right to Bring a Claim Under the Local Agency Law in this Court ...........................................................................24

CONCLUSION.............................................................................................25

## TABLE OF AUTHORITIES

<u>**Cases**</u>

*Alvin v. Suzuki,*
   227 F.3d 107 (3d Cir. 2000) .............................................................24

*American Civil Liberties Union v. Holder,*
   673 F.3d 245 (4th Cir. 2011) ............................................................21

*Artway v. Attorney General of N.J.,*
   81 F.3d 1235 (3d Cir. 1996) ........................................................10, 11

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) .......................................................................4, 5

*Baraka v. McGreevey,*
   481 F.3d 187 (3d Cir. 2007) .............................................................18

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2006) ...........................................................5, 15, 17

*Bronson v. Samsung Elecs. Am., Inc.,*
   2018 WL 5809418 (N.D. Cal. Nov. 6, 2018) ...................................17

*Brooks v. Dunlop Mfg. Inc.,*
   702 F.3d 624 (Fed. Cir. 2012)...........................................................13

*Chainey v. Street,*
   523 F.3d 200 (3d Cir. 2000) .............................................................16

*Chase Sec. Corp. v. Donaldson,*
   325 U.S. 304 (1945).........................................................................14

*Christopher v. Harbury,*
   536 U.S. 403 (2002) .......................................................................... 6

*City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.,*
   908 F.3d 872 (3d Cir. 2018) ............................................................ 4

*City of Chicago v. International College of Surgeons,*
   522 U.S. 156 (1997)....................................................................24, 25

*Cloverleaf Gold Course, Inc. v. FMC Corp.,*
   863 F. Supp. 2d 768 (S.D. Ill. 2012) ...............................................13

*Dookeran v. Mercy Hosp. of Pittsburgh,*
   281 F.3d 105 (3d Cir. 2002) ............................................................. 8

*Eichenlaub v. Twp. of Indiana*,
    385 F.3d 274 (3d Cir. 2004) ...........................................................................15

*Freezer Storage, Inc. v. Armstrong Cork Co.*,
    382 A.2d 715 (1978) .......................................................................................23

*Gronne v. Abrams*,
    793 F.2d 74 (2d Cir. 1986) .............................................................................14

*Hammond v. City of Wilkes-Barre*,
    2011 U.S. Dist. LEXIS 34312 (M.D. Pa. Mar. 30, 2011) .................................15

*Hutchins v. Wilentz, Goldman & Spitzer*,
    253 F.3d 176 (3d Cir. 2001) ........................................................................6, 7

*Logan v. Zimmerman Brush Co.*,
    455 U.S. 422 (1982) .......................................................................................14

*Masloff v. Port Auth. of Allegheny County*,
    613 A.2d 1186 (Pa. 1992) ..............................................................................23

*Mitchell v. Harris*,
    496 F. Supp. 230 (D.N.J. 1980) .....................................................................18

*Newark Cab Ass'n v. City of Newark*,
    901 F.3d 146 (3d Cir. 2018) ....................................................................14, 15

*Potts v. City of Philadelphia*,
    224 F. Supp. 2d 919 (E.D. Pa. 2002) .............................................................18

*Reich v. Beharry*,
    883 F.2d 239 (3d Cir. 1989) ..........................................................................15

*Rogers v. Conair Corp.*,
    2012 WL 1443905 (E.D. Pa. Apr. 25, 2012) ...................................................13

*Rogers v. Tristar Prods., Inc.*,
    559 Fed. Appx. 1042 (Fed Cir. 2012) .............................................................19

*Sherr v. Anacondia Wire & Cable Co.*,
    149 F.2d 680 (2d Cir. 1945) ..........................................................................13

*Steel Co. v. Citizens for a Better Environment*,
    523 U.S. 83 (1998) .........................................................................................25

*Teesdale v. City of Chicago*,
    690 F.3d 829 (7th Cir. 2012) .....................................................................20, 22

*United Artists Theatre Circuit, Inc. v. Twp. of Warrington, Pa.*,
    316 F.3d 392 (3d Cir. 2003) ..............................................................15

*United States ex rel. Bayarsky v. Brooks*,
    210 F.2d 257 (3d Cir. 1954) ..............................................................13

*United States ex rel. Mateski v. Mateski*,
    634 Fed. Appx. 192 (9th Cir. 2015) ..................................................19

*United States ex rel. Petras v. Simparel, Inc.*,
    857 F.3d 497 (3d Cir. 2017) ................................................................ 8

*United States ex rel. Quinn v. Omnicare, Inc.*,
    2003 WL 24296532 (D.N.J. Mar. 28, 2003).......................................6

*United States ex rel. Rodriguez v. Weekly Publications*,
    144 F.2d 186 (2d Cir. 1944) ..............................................................13

*Wolff v. McDonnell*,
    418 U.S. 539 (1974) ...........................................................................14

*Wright v. Lehigh Valley Hosp. & Health Network*,
    2011 WL 2550361 (E.D. Pa. Jun. 23, 2011)......................................17

## Constitutional Provisions, Statutes and Ordinances

31 U.S.C. § 3730(h) .................................................................................. 6

35 U.S.C. § 292.......................................................................................13

Pa. Const. Art. 1 § 11 ..........................................................................5, 23

2 Pa. C.S. § 752.......................................................................................25

42 Pa. C.S. § 933(a)(2) ...........................................................................25

42 Pa. C.S. § 933(c)(1) ...........................................................................25

53 Pa. C.S. § 5505(a)(1) ........................................................................... 2

43 P.S. § 1421 ........................................................................................... 4

43 P.S. § 1422 ........................................................................................... 4

43 P.S. § 1423 .......................................................................................4, 9

43 P.S. § 1424 .......................................................................................4, 9

False Claims Ordinance § 19-3602(1) ........................................................................ 8

False Claims Ordinance § 19-3602(2) ........................................................................ 8

False Claims Ordinance § 19-3602(3) ........................................................................ 8

False Claims Ordinance § 19-3602(7) ........................................................................ 8

False Claims Ordinance § 19-3603(2)(b) .................................................................... 2

False Claims Ordinance § 19-3603(2)(b)(.3) ............................................................18

False Claims Ordinance § 19-3603(2)(b)(.4) ............................................................18

False Claims Ordinance § 19-3603(2)(c) ..................................................................20

False Claims Ordinance § 19-3603(3)(c) .................................................................... 9

False Claims Ordinance § 19-3603(8)(a) ..............................................................2, 18

False Claims Ordinance § 19-3603(8)(b) ..............................................................2, 18

False Claims Ordinance § 19-3604(1) ........................................................................ 6

False Claims Ordinance § 19-3604(2) ........................................................................ 4

Defendants the City of Philadelphia (the "City") and Marcel Pratt, in his official capacity as City Solicitor of Philadelphia (the "City Solicitor"), respectfully submit this brief in opposition to plaintiffs' motion to file a Second Amended Complaint.

Plaintiffs' new proposed pleading does nothing to repair the flaws in their current Amended Complaint, nor is there any merit in their newly added claims.  First, plaintiffs' Second Amended Complaint repeats the same defective claims that the City Solicitor supposedly violated plaintiffs' constitutional rights when he properly declined to approve the lawsuit they wanted to bring against the Philadelphia Parking Authority ("PPA") under Philadelphia's False Claims Ordinance ("FCO").  And second, plaintiffs now assert equally meritless new claims that the City Solicitor has violated their constitutional rights a second time when he declined to "consent" to their subsequent retaliation action against the PPA.  But plaintiffs' allegations of retaliation by the PPA are not cognizable under the FCO and they have no constitutional right to demand that the City Solicitor "consent" to their misguided attempts to seek the benefit of its provisions.  Strikingly, plaintiffs' retaliation claim turns on the bizarre assertion that they were fired by the PPA for actions they took eighteen months *after* they were terminated.

In short, plaintiffs' amendments are futile and their motion should be denied in its entirety.

## BACKGROUND

Most of the facts relevant to the present motion are already set forth in defendants' brief in support of their pending motion to dismiss plaintiffs' Amended Complaint (the operative complaint).  *See* Doc. No. 11-1 at 3-8.  In very short summary, plaintiffs allege that they uncovered a fraud against their former employer, the PPA, involving an automated system administered by the PPA to record and assess penalties when drivers violate traffic signals at

certain Philadelphia intersections.  Plaintiffs say that the PPA's previous Executive Director allowed a contractor that the PPA had hired to operate this system to avoid paying contractual penalties to the PPA for poor performance.  *See* Am. Compl. (Doc. No. 10) ¶¶ 30-34.  Plaintiffs allege that they were terminated by the PPA in March and July 2017, after they reported the alleged fraud to the PPA and tried to prevent the contract from being renewed.  Am. Compl. Intro. & ¶¶ 28-29.

Well over a year *after* they were terminated by the PPA, plaintiff Dankanich read "news reports of an unrelated federal False Claims settlement," which apparently gave plaintiffs the idea of hiring a lawyer to try to bring a false claims action based on the alleged fraud at the PPA. Am. Compl. ¶ 40; *see also* Am. Compl. ¶¶ 1-2.  They encountered a fundamental problem with this plan:  the victim of the alleged fraud is the PPA itself, which is "an agency of the Commonwealth" of Pennsylvania, 53 Pa. C.S. § 5505(a)(1), and Pennsylvania does not have a false claims statute.  Plaintiffs therefore created a convoluted theory under which the fraud they allege to have been committed against the PPA is somehow actually a fraud against the City, so that they could seek to bring a claim under the FCO.

The City's FCO permits private parties believing themselves to have evidence of fraud against the City to submit a proposed lawsuit based on such fraud to the City Solicitor.  The City Solicitor can then either (1) bring the proposed lawsuit, or (2) designate the private party to do so, or (3) decline to pursue the lawsuit and decline to permit the private party to do so, or (4) take any other action the City Solicitor deems appropriate.  FCO § 19-3603(2)(b).  If the City Solicitor brings the lawsuit, or designates the private party to do so, and the lawsuit is successful in recovering proceeds for the City, the private party receives a portion of the recovery.  FCO § 19-3603(8)(a) & (b).

2

Plaintiffs submitted a proposed FCO complaint to the City Solicitor based on the alleged fraud at the PPA, and the City Solicitor declined to pursue the complaint, and declined to designate plaintiffs' counsel to do so either, as the FCO permits the City Solicitor to do.  The City Solicitor reasonably and correctly concluded that the fraud plaintiffs allege is not cognizable under the FCO because the fraud does not involve the City.  Plaintiffs then sued the City and the City Solicitor for declining to authorize their proposed lawsuit.

Plaintiffs now want to assert still more claims against the City and City Solicitor because, in addition to declining to approve their underling proposed FCO suit, the City Solicitor has declined to "consent" to their bringing a retaliation action against the PPA under the FCO.  The FCO is not applicable to plaintiffs' allegations, as explained in detail below, and the City Solicitor cannot "consent" to a lawsuit that does not even arguably fit within that ordinance.

Plaintiffs believe they are constitutionally entitled to demand the City Solicitor's consent to their retaliation claims to help them respond to the PPA's preliminary objections in that action. The PPA has filed two preliminary objections, attached to this brief as Exhibit A.  First, the PPA objects that because the red light camera system "does not implicate any funds which belong to the City of Philadelphia," plaintiffs' terminations "cannot be linked to an underlying FCO violation."  PPA's POs ¶¶ 30, 31.  Second, the PPA objects that, according to its interpretation of the FCO, a private party cannot bring a retaliation claim under the FCO "unless they are first designated to do so by the City Solicitor."  PPA's POs ¶ 35.  The City and City Solicitor do not take a position on the soundness of the second preliminary objection — that is a matter for the Court of Common Pleas to decide.  However, defendants do agree that plaintiffs' allegations are not cognizable under the FCO, and for that reason the City Solicitor cannot "consent" to the action.

If plaintiffs had acted in a timely fashion, there were other statutory vehicles available to them to try to bring a wrongful discharge claim against the PPA. The most obvious of these is Pennsylvania's Whistleblower Law, 43 P.S. § 1421 *et seq.* The Whistleblower Law permits an employee of a "public body" who has been discharged for making "a good faith report . . . to the employer or appropriate authority" about "an instance of wrongdoing or waste" to sue the employer "for appropriate injunctive relief or damages." 43 P.S. §§ 1422, 1423(a), 1424. Plaintiffs' allegations of wrongful discharge by the PPA may well have fit within these provisions. Unfortunately for plaintiffs, an action under the Whistleblower Law must be brought "within 180 days after the occurrence of the alleged violation," 43 P.S. § 1424(a), a time period that has long expired for both plaintiffs.[1]

## ARGUMENT

"Leave to amend is properly denied if amendment would be futile, *i.e.*, if the proposed complaint could not withstand a renewed motion to dismiss." *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 1042 (3d Cir. 2018).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556

---

[1] This lawsuit was filed on February 21, 2019. In a telephone conference with the Court the very next day, the Court asked plaintiffs' counsel whether plaintiffs intended to bring a wrongful discharge action against the PPA. Defendants' counsel does not recall any mention of a specific statute under which such an action might be brought, and in particular does not recall plaintiffs' counsel explicitly suggesting that they would attempt to file a retaliation action against the PPA under the FCO § 19-3604(2). Nor was there any discussion of whether the City Solicitor would "consent" to such an action. Significantly, although plaintiffs filed their wrongful discharge suit against the PPA by praecipe for a writ of summons on February 27, 2019, they did not explicitly assert an FCO retaliation claim until they filed their complaint on November 1, 2019. Nor did they seek the City Solicitor's "consent" for that claim before November 15, 2019. *See* Prop. Sec. Compl. Ex. D.

U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2006)).  The complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly,* 550 U.S. at 555.

Plaintiffs' proposed Second Amended Complaint no more satisfies these requirements than does their operative Amended Complaint.  Plaintiffs' proposed amendments are therefore futile and should be denied.

I.      **Plaintiffs' Constitutional Rights Were Not in Any Way Violated When the City Solicitor Declined to Consent the Their Retaliation Action Against the PPA.**

In three counts of their proposed Second Amended Complaint, plaintiffs allege that by declining to consent to their retaliation suit against the PPA, the City Solicitor supposedly violated plaintiffs' rights under the United States and Pennsylvania Constitutions.  In Count 1, plaintiffs allege that their federal substantive due process rights have been violated because the City Solicitor "has refused to disclaim" the PPA's "interpretation" that his consent is necessary for plaintiffs to maintain their retaliation action against the PPA.  Prop. Sec. Compl. ¶ 157.  In Count 2, plaintiffs allege that their rights under the Pennsylvania Constitution's "remedies clause," Pa. Const. Art. 1 § 11, were violated because they supposedly were denied "their right to restoration of employment rights under the FCO's retaliation provisions."  Prop. Sec. Compl. ¶ 171.  And in Count 3, they allege that the City Solicitor "frustrated and denied them meaningful access to Counts to vindicate" their "individual whistleblower retaliation claims."  Prop. Sec. Compl. ¶ 186.

These new allegations fail to state a claim for two reasons.  First, plaintiffs have no viable claim under the FCO.  Second, plaintiffs could not have any ripe claim because the state court has not ruled on the PPA's preliminary objections.

### A.      Plaintiffs Have Not Alleged a Viable Retaliation Claim Under the FCO.

Plaintiffs' attempt to bring claims against the City and City Solicitor based on the City Solicitor's non-consent to their retaliation claims against the PPA is futile for the simple reason that plaintiffs have failed to allege any viable retaliation claim under the FCO at all.  In all three counts, plaintiffs' claims are based on the same two premises:  that (1) the FCO supposedly "provides them a cause of action to seek relief from retaliation" against the PPA, Prop. Sec. Compl. ¶¶ 151, 165, 178, 191; and (2) the City Solicitor purportedly has denied plaintiffs "their right to bring their individual claims for retaliation against their employer" and thus denied their "right of access to the courts," Prop. Sec. Compl. ¶¶ 157-58, 171, 178-81.  Both premises are wrong.

Any constitutional right to court access "is ancillary to [an] underlying claim, without which a plaintiff cannot have suffered injury by [allegedly] being shut out of court." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).  Thus, to state a right-of-access claim, as plaintiffs are attempting to do, they must "identify a 'nonfrivolous,' 'arguable' underlying claim." *Id.* Plaintiffs have failed to do this, for at least two reasons.

*First,* despite their assertions that the FCO "provides them a cause of action to seek relief from retaliation," the FCO does not give *these plaintiffs* any cause of action for retaliation at all. The FCO prohibits an employer from retaliating against an employee "because of lawful acts done by the employee *in furtherance of an action under* [*the FCO*], including investigation for, initiation of, testimony for, or other assistance in an action filed or to be filed under [the FCO]." FCO § 19-3604(1).  The federal FCA uses the same "in furtherance of" language, *see* 31 U.S.C. § 3730(h), requiring a "nexus" between the alleged retaliatory action and an actual or contemplated false claims lawsuit, *Hutchins v. Wilentz, Goldman & Spitzer*, 253 F.3d 176, 187

(3d Cir. 2001).  Moreover, "[b]ecause the statute requires a nexus with an FCA action, simply reporting concerns about mischarging the government is not protected conduct." *United States ex rel. Quinn v. Omnicare, Inc.*, 2003 WL 24296532, *9 (D.N.J. Mar. 28, 2003) (citing *Hutchins*, 253 F.3d at 188).  Instead, the employee must give the employer "notice of the 'distinct possibility' of False Claims Act litigation[.]" *Hutchins*, 253 F.3d at 188.  Given the identity of language, the same requirement must apply under the FCO, and plaintiffs cannot satisfy it.

Plaintiffs allege that they were terminated by PPA in March and July 2017, well over a year before they engaged a lawyer and submitted a proposed FCO complaint to the City Solicitor.  Prop. Sec. Compl. ¶¶ 31-32.  At the time of their termination, there was no "action filed or to be filed under" the FCO.  No "acts done by" plaintiffs could possibly have been "in furtherance of [such] an action," when plaintiffs had not yet even contemplated an attempt to bring such an action.  Plaintiffs do not and cannot allege that prior to their terminations, they gave the PPA "notice" of a "distinct possibility" that they would attempt to pursue an FCO action.  *Hutchins*, 253 F.3d at 188.

In the months after their termination, plaintiffs allege that they "attempted various means of bringing these issues to light . . . , including working within the Parking Authority by speaking to Board Members as well as outside individuals, including City Councilman, the press, and even the Federal Bureau of Investigation."  Prop. Sec. Compl. ¶ 44.  These efforts are all alleged to have occurred after plaintiffs were terminated, so, again, there obviously can be no nexus between them and the putative retaliatory terminations.  Further, even at this time plaintiffs do not allege they had any intention of trying to bring an FCO action, or even an awareness that the FCO existed.  It was only after plaintiff Dankanich read "news reports of an unrelated federal False Claims settlement," that plaintiffs retained counsel, who "investigated" the "allegations"

7

and "a complaint was drafted under the Philadelphia False Claims Ordinance."  Prop. Sec.

Compl. ¶ 45.  In short, plaintiffs do not and cannot allege any nexus between their terminations

by PPA and any act "in furtherance of an action under" the FCO.

   *Second,* no acts by plaintiffs could be "in furtherance of an action under" the FCO for the

additional reason that the fraud they say they uncovered at the PPA is not cognizable under the

FCO.  *Cf. Dookeran v. Mercy Hosp. of Pittsburgh*, 281 F.3d 105, 107 (3d Cir. 2002) ("[T]he

whistleblower protections [in the federal FCA] apply only to actions taken in furtherance of a

*viable* False Claims Act case which has been, or is about to be, filed." (emphasis in original));

*see also United States ex rel. Petras v. Simparel, Inc.*, 857 F.3d 497, 508 (3d Cir. 2017)

(following *Dookeran*).  As explained in detail in defendants' brief in support of their still-

pending motion to dismiss plaintiffs' Amended Complaint, despite all the convoluted allegations

in plaintiffs' proposed FCO complaint, they fail to allege anywhere in that document either a

"false claim" submitted to the City in connection with the red-light camera program, *see* FCO §

19-3602(1)-(3), or any "false record[s] or statement[s] to conceal, avoid or decrease an

obligation to pay or transmit money or property to the City," as required to state a cognizable

claim under the FCO § 19-3602(7).  *See* Doc. 11-1 at 5-6.  Thus, "there was no possibility that

[plaintiffs] could have filed a viable [FCO] action."  *Dookeran*, 281 F.3d at 108.  "[B]ecause the

statutory elements . . . could not be met," *id.*, the FCO's retaliation provisions are inapplicable.

   In their proposed Second Amended Complaint, plaintiffs make a new allegation that

"[s]imultaneously to th[e] ongoing fraud" they allege at the PPA, the PPA *also* "fraudulently

represented to the City of Philadelphia that it was unable to pay the full amounts" it owed to the

School District, and, "based upon the PPA's false representation," the City "assumed fiscal

responsibility for the Bureau of Administrative Adjudication," which supposedly cost "the City

at least $3 million dollars." Prop. Sec. Compl. ¶¶ 40-41. These allegations do not help plaintiffs

assert a viable FCO claim for three reasons:

- These allegations *are not in the proposed FCO complaint plaintiffs submitted to the City Solicitor* attached as Exhibit A to their proposed Second Amended Complaint.

- Plaintiffs do not allege that these supposed fraudulent representations by the PPA to the City had anything to do with the fraud they say they uncovered. They only say that these fraudulent representations occurred "simultaneously" with the fraud they allege.

- Plaintiffs do not purport to be the original source of these new allegations. To the contrary, the basis for these allegations is a post on the PPA's own public website that *defendants* cited in their brief in support of their still-pending motion to dismiss plaintiffs' Amended Complaint. *See* Doc. 11-1 at 4 n.1; *see also* FCO § 19-3603(3)(c).

In sum, because plaintiffs have no viable FCO claim, they cannot bring a retaliation claim

under the FCO either. And because they cannot bring a retaliation claim under the FCO, they

likewise cannot have any claim against the City or City Solicitor because the City Solicitor

declined to consent to their retaliation claim.

As already noted, if plaintiffs had acted in a timely fashion, their allegations against the

PPA might have been within the scope of Pennsylvania's Whistleblower Law, 43 P.S. § 1423(a),

but they failed to bring any such claim "within 180 days after the occurrence of the alleged

violation," as the Whistleblower Law requires, 43 P.S. § 1424(a). Thus, plaintiffs' inability to

bring a wrongful discharge claim against the PPA is not the result of any action by the City Solicitor.

For all these reasons, the Court should deny plaintiffs' attempt to amend their pleadings to bring new claims based on the City Solicitor's non-consent to their retaliation claim against the PPA.

**B.      Plaintiffs Have No Ripe Claim Against the City and City Solicitor.**

Alternatively, plaintiffs' new claims are futile because they are not ripe.  "Article III, as part of its 'case or controversy' mandate, requires parties to suffer injury or come into immediate danger of suffering an injury before challenging a statute," or asserting other constitutional claims.  *Artway v. Attorney General of N.J.*, 81 F.3d 1235, 1247 (3d Cir. 1996).

Plaintiffs do not allege any injury, or immediate danger of injury, as a result of the "City and City Solicitor tak[ing] no position on whether the Parking Authority's preliminary objection . . . is sound," and declining to "consent to [plaintiffs'] actions or filings."  Prop. Sec. Compl. Ex. D.  Nor could they.  All that has happened is that the PPA has filed the two preliminary objections attached to this brief as Exhibit A.  The Court of Common Pleas has not yet ruled on these preliminary objections.  When it does so, multiple outcomes are possible.  For example, the court could overrule both preliminary objections.  Or the court could sustain the first preliminary objection — that plaintiffs' retaliation claims are not cognizable under the FCO if, as the City Solicitor himself correctly concluded, the proposed lawsuit they submitted is not cognizable under the FCO — and either decline to reach, or overrule, the second preliminary objection. Under either of these outcomes, plaintiffs could not allege any injury as a result of the City Solicitor's non-consent.  On the former outcome, the court would allow plaintiffs to proceed with their retaliation claims, notwithstanding that the City Solicitor has not "consented" to those

10

claims.  On the latter outcome, plaintiffs' retaliation claims would be barred not because of anything the City Solicitor did, but simply because they are not cognizable under the FCO at all, as already argued.  Again, if the Court of Common Pleas so rules, plaintiffs could not plead any injury caused by the City Solicitor's non-consent.

The only conceivable way in which plaintiffs could potentially allege an injury is if the Court of Common Pleas sustained the PPA's *second* preliminary objection — that plaintiffs cannot bring an FCO retaliation claim unless the City Solicitor has designated them to do so — and overrules the first preliminary objection.  Only then could plaintiffs arguably trace an "injury" to the City Solicitor's non-consent to their retaliation claims.  Whether that outcome will occur "is entirely speculative at this point."  *Artway*, 81 F.3d at 1252.

Moreover, even if the court were to sustain the PPA's second preliminary objection and overrule the first, plaintiffs could challenge that ruling on appeal to the Pennsylvania Superior Court and, if needed, seek allowance of appeal to the Pennsylvania Supreme Court.  Only after receiving a final adjudication from the Pennsylvania state courts that plaintiffs cannot assert retaliation claims under the FCO against the PPA unless the City Solicitor "consents" to those claims could plaintiffs remotely argue that they have suffered an injury due to the City Solicitor's non-consent.

Given the complete absence of any injury, or immediate danger of injury, there is no justiciable case or controversy before this Court with respect to the City Solicitor's non-consent to plaintiffs' retaliation claims.  Thus, any efforts by plaintiffs to bring claims based on that non-consent are futile and the Court should reject them.

## II.    Plaintiffs' Substantive Due Process Claims Still Fail.

In Counts 1 and 3 of their proposed Second Amended Complaint, plaintiffs seek to bring substantive due process claims against the City and City Solicitor.  Count 1 attempts a legislative

substantive due process challenge to the provision of the FCO that permits the City Solicitor to decline to designate their counsel to pursue their underlying proposed FCO lawsuit.  Count 3 attempts a non-legislative substantive due process challenge to the City Solicitor's decision not to designate plaintiffs' counsel to bring that lawsuit.[2]  Plaintiffs failed to adequately plead either of these claims in their Amended Complaint, and their efforts to cure the deficiencies in these claims in the proposed Second Amended Complaint fail.

### A.      Plaintiffs' Legislative Challenge Still Fails to Allege a Fundamental Right.

In their Amended Complaint, plaintiffs alleged that the FCO's non-designation provision was subject to rational basis review.  *See* Am. Compl. ¶¶ 147, 155.  Recognizing that they cannot prevail under that standard, plaintiffs' proposed Second Amended Complaint now alleges that this provision is "subject to strict scrutiny" because it supposedly burdens a "fundamental right" of "access to the courts."  Prop. Sec. Compl. ¶¶ 158, 161.  There are two fatal problems with this new theory.  First, there is no "fundamental right" to bring a false-claims lawsuit on behalf of a government entity.  Second, the Supreme Court has recognized a constitutionally protected right to access the courts only where court access is necessary to protect some independent right that *is* fundamental.  The right of court access is not such a fundamental right.

### 1.      There is No "Fundamental Right" to Bring a False-Claims Lawsuit on Behalf of a Government Entity.

No court has ever recognized a "fundamental right" to bring a false-claims lawsuit on behalf of any government.  If there were such a fundamental right, then statutes that *eliminate*

---

[2] As the Court noted in its Order denying plaintiffs' motion for a preliminary injunction, the Third Circuit has distinguished two varieties of substantive due process claims: (1) a challenge to the validity of a legislative act, and (2) a challenge to a non-legislative action by a government official.  *See* April 12, 2019 Order (Doc. 12) ¶ 22.

private plaintiffs' *qui tam* actions would be subject to heightened scrutiny, but courts universally

uphold the constitutionality of such enactments and subject them only to rational basis review.

For example, in 1943, Congress amended the Informers' Act, the predecessor of the federal

FCA, to eliminate *qui tam* suits "based upon evidence or information in possession of the United

States at the time suit was brought," including suits pending at the time the amendment was

enacted.  *United States ex rel. Rodriguez v. Weekly Publications*, 144 F.2d 186, 187 (2d Cir.

1944).  Courts rejected the relators' arguments that the amendment "deprive[d] [them] of rights

guaranteed by the Constitution," because the relators' "privilege of conducting the suit on behalf

of the United States and sharing in the proceeds of any judgment recovered, was an award of

statutory creation, which, prior to final judgment, was wholly within the control of Congress."

*Id.* at 188; *see also Sherr v. Anacondia Wire & Cable Co.*, 149 F.2d 680, 681 (2d Cir. 1945).

The Third Circuit likewise rejected the argument that "the 1943 amendments" were

"unconstitutional" because they "deprived [relators] of [their] right to an informer's fee" and

expressly "adopt[ed] the reasoning of [*Rodriguez* and *Sherr*]" in doing so.  *United States ex rel.*

*Bayarsky v. Brooks*, 210 F.2d 257, 258 (3d Cir. 1954).

     More recently, when Congress eliminated *qui tam* actions for false patent marking claims

under 35 U.S.C. § 292, including pending actions, courts uniformly rejected arguments that the

amendment was unconstitutional and applied rational basis review, not heightened scrutiny.  *See,*

*e.g., Brooks v. Dunlop Mfg. Inc.*, 702 F.3d 624, 632 (Fed. Cir. 2012) (relying on *Bayarsky,*

*Rodriguez* and *Sherr*); *Rogers v. Conair Corp.*, 2012 WL 1443905, *2-*3 (E.D. Pa. Apr. 25,

2012) (rejecting relator's argument that "he had a property interest in [his *qui tam*] suit" and

subjecting the amendment eliminating *qui tam* actions to rational basis review); *Cloverleaf Gold*

*Course, Inc. v. FMC Corp.*, 863 F. Supp. 2d 768, 771 (S.D. Ill. 2012) (same).  These decisions

refute any suggestion that plaintiffs have a fundamental right to bring a false-claims lawsuit on behalf of the City.

### 2.    Court Access is Not Itself an Independent Fundamental Right.

In any event, the Supreme Court has made clear that even where a party is asserting a claim on its own behalf, rather than on behalf of a government, as plaintiffs are attempting to do here, "a due process right of access to the courts exists" only "*when* fundamental interests are present." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430 n.5 (1982) (emphasis added).  It follows that the right of court access cannot *itself* be a fundamental interest entitled to free standing due process protection.  *See, e.g., Gronne v. Abrams*, 793 F.2d 74, 78 (2d Cir. 1986) ("[T]here is no general fundamental right of access to the courts; rather, the due process clause merely 'assures that no person will be denied the opportunity to present to the judiciary allegations concerning violations of fundamental constitutional rights." (quoting *Wolff v. McDonnell*, 418 U.S. 539, 579 (1974)).  Thus, for plaintiffs' heightened scrutiny challenge to the FCO to work, they must identify some *other* "fundamental interest" that their putative right to access the courts on behalf of the City is supposed to protect.  They identify no such interest in their proposed Second Amended Complaint.  They clearly cannot fall back on their claimed "partial-assignment of the City damages claim," Prop. Sec. Compl. ¶ 157, because that interest exists solely "by legislative grace" and is not "fundamental" in a constitutional sense.  *Chase Sec. Corp. v. Donaldson*, 325 U.S. 304, 314 (1945).

In sum, the FCO's non-designation provision is entitled to rational basis review, which plaintiffs have conceded it satisfies.

**B.      Plaintiffs' Non-Legislative Challenge Still Fails to Allege a Protected Property Interest, or Conduct by the City Solicitor that "Shocks the Conscience."**

The non-legislative substantive due process claim in Count 3 of plaintiffs' proposed Second Amended Complaint also could not survive a motion to dismiss.  First, plaintiffs still fail to meet the "threshold" requirement of alleging a "fundamental" property interest.  *Newark Cab Ass'n v. City of Newark*, 901 F.3d 146, 155 (3d Cir. 2018).  Second, they fail to allege "conscience shocking" conduct by the City Solicitor or his Office.  *United Artists Theatre Circuit, Inc. v. Twp. of Warrington, Pa.*, 316 F.3d 392, 399 (3d Cir. 2003).

**1.      Plaintiffs do Not Allege any Property Interest Protected by Substantive Due Process.**

The only property interest that the Third Circuit has recognized as protected by substantive due process is an interest in real property.  *Newark Cab Ass'n*, 901 F.3d at 155.  Plaintiffs obviously allege no such interest here.  Plaintiffs' alleged "property interest in the bounty" they say was "assigned to them when they submitted their proposed complaint to the City Solicitor," Prop. Sec. Compl. ¶ 178, does not qualify, *see Reich v. Beharry,* 883 F.2d 239, 244 (3d Cir. 1989) (claimed interest in "the receipt of payment" did not qualify for substantive due process protection).  Nor does their putative "cause of action to seek relief from related retaliation by their employer."  Prop. Sec. Compl. ¶ 178.  Such "state-created rights do not enjoy substantive due process protection."  *Hammond v. City of Wilkes-Barre,* 2011 U.S. Dist. LEXIS 34312, *12 (M.D. Pa. Mar. 30, 2011) (internal quotation marks omitted).

**2.      Plaintiffs Still Fail to Plausibly Allege any Outrageous or Conscience Shocking Conduct.**

To state a non-legislative substantive due process claim, plaintiffs must also allege, consistent with *Twombly*, that the City Solicitor *himself* engaged in "egregious official conduct," *United Artists*, 316 F.3d at 399, like "corruption, self-dealing, bias against an ethnic group, or

additional facts that suggest[] conscience-shocking behavior," *Chainey v. Street*, 523 F.3d 200, 220 (3d Cir. 2000) (citing *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 286 (3d Cir. 2004)).

Plaintiffs' proposed Second Amended Complaint does not do this.  Instead, it simply repeats the same outrageous allegations in the Amended Complaint that are already the subject of a pending motion to strike.  Plaintiffs offer only the naked conclusory assertion that the City Solicitor was "covering up corruption of City Officials and their allies."  Prop. Sec. Compl. ¶ 184.  Plaintiffs still do not allege any *facts* suggesting that the City Solicitor or anyone in his Office was engaged in "corruption and self-dealing," nor do they allege that anyone outside of the City Solicitor's Office communicated with the City Solicitor or his staff and either requested, encouraged or pressured them to "cover up" plaintiffs' allegations of fraud at the PPA.  Prop. Sec. Compl. ¶¶ 183-85.

Moreover, despite plaintiffs' assertion that they supposedly "lessened" their "use of 'information and belief' pleading" in their proposed Second Amended Complaint, Pls' Br. at 4, all they did was delete the words "upon information and belief," and make other equally superficial changes, as the example below demonstrates.

| Amended Complaint | Proposed Second Amended Complaint |
|---|---|
| 119.    Upon information and belief, these acts include Mayor Kenney illegally tampering with the life insurance benefits for a city employee, where he arranged to have beneficiary information removed from the file of a deceased firefighter, who had designated his life insurance go into trust for his children, rather than his estranged wife. | 124.    ~~Upon information and belief~~These ~~corrupt~~ acts include Mayor Kenney illegally tampering with the life insurance benefits for a city employee, where he arranged to have beneficiary information removed from the file of a deceased firefighter, who had designated his life insurance go into trust for his children, rather than his estranged wife. |

16

Plaintiffs still do not allege the source or basis for this and numerous other allegations that are supposed to show "egregious official conduct."  Prop. Sec. Compl. ¶ 185.  Plaintiffs' allegations are still "utterly devoid of any factual basis asserted to support the beliefs pled." *Wright v. Lehigh Valley Hosp. & Health Network*, 2011 WL 2550361, *3 (E.D. Pa. Jun. 23, 2011).  Given that "[a]dding on 'information and belief' " does not suffice under *Twombly* "unless a plausible source is cited," *Bronson v. Samsung Elecs. Am., Inc.*, 2018 WL 5809418, *3 (N.D. Cal. Nov. 6, 2018), plaintiffs certainly cannot satisfy *Twombly* by *deleting* those words from an already deficient allegation.

In sum, plaintiffs' proposed Second Amended Complaint still does not properly allege "conscience-shocking" or "egregious" conduct by the City Solicitor.  Their proposed non-legislative substantive due process claim would not survive a motion to dismiss.  The Court should therefore deny plaintiffs' motion for leave to amend.

## III.   Plaintiffs Have Done Nothing to Repair Their Procedural Due Process Claim.

In Count 4 of plaintiffs' proposed Second Amended Complaint, they try yet again to plead a procedural due process claim.  This time, they say they "have a cognizable property interest in the bounty" that supposedly was "statutorily and non-discretionarily assigned to them when they submitted their proposed complaint to the City Solicitor, as well as a statutory cause of action to seek relief from related retaliation by their employer."  Prop. Sec. Compl. ¶ 191.  As already shown above in Part I, plaintiffs' putative "cause of action to seek relief from related retaliation by their employer" cannot support any viable claim.  Nor does the supposed "assignment" in the "bounty" they say they received "when they submitted their proposed complaint."

To begin with, the "bounty" obviously does not exist.  Of course, the FCO says that *if* a lawsuit is authorized by the City and *if* that lawsuit is successful in recovering proceeds, *then* the

party who suggested the lawsuit "shall be entitled to receive" a specified portion of the proceeds. FCO § 19-3603(8)(a) & (b). But that argument ignores that any speculative "entitlement" to proceeds that may or may not ultimately be recovered is dependent on the double contingency of the lawsuit being authorized by the City and then ultimately being successful in recovering funds. This "highly speculative and contingent 'interest'" in potential future proceeds does not rise "to the level of an accrued property right" protected by due process. *Mitchell v. Harris*, 496 F. Supp. 230, 234 (D.N.J. 1980); *cf. Baraka v. McGreevey*, 481 F.3d 187, 205 (3d Cir. 2007) (plaintiffs must assert "more than an abstract need or desire," or a "unilateral expectation" of benefits).

Moreover, the FCO, by its plain language, makes clear that plaintiffs have no right to expect that any lawsuit will be authorized by the City. The FCO states that the City Solicitor "*may*" take any number of actions, including "[d]eclin[ing] to commence a civil action and declin[ing] to designate the person who submitted the proposed complaint to commence a civil action," and "[p]roceed[ing] in any other manner the City Solicitor deems appropriate." FCO § 19-3603(2)(b)(.3) & (.4). That language, which gives the City Solicitor sole discretion in determining whether and how to proceed, leaves plaintiffs no room for any "legitimate claim of entitlement" to bring a lawsuit the City Solicitor has declined to authorize. *Potts v. City of Philadelphia*, 224 F. Supp. 2d 919, 941 (E.D. Pa. 2002).

Nor is there any merit in plaintiffs' assertion that the FCO grants them an "assignment" in a speculative future "bounty" "when they submitted their proposed complaint to the City Solicitor." Prop. Sec. Compl. ¶ 191. The FCO simply does not effect any "assignment" at the time a would-be FCO plaintiff submits a proposed complaint. As this Court has already noted in denying plaintiffs' motion for a preliminary injunction, while the federal FCA permits a relator

18

to unilaterally file a *qui tam* complaint without government approval, the FCO requires that a would-be relator submit a proposed complaint to the City Solicitor and "provides the City Solicitor complete discretion to file the complaint, permit the relator to file the complaint on the City's behalf, or do neither."  Doc. 12 at 2-3.  The City Solicitor's option to decline the lawsuit, and to decline to designate the would-be relator to do so as well, refutes any suggestion that there is any such "assignment" when a complaint is submitted to the City Solicitor.

Moreover, even if the FCO could somehow be characterized as effecting a partial assignment of the City's *damages* claim "at the moment that a complaint is submitted," plaintiffs still would not have a property interest protected by procedural due process because the underlying cause of action "belong[s] to the City," as this Court has already explained.  Doc. 12 at 7 (citing *United States ex rel. Mateski v. Mateski*, 634 Fed. Appx. 192, 195 (9th Cir. 2015)); *Rogers v. Tristar Prods., Inc.*, 559 Fed. Appx. 1042, 1045 (Fed Cir. 2012) (explaining that in the "context of the [federal] False Claims Act, courts long ago rejected the argument that a constitutionally protected property right vests upon initiating suit").

For all these reasons, plaintiffs still have not repaired the flaws in their procedural due process claim.  The Court should deny plaintiffs leave to file the proposed Second Amended Complaint.

## IV.   Plaintiffs' First Amendment Claims are Still Not Viable.

Plaintiffs attempt to plead claims under the First Amendment in Counts 5 and 6 of their proposed Second Amended Complaint.[3]  Count Five asserts that the FCO's confidentiality

---

[3] Plaintiffs also cite provisions of the Pennsylvania Constitution in support of these counts, but they do not contend that these provisions differ in any substantive way from the First Amendment.

provision, as "interpreted" by the City Solicitor, supposedly infringes on the constitutional right of access to court records. This claim is futile because plaintiffs do not and cannot allege that their access to court records has been in any way infringed, and they do not have standing to assert any other person's right to access court records. Count Six asserts that the FCO's confidentiality provision (as, again, "interpreted" by the City Solicitor) violates plaintiffs' right to free speech. This is the same claim that is already asserted in plaintiffs' Amended Complaint and fails for all the reasons set forth in defendants' still-pending motion to dismiss.

### A. Plaintiffs Cannot Bring a Claim Based on Access to Court Records When They Have Not Been Denied Such Access.

The FCO provides that "[i]nformation submitted by a person in support of a complaint, and information gathered as a result of the City Solicitor's or other City officer's investigation of the complaint, shall be confidential and protected from disclosure to the fullest extent permitted under applicable law." FCO § 19-3603(2)(c). Plaintiffs do not challenge the constitutionality of this provision. Instead, they assert that the "City Solicitor has *interpreted* this confidentiality clause" in a way that they say is unconstitutional because it "interferes [with] the public's right of access to the courts." Prop. Sec. Compl. ¶¶ 200, 203. There are at least two reasons why plaintiffs' attempt to add this claim is futile.

First, the supposed "interpretation" on which plaintiffs base this claim is an *email* that defendants' counsel sent to plaintiffs' counsel the day this action was filed, when plaintiffs were seeking a temporary restraining order and preliminary injunction on a purported emergency basis. A "mere legal position, without anything more, is insufficient to constitute an official policy." *Teesdale v. City of Chicago*, 690 F.3d 829, 837 (7th Cir. 2012). On plaintiffs' own allegations, there "exists no law, ordinance, code provision, . . . or regulation" that plaintiffs allege to be unconstitutional. *Id.* at 836. There is simply an email from defendants' counsel, and

plaintiffs want this Court to rule that defendants' counsel should not have taken the legal position he took in the email. That is not the basis for a constitutional claim against the City and the City Solicitor in his official capacity.

Second, plaintiffs do not and cannot contend that their *own* access to court records has been denied. Instead, they say that "the *public's* right of access to the courts" has been infringed. Prop. Sec. Compl. ¶ 203 (emphasis added). Plaintiffs do not have standing to assert the rights of the abstract "public" to access court records. The Fourth Circuit reached an analogous conclusion is *American Civil Liberties Union v. Holder*, 673 F.3d 245 (4th Cir. 2011). In that case, the ACLU sought access to filings in a federal *qui tam* suit and argued that the FCA's seal provision was unconstitutional in part because it "gagg[ed] *qui tam* relators from speaking about the *qui tam* complaint." *Id.* at 255. The Fourth Circuit ruled that the ACLU lacked standing to assert this claim because it "failed to identify any particular *qui tam* relator who, but for the seal provisions . . . is a willing speaker who desires to speak with" it. *Id.* Here plaintiffs are trying to allege the mirror image of the claim in *Holder*: they are would-be relators under the FCO and are asserting that someone in the general public might have wanted to have access to the filings in this action when it was under seal. That claim fails for the same reason the vicarious claim in *Holder* failed. Plaintiffs have not identified any particular member of the general public that actually desired to access the filings in this case during the limited period of time (28 days) in which it was under seal. Thus, plaintiffs are trying assert a right of access belonging to an unidentified and presumably nonexistent member of the abstract public. They do not have standing to assert such a claim.

The First Amendment right-of-access claim plaintiffs seek to bring in Count 5 of their proposed Second Amended Complaint is therefore futile. The Court should deny plaintiffs' motion to amend.

**B.  Plaintiffs Do Not Allege Any Infringement of Their Free Speech Rights.**

The First Amendment claim plaintiffs seek to bring in Count 6 of their proposed Second Amended Complaint is essentially the same claim they assert in Count 4 of their current Amended Complaint, except that they have narrowed the claim so that, like the right-of-access claim just discussed, it challenges only the City Solicitor's supposed "interpretation" of the FCO's confidentiality provision as purportedly prohibiting "the City and the public — including whistleblowers — from disclosing any information regarding the fraud" they allege. Prop. Sec. Compl. ¶ 212. This proposed claim is also futile.

First, as just discussed, the City Solicitor has not "interpreted" the FCO's confidentiality provision at all, let alone in the way plaintiffs' contend. All that plaintiffs' identify to support the supposed "interpretation" is the email from counsel sent on the day this action was filed. Once again, a litigation position asserted by counsel is not a basis for a constitutional claim against the City and City Solicitor in his official capacity. *Teesdale*, 690 F.3d at 837.

Second, the email simply does not say that "whistleblowers" or the "public" are prohibited from "disclosing any information regarding the fraud" plaintiffs allege. The email merely takes the position that "whatever [plaintiffs] file[d] with the court" on February 21, 2019 needed to comply with the FCO's confidentiality provision. Nothing in counsel's email requested or demanded that plaintiffs observe any broader restriction on discussing their allegations with anyone.

Moreover, the sole effect of counsel's email was that plaintiffs' counsel decided to file the complaint under seal.  The complaint was under seal from February 21 to March 21, 2019 — 28 days.  Plaintiffs do not allege that during that four-week period they were prevented from discussing the alleged fraud at the PPA in any manner.

In short, plaintiffs do not allege any First Amendment violation.  Their motion for leave to amend should be denied.

**V.      Plaintiffs' Pendant Claims Under Pennsylvania Law Likewise Could Not Survive a Motion to Dismiss.**

Lastly, plaintiffs seek to bring two claims under Pennsylvania state law.  In Count 2 they seek to bring a claim under the remedies clause, Article 1, Section 11, of the Pennsylvania Constitution, and in Count 7 they seek to bring a claim under Pennsylvania's Local Agency Law. Like the other five counts in plaintiffs' proposed Second Amended Complaint, these counts are futile.

**A.      Plaintiffs Fail to Allege a Viable Claim Under the Pennsylvania Constitution.**

The remedies clause provides that "every man for an injury done him . . . shall have remedy by due course of law."  Pa. Const. Art. 1, Sec. 11.  This clause "can be invoked only with respect to a legal injury," *Masloff v. Port Auth. of Allegheny County*, 613 A.2d 1186, 1190 (Pa. 1992), which requires an injury to a "vested right," *Freezer Storage, Inc. v. Armstrong Cork Co.*, 382 A.2d 715, 720 (1978).

Plaintiffs do not have any "vested right" to bring an FCO lawsuit on behalf of the City, nor do they have any vested right in the non-existent "bounty" they misguidedly believe could be recovered in such a lawsuit.  Nor do they have a vested right to bring a retaliation action against the PPA under the FCO when their own allegations do not even arguably fit within that ordinance.  Plaintiffs therefore fail to allege any claim under Pennsylvania's remedies clause.

**B.    Plaintiffs Have No Right to Bring a Claim Under the Local Agency Law in this Court.**

Plaintiffs' claim under Pennsylvania's Local Agency Law is the same claim they assert in Count 5 of their Amended Complaint.  As demonstrated in defendants' still-pending motion to dismiss, this claim is fatally flawed, and plaintiffs have done nothing to try to repair the flaws in their proposed Second Amended Complaint.

Plaintiffs' Local Agency Law claim is predicated on a misreading of *City of Chicago v. International College of Surgeons*, 522 U.S. 156 (1997), *see* Prop. Sec. Compl. ¶ 15.  Plaintiffs' reliance on this case is misplaced for two reasons.

First, *International College of Surgeons* dealt with a defendant's *removal* of a plaintiff's administrative review claim to federal court because it raised federal constitutional issues.  This case has not been removed by defendants.  Rather, plaintiffs are attempting to treat this Court as if it were a state court of appellate administrative review by filing their challenge to the City Solicitor's decision here in the first instance, bypassing the procedures *they* say are available in state court.  Plaintiffs are therefore attempting to do precisely what the Third Circuit said could not be done in *Alvin v. Suzuki*:  "skip" the state court "process and use the federal courts as means to get back what [they] want."  227 F.3d 107, 116 (3d Cir. 2000).  Although the Third Circuit in *Alvin* was specifically addressing a procedural due process claim, the point applies with no less force to plaintiffs' attempt to invoke the Local Agency Law in this Court in the first instance.

Second, the Court in *International College of Surgeons* limited its holding to addressing the district court's supplemental *jurisdiction* over the removed administrative claim.  *Int'l College of Surgeons*, 522 U.S. at 159, 174.  But, as demonstrated in defendants' still-pending motion to dismiss plaintiffs' Amended Complaint, plaintiffs *have no valid cause of action* under

24

the Local Agency Law that they can invoke in this Court.  "[T]he absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, *i.e.*, the courts' statutory or constitutional *power* to adjudicate the case."  *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89 (1998) (emphasis in original).  Thus, *International College of Surgeons*, which solely addresses jurisdiction, is irrelevant.  It may well be that this Court would have the *power* to adjudicate a Local Agency Law claim if it were removed by the defendant.  But it does not follow that plaintiffs have a *right* to administrative review in this Court under that statute in the first instance, particularly when the statute by its express terms limits the "right to appeal" to the Philadelphia County Court of Common Pleas.  2 Pa. C.S. § 752; *see also* 42 Pa. C.S. §§ 933(a)(2) & (c)(1).

Thus, plaintiffs' claim under the Local Agency Law is still futile.

## CONCLUSION

For all these reasons, the City and City Solicitor urge the Court to deny plaintiffs' motion to file their proposed Second Amended Complaint.

Respectfully submitted,

/s/ Stephen A. Fogdall

Dated:  December 23, 2019

Stephen A. Fogdall (Pa. I.D. 87444)
Schnader Harrison Segal & Lewis LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103
Phone: (215) 751-2581
Fax: (215) 751-2205
sfogdall@schnader.com