**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ANDREW J. DANKANICH and NICHOLAS A. MARRANDINO,** | : | **CIVIL ACTION** |
| | : | |
| *Plaintiffs,* | : | |
| | : | |
| **v.** | : | **No. 19-735** |
| | : | |
| **MARCEL PRATT,** *City Solicitor of Philadelphia,* **and CITY OF PHILADELPHIA,** | : | |
| | : | |
| *Defendants.* | : | |
| | : | |

**Goldberg, J.**                                                                 **December 8, 2020**

<u>**MEMORANDUM OPINION**</u>

Plaintiffs, Andrew J. Dankanich and Nicholas A. Marrandino, have sued Defendants Marcel Pratt, in his official capacity as the City Solicitor of Philadelphia (the "City Solicitor"), and the City of Philadelphia (the "City") (collectively, "Defendants"), alleging constitutional violations under the City of Philadelphia's False Claims Ordinance.

Defendants move, under Federal Rules of Civil Procedure 12(b)(6) and 12(f), to dismiss and/or strike certain allegations from the Amended Complaint. Plaintiffs subsequently filed a motion under Federal Rule of Civil Procedure 15, for leave to file a Second Amended Complaint. For the reasons set forth below, Defendants' Motion to Dismiss will be granted and Plaintiffs' Motion for Leave will be denied.

## I.       FACTUAL AND PROCEDURAL HISTORY

### A.   The False Claims Ordinance

In 2010, the Philadelphia City Council enacted the City's "False Claims Ordinance" (hereinafter "the Ordinance"). Like its federal counterpart, the False Claims Act (the "Federal Act"), the Ordinance incentivizes would-be whistleblowers to report instances of fraud perpetrated on the government. The Ordinance does so by permitting individuals, in certain circumstances, to bring a civil qui tam action against an alleged fraudster on behalf of the City and to be entitled to a share of any recovery. (Am. Compl. ¶¶ 16–20); see also Phila. Code § 19-3603.

However, the Ordinance differs from the Federal Act in how such an action is initiated. Under the Federal Act, the individual—termed the relator—initiates the action by filing a complaint in the district court. The Federal Act then requires the relator to serve that complaint on the government only, while the complaint remains under seal, thus allowing the government time to review the complaint before it is unsealed and served on the defendant. After reviewing the relator's allegations, the government may decide to intervene and assume control over the direction of the litigation or it may decline to intervene and leave control of the litigation to the relator. Compare Phila. Code § 19-3603, with U.S. §§ 3730–3731.

Under the Ordinance, however, the individual relator does not file a complaint with the court but, rather, submits a proposed complaint to the City Solicitor, allowing the Solicitor to review the complaint and conduct an investigation of the allegations raised therein before it is filed. And importantly here, the Ordinance provides the City Solicitor complete discretion to (1) file the complaint, (2) permit the relator to file the complaint on the City's behalf, or (3) do neither. (Am. Compl. ¶ 23.) Specifically, the Ordinance provides, in relevant part:

> (b) After the investigation [of the allegations raised in the proposed complaint] has been completed, the City Solicitor may:

(.1) Bring a civil action, based upon the facts alleged in such complaint, against one or more of the defendants named therein;

(.2) Enter into an agreement with and designate the person who submitted the proposed civil complaint, or if that person is not an attorney, his or her attorney, to file a civil action for the person and the City, in the name of the City, based upon the facts alleged in the complaint, against one or more of the defendants named therein;

…

(.3) Decline to commence a civil action and decline to designate the person who submitted the proposed complaint to commence a civil action; or

(.4) Proceed in any other manner the City Solicitor deems appropriate.

Phila. Code § 19-3603 (2)(b).

B.  Facts Alleged in the Complaint

Plaintiffs are two former employees of the Philadelphia Parking Authority (the "PPA"). (Am. Compl. ¶¶ 28–29.)  On October 17, 2018, Plaintiffs, acting through their attorney, submitted to the City Solicitor, a proposed complaint pursuant to the Ordinance.  The proposed complaint alleged that the named defendant—a company that contracted with the PPA to provide certain services—had committed fraud by, among other things, conspiring with the PPA's executive director to ensure that it would be awarded contracts notwithstanding the fact that its services did not meet the requirements of these contracts.  (Am. Compl. ¶¶ 30–38.)

According to Plaintiffs, the City Solicitor did not engage in a good-faith review of their proposed complaint.  Rather, Plaintiffs allege that representatives of the City Solicitor's Office "summarily" concluded that the Ordinance did not apply to the fraud alleged in the proposed complaint.  (Am. Compl. ¶¶ 41–45.)

Plaintiffs further allege that their counsel met with representatives of the City Solicitor on January 29, 2019, following a number of telephone and email conversations about the viability of the proposed complaint. (Am. Compl. ¶ 65.) According to Plaintiffs, during this meeting, the City Solicitor's representatives again reiterated their position that the Ordinance did not apply to the fraud alleged in the proposed complaint. (Am. Compl. ¶¶ 66–69.) At this meeting, Plaintiffs' counsel requested that the City Solicitor designate them to pursue the action on the City's behalf, pursuant to the Ordinance. (Am. Compl. ¶¶ 69–73.)

Plaintiffs allege that, on February 8, 2019, after their counsel had placed follow-up telephone calls to the City Solicitor's office, and the Mayor's office, a representative of the City Solicitor sent Plaintiffs' counsel a two-page letter. This letter advised that the City Solicitor declined to bring Plaintiffs' proposed complaint and "further declin[ed] to designate [Plaintiffs' counsel] to commence a civil action in the City's name." (Am. Compl. ¶¶ 103–108, Ex. B.)

C. <u>Relevant Procedural History</u>

On February 21, 2019, Plaintiffs brought this action against Defendants, followed by Defendants' March 13, 2019 Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(6). On March 27, 2019, Plaintiffs filed an Amended Complaint, alleging violations of their procedural and substantive due process rights under the Fourteenth Amendment, as well as First Amendment violations of freedom of speech. Plaintiffs also asserted state law claims including breach of contract and unjust enrichment. On April 10, 2019, Defendants renewed their Motion to Dismiss. Following my April 12, 2019 Order denying Plaintiffs' Motion for Preliminary Injunction and Temporary Restraining Order, Plaintiffs filed a Motion for Leave to Amend, which Defendants oppose. I will address each Motion individually.

## II.     **DEFENDANTS' MOTION TO DISMISS**

### A.   Standard of Review: Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Conclusory allegations do not suffice. Id. Twombly and Iqbal's plausibility standard requires more than a "sheer possibility that a defendant has acted unlawfully." Id. Plausibility requires "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements of a claim." Phillips v. Cnty. Of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008). To determine the sufficiency of a complaint under Twombly and Iqbal, a court must (1) "tak[e] note of the elements a plaintiff must plead to state a claim;" (2) identify the allegations that are not entitled to the assumption of truth because they are no more than conclusions; and (3) "where there are well-pleaded factual allegations, assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Burtch v. Millberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) (citations omitted). Courts must construe the allegations in a complaint "in the light most favorable to the plaintiff." Id. at 220.

In deciding a motion to dismiss, the court must accept all factual allegations in the complaint as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading, the plaintiff may be entitled to relief. Atiyeh v. Nat'l Fire Ins. Co. of Hartford, 742 F. Supp. 2d 591, 596 (E.D. Pa. 2010). Additionally, "courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014) (quoting Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

B. <u>Discussion</u>

    1. <u>Counts One and Three: Substantive Due Process</u>

The United States Court of Appeals for the Third Circuit has explained that there are two types of substantive due process claims: (1) a "challenge [ ] to the validity of a legislative act," based on the plaintiff's claim that the act burdens a fundamental right or is not rationally related to a legitimate state interest; and (2) a challenge to "certain types of non-legislative state action," based on the plaintiff's claim that the action is arbitrary, irrational, tainted by an improper motive, or so egregious that it shocks the conscience. See <u>Nicholas v. Pa. State. Univ.</u>, 227 F.3d 133, 139– 130 (3d Cir. 2000) (explaining that legislative acts are "generally laws and broad . . . regulations [that] apply to large segments of society," in contrast to non-legislative acts, which "typically apply to one person or a limited number of persons").   Before addressing the merits of a substantive due process challenge, I must first "determine the standard of review."   <u>Alexander v. Whitman</u>, 114 F.3d 1392, 1403 (3d Cir. 1997) (citing <u>Sammon v. New Jersey Bd. of Med. Examiners</u>, 66 F.3d 639, 643–44 (3d Cir. 1995)).

In Count One of the Amended Complaint, Plaintiffs challenge a legislative act—the Ordinance—arguing it cannot survive rational basis review.  Plaintiffs contend that the provision of the Ordinance permitting the City Solicitor to decline to bring an individual's proposed complaint, or to designate that individual or his counsel to bring the complaint on the City's behalf, is not rationally related to a legitimate state interest.  Defendants respond that there are legitimate reasons for providing the City Solicitor complete discretion, explaining:

> [T]he legitimate and salutary reasons for giving the City, as the owner of any claim under the [Ordinance], the power to authorize or to decline to authorize the bringing of a lawsuit in its name are obvious.  Even where a private party brings the lawsuit, the lawsuit inevitably will consume the City's valuable and scarce resources. The City will be forced to deal with written discovery, depositions,

and the other burdens of litigation.  The City will have to monitor the lawsuit and will be responsible for its ultimate resolution.  And the lawsuit will, of course, consume the resources of the Court in which it is filed.  For all these reasons, it makes eminently good sense for the City, as the owner of the claim, to have control over whether any lawsuit should be filed.  If the City determines that a lawsuit lacks merit, the City's option to decline to authorize the lawsuit clearly and obviously serves a legitimate government purpose.

(Defs.' Br. in Opp'n 5–6.)

To defeat Plaintiffs' substantive (legislative) due process claim, Defendants need not demonstrate that the City Council's decision to provide the City Solicitor complete discretion is the *best* (or even a *good*) policy decision.  Rather, Defendants need only show that there is "a conceivable rational basis" for that decision.  Am. Exp. Travel Related Servs., Inc. v. Sidamon-Eristoff, 669 F.3d 359, 367 (3d Cir. 2012).

Defendants offer various legitimate state interests that support rational basis review.  For example, the discretion provided to the City Solicitor under the Ordinance prevents otherwise inevitable burdens of litigation, such as the resources needed for discovery, deposition, and case management.  These state interests are at *least* conceivably rational reasons.  In light of those reasons, Plaintiff has not plausibly alleged that there is no rational basis for the challenged provision of the Ordinance.  Therefore, this claim does not give rise to an entitlement for relief and fails under Twombly and Iqbal.

In Count Three of the Amended Complaint, Plaintiffs allege a violation of non-legislative substantive due process.  To prevail on a non-legislative substantive due process claim, "a plaintiff must establish as a threshold matter that he has a protected property interest to which the Fourteenth Amendment's due process protection applies.'"  Nicholas v. Pa. State. Univ., 227 F.3d 133, 140 (3d Cir. 2000) (quoting Woodwind Estates, Ltd. v. Gretkowski, 205 F.3d 118, 123 (3d

Cir. 2000)).  "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it."  Baraka v. McGreevey, 481 F.3d 187, 205 (3d Cir. 2007) (quoting Bd. of Regents of State Coll. v. Roth, 408 U.S. 562, 577 (1972)).

Plaintiffs contend that they were denied an interest in property, particularly their share of any proceeds the City would recover if the proposed action were brought and the City prevailed in that action.  Defendants respond that there is no cognizable property interest because potential proceeds are entirely contingent on the City choosing to bring the claim.  This is a choice that the Ordinance leaves solely to the City Solicitor.  In addition, the alleged property right is also dependent on the City's success on the merits of that claim or in settlement.  These factors weigh against Plaintiffs' claim of entitlement.

Plaintiffs are certainly correct that, under the Ordinance, a person who submits a proposed complaint to the City Solicitor could receive a share of any proceeds that the City recovers *if the City chooses to pursue the action.*  However, the Ordinance does *not* require that the City pursue the action.  Rather, the Ordinance gives the City Solicitor complete discretion as to whether to bring an action based on the proposed complaint or authorize the individual who submitted the proposed complaint to do so on the City's behalf.  Moreover, any claims set out in a proposed complaint under the Ordinance belong to the City.  Accordingly, Plaintiffs have not demonstrated a legitimate claim of entitlement and thus have not plausibly alleged a legitimate property interest improperly denied by the City.  Cf. United States ex. rel. Mateski v. Mateski, 634 F. App'x 192, 195 (9th Cir. 2015) (rejecting a procedural due process claim by a relator in an action under the Federal Act and concluding that the relator "ha[d] not demonstrated a . . . property interest sufficient to trigger procedural due process rights," because the Act "makes clear that

notwithstanding the relator's statutory right to the government's share of the recovery, the *underlying claim of fraud always belongs to the government*").

### 2.   Count 2: Procedural Due Process

To succeed on a procedural due process claim, a plaintiff must demonstrate that "(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide him 'due process of law.'"   Hill v. Borough of Kutztown, 455 F.2d 225, 233–234 (3d Cir. 2006). As discussed above, a plaintiff must demonstrate a legitimate claim of entitlement in order to have a property interest in a benefit.   See Baraka, 481 F.3d at 205 (3d Cir. 2007).

In briefing the validity of Count Two of the Amended Complaint, the parties focus on the first element.   Like their argument in Count Three discussed above, Plaintiffs contend that they were denied an interest in property, particularly their share of any proceeds the City would recover if the proposed action were brought and the City prevailed in that action.   For the same reasons discussed above, Plaintiffs have failed to identify a cognizable property interest of which they were deprived and thus fail to state a claim upon which relief may be granted.

### 3.   Count Four: First Amendment

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech . . . or the right of the people to peacefully assemble."   U.S. Const. amend. I. "As a general matter, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content."   United States v. Marcavage, 609 F.3d 264, 279 (3d Cir. 2010) (quoting Ashcroft v. ACLU, 535 U.S. 564, 573 (2002)).

The Third Circuit has explained that there are two types of First Amendment challenges: (1) a facial challenge and (2) an as-applied constitutional challenge. See Marcavage, 609 F.3d at 273–74. "A facial attack tests a law's constitutionality based on its text alone and does not consider the facts or circumstances of a particular case. An as-applied attack, in contrast, does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right." Id.

In addressing the merits of a facial versus an as-applied challenge, the court must apply the "relevant constitutional test to the challenged statute." Bruni v. City of Pittsburgh, 824 F.2d 353, 363 (3d Cir. 2016). To do so, the First Amendment requires the court to draw a distinction between content-based laws and content-neutral laws. Id. A content-based law "encompass[es] restrictions not only on 'particular viewpoints' but also 'an entire topic.'" Marcavage, 609 F.3d at 279–80 (quoting Consol. Edison Co. v. Public Serv. Comm'n, 447 U.S. 530, 537 (1980)). To safeguard against content-based restrictions on speech, a court must apply strict scrutiny. Reed v. Town of Gilbert, 576 U.S. 155, 163–4 (2015). A content-based law only survives strict scrutiny if it meets three requirements: "[it] serves a compelling government interest; (2) is narrowly tailored to achieve that interest; and (3) is the least restrictive means of advancing that interest." Free Speech Coal., Inc. v. Attorney Gen. United States, 974 F.3d 408, 420 (3d Cir. 2020).

On the other hand, a law is content neutral if the speech restrictions "are justified without reference to the content of the regulated speech." Marcavage, 609 F.3d at 279–80 (citing City of Renton v. Playtime Theatres, 475 U.S. 41, 48 (1986)). In other words, a content-neutral law "applies to all speech irrespective of the ideas or views expressed." Galena v. Leone, 711 F. Supp. 2d. 440, 452 (W.D. Pa. 2010), aff'd, 638 F.3d 186 (3d. Cir. 2011). If a law is determined to be content-neutral, the court must "apply intermediate scrutiny and ask whether it is 'narrowly

tailored to serve a significant governmental interest.'" <u>Bruni</u>, 824 F.3d at 363–64 (quoting <u>Madsen v. Women's Health Ctr., Inc.</u>, 512 U.S. 753, 764 (1994)).

In Count Four of the Amended Complaint, Plaintiffs challenge the Ordinance's confidentiality clause pursuant to the First Amendment, alleging both facial and as-applied challenges. Specifically, Plaintiffs argue that the Ordinance's confidentiality clause, "on its face and as applied," is "irrational and unreasonable," "unconstitutionally overbroad" and "vague," and is neither "narrowly tailored nor the least restrictive means to accomplish any permissible government purpose sought to be served." (Am. Compl. ¶ 196–99.) Although both challenges can be raised, a facial challenge's "burden is significantly heavier" than that of an as-applied challenge. <u>Marcavage</u>, 609 F.3d at 273. Therefore, I will address Plaintiffs' facial challenge first and then their as-applied challenge.

        a.  <u>Facial Challenge</u>

To succeed on a facial challenge, a plaintiff must demonstrate "that no set of circumstances exists under which the [law] would be valid." <u>Marcavage</u>, 609 F.3d at 273; <u>see also</u> <u>United States v. Mitchell</u>, 652 F.3d 387, 405 (3d Cir. 2011) (en banc). Simply put, Plaintiffs would have to show that the "law is unconstitutional in all of its applications." <u>Id.</u> "This is the 'most difficult challenge to mount successfully.'" <u>Mitchell</u>, 652 F.3d at 405 (quoting <u>United States v. Salerno</u>, 481 U.S. 739, 745 (1987)). When assessing a facial challenge, the court must consider the law's constitutionality based on its text alone, without considering the facts or circumstances of the case. <u>Marcavage</u>, 609 F.3d at 273.

Plaintiffs' facial attack on the Ordinance's confidentiality clause urges that the Ordinance's text *alone* is unconstitutional. The relevant clause states:

> (c) Information submitted by a person in support of a complaint, and information gathered as a result of the City Solicitor's or other City

> officer's investigation of the complaint, shall be confidential and
> protected from disclosure to the fullest extent permitted under
> applicable law.

Phila. Code § 19-3603(2)(c).

Plaintiffs argue that strict scrutiny must apply because the text of this clause unconstitutionally restricts their speech and that of the general public.  In turn, they contend that the Ordinance's text is not "narrowly tailored nor the least restrictive means to accomplish any permissible government purpose sought to be served."  (Am. Compl. ¶ 198.)  Defendants counter that only intermediate scrutiny applies and that the confidentiality clause serves a significant governmental interest.

I find that Defendants' position has merit.  As a primary matter, the text of the Ordinance's confidentiality clause does not discriminate against speech based on its substance, ideas, or views.  Rather, it "applies to all speech irrespective of the ideas or views expressed."  Galena, 711 F. Supp. 2d. at 452.  Therefore, since this law is content-neutral, intermediate scrutiny applies.

The question then becomes whether the law is narrowly tailored to serve a significant governmental interest.  Defendants maintain that the confidentiality clause serves a significant governmental interesting by protecting and preserving "the confidentiality of allegations of fraud, subject to reasonable limitations."  (Defs.' Br. in Opp'n 19.)  They explain that the confidentiality clause is ". . . intended to preserve a reasonable period for evaluation and to prevent the dissemination of information relevant to the claimed fraud."  Id. at 19–20.  In light of the governmental interests proffered by Defendants, I conclude that the Ordinance's confidentiality clause serves a significant governmental interest.  Cf. ACLU v. Holder, 673 F.3d 245, 253–54 (4th Cir. 2011) (rejecting a First Amendment challenge to the seal requirement under 31 U.S.C. §3730(b)(2) and finding the Federal Act's seal provisions to be "narrowly tailored in three

12

important ways . . . including a narrow window of time (i.e. 60 days) in which the seal provisions are mandatory, [a mandated] judicial review at the end of the 60-day period," and a limitation only applied to the relator from "publicly discussing the filing of the qui tam complaint").  For that reason, Plaintiffs fail to state a claim upon which relief can be granted for a facial challenge under the First Amendment.

b.  As-Applied Challenge

Unlike a facial challenge, "[a]n as-applied attack . . . does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right."  Marcavage, 609 F.3d at 273.  As discussed above, all First Amendment challenges are subject to varying levels of scrutiny.  See Bruni, 941 F.3d at 83.

Plaintiffs assert that strict scrutiny must also be applied to their as-applied challenge. Again, I disagree.  The Ordinance's confidentiality clause, as applied to the Plaintiffs in this case, is not content-based because the confidentiality requirement does not depend on the facts or circumstances of Plaintiffs' proposed complaint.  Rather, the confidentiality requirement applies regardless of what information Plaintiffs' proposed complaint contains.  Therefore, I must apply intermediate scrutiny to this content-neutral statute.  See Free Speech Coal., v. Attorney Gen. of U.S., 677 F.3d 519, 535 (3d Cir. 2012) (citing Holder v. Humanitarian Law Project, 561 U.S. 1, 130 (2010)).

Plaintiffs contend that the City Solicitor adopted an unconstitutional interpretation of the Ordinance's confidentiality clause specifically as it applied to their proposed complaint.  (Am. Compl. ¶ 199.)  Defendants argue that "it was entirely reasonable . . . to expect plaintiffs to honor the confidentiality provisions of the ordinance under which they sought to proceed by filing their

complaint under seal." (Defs.' Reply Br. 8.) Even viewing the facts in the light most favorable to Plaintiffs, I find that the Ordinance, as applied to Plaintiffs, is narrowly tailored to the same significant governmental interests mentioned above, including preventing the dissemination of information and allowing a reasonable period for evaluation. Therefore, Plaintiffs fail to state a claim upon which relief can be granted for an as-applied challenge under the First Amendment.

4.   Count Five: State Claim for Judicial Review *De Novo* [1]

In Count Five of the Amended Complaint, Plaintiffs seek *de novo* review of the City Solicitor's denial pursuant to Pennsylvania Local Agency Law, 42 Pa. Cons. Stat. §101. Plaintiffs allege that I "may hear the appeal of this adjudication *de novo*, without respect to the Defendants' underlying proceedings or determination, under 42 Pa. C.S. §754." (Am. Compl. ¶ 210.) In order to address the sufficiency of Plaintiffs' claim, I must first determine if Pennsylvania's Local Agency Law applies to the underlying dispute.

Section 752 of the Pennsylvania Local Agency Law states, in pertinent part, that "[a]ny person aggrieved by an adjudication of a local agency who has a direct interest in the adjudication shall have the right to appeal therefrom." 2 Pa. Cons. Stat. § 752. Section 101 of the Pennsylvania Administrative Agency Law defines the term "adjudication" as:

> Any final order, decree, decision, determination or ruling by an agency affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of any or all of the parties to the proceeding in which the adjudication is made. The term does not include any order based upon a proceeding before a court or which involves the seizure or forfeiture of property, paroles, pardons or releases from mental institutions.

2 Pa. Cons. Stat. §101.

---

[1]    In Counts Six and Seven, Plaintiffs allege state claims regarding breach of contract and unjust enrichment. However, in their April 24, 2019 Brief in Opposition to Defendants' Motion to Dismiss, Plaintiffs concede that these counts fail to state a claim for relief. (Pls.' Br. in Opp'n. ¶11.) Therefore, I will dismiss these claims.

Additionally, § 101 defines an "agency" as "[a] government agency," which is "[a]ny Commonwealth agency or any political subdivision or municipal or other local authority, or any officer or agency of any such political subdivision or local authority." Id. Thus, "to be an adjudication, [1] the action 'must be an agency's final order, decree, decision, determination or ruling and . . . [2] it must impact on a person's personal or property rights, privileges, immunities, duties, liabilities or obligations.'" Guthrie v. Borough of Wilkinsburg, 478 A.2d 1279, 1281 (Pa. 1984).

In light of the foregoing, Plaintiffs must establish that the City Solicitor qualifies as an "agency" and that its decision regarding the proposed complaint under the Ordinance was an "adjudication," i.e. that there was a final order, which impacts Plaintiffs' personal or property rights. The City Solicitor's Office qualifies as an "agency," and thus, the first requirement is satisfied. Regarding the second, Plaintiffs argue that the City Solicitor's decision was the final determination regarding their proposed complaint and, therefore, they have plausibly pled this requirement. However, Plaintiffs fail to address the second aspect of the adjudication requirement. As discussed above, Plaintiffs cannot have a cognizable property interest in *potential* proceeds. Therefore, Plaintiffs' claim does not meet the requirements of an "adjudication" under Pennsylvania's Local Agency Law, and Plaintiffs have failed to state a claim upon which relief may be granted.

5.   Conclusion

For the reasons set forth above, I conclude that Plaintiffs' claims in the Amended Complaint are insufficiently pled under <u>Twombly</u> and <u>Iqbal</u>.  Therefore, I will grant Defendants' Motion to Dismiss.[2]

### III.   PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

#### A.   Standard of Review: Federal Rule of Civil Procedure 15

Pursuant to Federal Rule of Civil Procedure 15, a plaintiff is entitled to amend the complaint once as a matter of course.  <u>See</u> Fed. R. Civ. P. 15(a)(1).  Subsequently, "a party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  "The court should freely give leave when justice so requires."  <u>Id.</u>  However, "a district court has discretion to deny a request to amend if it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party."  <u>Fraser v. Nationwide Mut. Ins. Co.</u>, 352 F.3d 107, 116 (3d Cir. 2004).  "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted.  In assessing futility, courts apply the same standard of legal sufficiency as applied under [Fed. R. Civ. P.] 12(b)(6).  Accordingly, if a claim is vulnerable to dismissal under Rule 12(b)(6), but the plaintiff moves to amend, leave to amend generally must be granted unless the amendment would not cure the deficiency."  <u>Shave v. Fauver</u>, 213 F.3d 113, 115 (3d Cir. 2000) (citing <u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410, 1434 (3d Cir. 1997)).

---

[2]   In Defendants' April 10, 2019 Motion to Dismiss, they also moved, under Fed. R. Civ. P. 12(f) to strike certain paragraphs from Plaintiffs' Amended Complaint. In light of my ruling to grant Defendants' Motion to Dismiss, the Motion to Strike will be denied as moot.

B.  Discussion

    1.  Counts One and Three: Substantive Due Process

In Count One of the proposed Second Amended Complaint, Plaintiffs continue to challenge the Ordinance on substantive (legislative) due process grounds.  They propose, however, that their claims should be "subject to strict scrutiny" instead of rational basis review because it triggers a "fundamental right" of "access to the courts."  (Proposed Second Am. Compl. ¶¶ 158, 161).  Plaintiffs' argument for heightened scrutiny rests on the allegation that court access is a fundamental right.

I find that any such amendment would be futile on these grounds.  The Third Circuit has recognized that strict scrutiny applies only when a fundamental right is triggered.  Alexander, 114 F.3d at 1403.  The due process clause merely "assures that no person will be denied the opportunity to present to the judiciary allegations concerning violations of fundamental constitutional rights."  Wolff v. McDonnell, 418 U.S. 539, 579 (1974).  Embedded in that assurance is the underlying concept that court access is guaranteed only when a fundamental constitutional right is at stake.

    In their new allegation, Plaintiffs fail to identify what fundamental constitutional right permits them access to the courts.  Defendants correctly point out that the right to court access is only triggered when "necessary to protect some independent right that *is* fundamental" and "the right of court access is not such a fundamental right."  (Defs.' Br. in Opp'n 12).  Because access to the courts is not a fundamental right that would trigger strict scrutiny review and Plaintiffs fail to identify such a right, Plaintiffs' claim is still subject to rational basis review, which I discuss above.  For those same reasons, I conclude that Plaintiffs' proposed amendment of the substantive (legislative) due process claim fails to cure the deficiencies in the Amended Complaint and, as stated, fails to support a claim upon which relief can be granted.

Plaintiffs' non-legislative substantive due process claim in Count Three likewise fails to allege a protected property interest. Rather, Plaintiffs continue to assert a claim of entitlement to their "property interest in the bounty." (Proposed Second Am. Compl. ¶ 178.) As discussed above, Plaintiffs have failed to plausibly establish a protected property interest in *potential* proceeds that would satisfy the elements of a non-legislative substantive due process claim. For those same reasons, this claim remains insufficiently pled under Rule 12(b)(6) and is therefore futile.

### 2. Count Four: Procedural Due Process

Plaintiffs also assert that their procedural due process claim in Count Four of the proposed Second Amended Complaint is now plausibly pled. Plaintiffs, however, offer no new allegations to rectify the deficiencies I have identified above. Rather, Plaintiffs continue to allege that they "have a cognizable property interest in the bounty." (Id. at ¶ 191.) For the reasons discussed above, Plaintiffs have not plausibly established a protected property interest that would satisfy the elements required. Therefore, amendment of this claim would be futile in light of the deficiencies previously identified.

### 3. Counts Five and Six: First Amendment

Count Five of the proposed Second Amended Complaint asserts a new First Amendment challenge. Plaintiffs argue that the Ordinance's "unlimited-scope confidentiality" clause, as detailed above, infringes on the public's constitutional right to access court records. (Proposed Second Am. Compl. ¶ 200–2.) Specifically, they allege that the confidentiality clause "prevents the public meaningful access to documents required to be in the public eye." (Id. at ¶ 206.) Defendants respond that Plaintiffs do not have standing to assert a First Amendment challenge on behalf of the public. (Defs.' Br. in Opp'n 21.)

The Third Circuit has addressed the standing requirement in First Amendment cases.  As a general matter, a plaintiff cannot assert "the legal rights or interests of third parties."  The Pitt News v. Fisher, 215 F.3d 354, 363 (3d Cir. 2000) (quoting Secretary of State of Maryland v. Joseph H. Munson Co., Inc., 467 U.S. 947, 955 (1975)).  Nevertheless, a relaxed standing requirement may be appropriate in challenges to "overbroad restriction[s] on First Amendment rights."  Id.  "In determining whether a litigant should be able to assert third-party rights, a crucial factor is 'the impact of the litigation on the third-party interests.'"  Id.

The confidentiality clause at issue has little to no impact on any third-party interests. Defendants point out that "Plaintiffs have not identified any particular member of the general public that actually desired to access the filings in this case during the limited period of time (28 days) in which it was under seal."  (Defs.' Br. in Opp'n 21.)  I agree.  Plaintiffs fail to articulate the impact on any third-party interests and thus cannot establish standing to bring the amended claim on behalf of the public.  The proposed amendment cannot survive a motion to dismiss and is therefore futile.

Plaintiffs' First Amendment claim in Count Six of the proposed Second Amended Complaint alleges the same constitutional violations as Count Four of the Amended Complaint. In their proposed amendment, Plaintiffs narrow their claim to only include an as-applied First Amendment challenge.  They continue to challenge the City Solicitor's alleged interpretation of the Ordinance's confidentiality clause.  (Proposed Second Am. Compl. ¶ 212.)  As previously discussed, I must apply intermediate scrutiny to the challenged content-neutral regulation.  See Free Speech Coal., 677 F.3d at 535.  Given the same governmental interests offered in support of this regulation in Count Four of the Amended Complaint, I conclude that the Ordinance's confidentiality clause is narrowly tailored as it applies to Plaintiffs.  For the same reasons, the

allegations in the proposed amendment do not satisfy the required elements of this claim, as outlined above, and amendment is therefore futile.

### 4.   <u>Counts Two and Seven: State Claims</u>

Plaintiffs also seek to bring a new claim under Pennsylvania state law pursuant to the Remedies Clause of the Pennsylvania Constitution.  The Remedies Clause, in relevant part, states that "[a]ll courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law . . ."  Pa. Const. art. I § 11.  The Supreme Court of Pennsylvania has recognized that "[i]t is the constitutional right of every person who finds it necessary or desirable to repair to the courts for the protection of legally recognized interests to have justice administered without sale, denial or delay"; yet, the Remedies Clause "can be invoked only with respect to a legal injury."  <u>Masloff v. Port Auth. of Allegheny Cty.</u>, 613 A.2d 1186, 1190 (1992) (internal quotation marks omitted).

Plaintiffs allege that they "suffered legal injury both in their denial of their right to a partial-assignment of the City's damages claim, but also in their right to restoration of employment rights under the FCO's [False Claim Ordinance's] retaliation provisions."  (Proposed Second Am. Compl. ¶ 171.)  In response, Defendants maintain that "Plaintiffs do not have any 'vested right' to bring an FCO lawsuit on behalf of the City, nor do they have any vested right in the non-existent 'bounty.'"  (Defs.' Br. in Opp'n 23.)  Having previously found that Plaintiffs have no legitimate claim of entitlement to potential proceeds or bounty from a possibly successful lawsuit, I likewise cannot find they were denied a right to such potential proceeds.  Therefore, I find that Plaintiffs cannot plead a legal injury that would trigger the Remedies Clause of the Pennsylvania Constitution.  In sum, Plaintiffs' allegations cannot satisfy the required elements of this claim and thus fail to state a claim upon which relief can be granted.

Finally, Plaintiffs argue that the proposed Second Amended Complaint plausibly pleads their claim for *de novo* review under Pennsylvania's Local Agency Law in Count Seven of the proposed Second Amended Complaint.  However, they offer no new allegations to cure the deficiencies identified above.  Having previously found this claim to fail under Rule 12(b)(6)'s motion to dismiss standard, I find the amendment to be futile.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, I will (1) grant Defendants' Motion to Dismiss Plaintiffs' Amended Complaint; and (2) deny Plaintiffs' Motion for Leave to File a Second Amended Complaint.

An appropriate Order follows.